# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) |
| **Plaintiff,** | ) ) **Case No. 1:16-cv-03885** |
| **v.** | ) ) **Judge Sara L. Ellis** |
| **DANIEL C. USTIAN,** | ) ) ) |
| **Defendant.** | ) |

**DEFENDANT DANIEL C. USTIAN'S RESPONSES IN OPPOSITION TO PLAINTIFF THE SECURITIES AND EXCHANGE COMMISSION'S MOTIONS *IN LIMINE***

## <u>TABLE OF CONTENTS</u>

I.      USTIAN'S RESPONSE IN OPPOSITION TO THE SEC'S MOTION *IN LIMINE* NO. 1 TO PERMIT THE SEC TO USE LEADING QUESTIONS ON DIRECT EXAMINATION OF SIX CURRENT OR FORMER NAVISTAR EMPLOYEES AND TO PRECLUDE USTIAN FROM USING LEADING QUESTIONS IN CROSS-EXAMINATION OF THESE WITNESS ................................1

II.     USTIAN'S RESPONSE IN OPPOSITION TO THE SEC'S MOTION *IN LIMINE* NO. 2 TO PRECLUDE USTIAN FROM INTRODUCING ANY EVIDENCE OR ARGUMENT THAT THE EPA NEVER RAISED CONCERNS TO USTIAN, NAVISTAR, OR OTHER AGENCIES ABOUT USTIAN'S AND NAVISTAR'S PUBLIC DISCLOSURES ..........................................................................7

III.    USTIAN'S RESPONSE IN OPPOSITION TO THE SEC'S MOTION *IN LIMINE* NO. 3 TO PRECLUDE USTIAN FROM INTRODUCING ANY EVIDENCE OR ARGUMENT REGARDING FOIA EXEMPTIONS AND THE EPA'S RESPONSE TO FOIA REQUESTS ....................................................................13

IV.     USTIAN'S RESPONSE IN OPPOSITION TO THE SEC'S MOTION *IN LIMINE* NO. 4 TO PRECLUDE USTIAN FROM INTRODUCING ANY EVIDENCE OR ARGUMENT THAT THE SEC AND EPA ARE PART OF ONE FEDERAL GOVERNMENT ....................................................................21

V.      USTIAN'S RESPONSE IN OPPOSITION TO THE SEC'S MOTION *IN LIMINE* NO. 5 FOR AN ORDER PERMITTING THE SEC TO INTRODUCE EVIDENCE OF MEETINGS AND COMMUNICATIONS BETWEEN NAVISTAR AND THE EPA AND TO PRECLUDE USTIAN FROM ARGUING SUCH MEETINGS AND COMMUNICATIONS CONSTITUTED "SETTLEMENT DISCUSSIONS" UNDER RULE 408 ...................................28

VI.     USTIAN'S RESPONSE IN OPPOSITION TO THE SEC'S MOTION *IN LIMINE* NO. 6 TO PRECLUDE USTIAN FROM ELICITING LAY OPINION TESTIMONY REGARDING THE ACCURACY OF DISCLOSURES AND USTIAN'S STATE OF MIND ...........................................................................43

VII.    USTIAN'S COMBINED RESPONSE IN OPPOSITION TO THE SEC'S MOTIONS *IN LIMINE* NO. 7 TO PRECLUDE USTIAN FROM INTRODUCING EVIDENCE AND ARGUMENT REGARDING UNKNOWN SCR ISSUES AND NO. 8 TO EXCLUDE THE TRIAL TESTIMONY OF EPA OFFICIAL ALLEN DUNCAN ..........................................................................56

VIII.   USTIAN'S COMBINED RESPONSE IN OPPOSITION TO THE SEC'S MOTIONS *IN LIMINE* NO. 9 TO PRECLUDE USTIAN FROM INTRODUCING EVIDENCE AND ARGUMENT REGARDING RELIANCE ON COUNSEL AND NO. 10 TO EXCLUDE THE TRIAL TESTIMONY OF FORMER NAVISTAR GENERAL COUNSEL STEVEN COVEY ................................71

Defendant Daniel C. Ustian ("Ustian") respectfully submits the following responses in opposition to Plaintiff the Securities and Exchange Commission's ("SEC's") Motions *in Limine*. For convenience and efficiency, our oppositions to the SEC's Motions *in Limine* Nos. 7 and 8, and 9 and 10, respectively, have been combined.

## I. USTIAN'S RESPONSE IN OPPOSITION TO THE SEC'S MOTION *IN LIMINE* NO. 1 TO PERMIT THE SEC TO USE LEADING QUESTIONS ON DIRECT EXAMINATION OF SIX CURRENT OR FORMER NAVISTAR EMPLOYEES AND TO PRECLUDE USTIAN FROM USING LEADING QUESTIONS IN CROSS-EXAMINATION OF THESE WITNESS

The SEC's motion to "permit the SEC to use leading questions on direct examination for six current or former Navistar employees" and to prohibit "defense counsel . . . to lead these witnesses or Defendant during [] 'cross-examination'" should be denied as premature and the Court should require both parties to lay the foundation for adversity or hostility at trial. SEC Mot. *in Limine* No. 1 (Dkt. No. 280) at 1-2. "[Rule 611] is consistent with what has long been the law – that in the use of leading questions 'much must be left to the sound discretion of the trial judge who sees the witness and can, therefore, determine in the interest of truth and justice whether the circumstances justify leading questions to be propounded to a witness by the party producing them.'" *Ellis v. City of Chicago*, 667 F.2d 606, 613 (7th Cir. 1981) (quoting *St. Clair v. United States*, 154 U.S. 134, 150 (1894)). To the extent that the Court is inclined to decide this issue through a motion *in limine*, Ustian respectfully requests that his counsel be permitted to treat all current and former EPA witnesses as hostile or adverse and that the SEC be prohibited from leading them during its "cross-examination."

When the SEC raised this potential motion *in limine* during the meet-and-confer process, Ustian proposed two solutions to avoid court intervention. Both were rejected by the SEC. First, Ustian proposed a compromise whereby Ustian would agree to allow the SEC to treat all current and former Navistar witnesses as hostile and lead them on direct and the SEC would agree to

allow Ustian's counsel to do the same with all current and former EPA witnesses. The SEC rejected this proposal. *See* Ex. 1, Email fr. C. Dahl (Nov. 7, 2019). Second, Ustian proposed that both parties be required to lay the proper foundation for an adverse or hostile witness at trial. *See* Ex. 26 to Ustian Mot. *in Limine* (Dkt. No. 283). The SEC once again rejected this proposal, insisting that should be the rule for Ustian but not the SEC.

The six current and former Navistar witnesses identified in the SEC's Motion *in Limine*,[1] are not adverse parties or "identified with" Mr. Ustian in any ordinary sense of the word. They are current or former – mostly former – employees of a company Mr. Ustian led over seven years ago. They may prove to be "hostile," but not at this stage as a matter of law. The witnesses' relationships with and attitudes toward Ustian can change over time, and certainly may differ under the stress of questioning on the stand. Ramin Younessi provides a perfect example. As the SEC points out (incorrectly), during "his investigative testimony" Mr. Younessi was represented by "Ustian's[2] and Navistar's lawyers . . . and an additional lawyer," but at his deposition in this litigation he was represented by only the "additional lawyer," not Ustian's counsel. SEC Mot. *in Limine* No. 1 (Dkt. No. 280) at 2. Furthermore, Mr. Younessi is no longer a Navistar employee and, in fact, works for a competitor who is regulated by the SEC and relies on the EPA for certification of its engines. It is therefore possible that Mr. Younessi will be friendly to the SEC and not be "a friendly witness" to Ustian on the stand. *See Ellis*, 667 F.2d at 612 ("The[] limitations [on the use of leading questions on direct examination] were designed to

---

[1] During the meet-and-confer process, the list provided by the SEC of current and former Navistar employees it seeks to treat as adverse was more extensive. Since then, the SEC has narrowed their request to only six individuals.

[2] The SEC's Motions *in Limine* repeatedly mislead as to "Ustian's" lawyers, perhaps because the SEC lawyers only have one client. Mr. Ustian's counsel in these proceedings did not represent Mr. Ustian at **any** investigative testimony (except Ustian's own testimony).

guard against the risk of improper suggestion inherent in examining ***friendly witnesses*** through the use of leading questions." (emphasis added)). Ustian agrees that it is entirely possible that some or all of the six witnesses in question will be determined to be "hostile" or "identified with" Ustian **at trial.**

In light of the above, Ustian offered two options that were fair to both parties, but the SEC rejected both. If, however, the six current or former Navistar witnesses are hostile, so too are all current or former EPA witnesses. Current and former EPA employees are hostile and/or adverse to Mr. Ustian for three reasons: (a) the EPA is "hostile" to Navistar and Ustian because they played a key and adverse role in the events leading to this litigation; (b) the EPA is "identified with" the SEC; and (c) during the time period that Ustian was CEO of Navistar, the EPA was an "adverse party" in several lawsuits against Navistar. Fed. R. Evid. 611.

First, for the same reasons that the SEC alleges current and former Navistar witnesses are hostile to the SEC, current and former EPA witnesses are hostile to Navistar and Ustian. EPA witnesses "all worked in some capacity relating to . . . certification," (*see, e.g.*, Joint Statement of Undisputed Mat. Facts (Dkt. No. 255) ("UF") ¶ 138), "[m]any provided favorable (albeit inadmissible) lay opinion testimony for [the SEC] when questioned by [SEC] counsel in depositions," and "they were all 'cohorts' in the events that gave rise to this litigation." SEC Mot. *in Limine* No. 1 (Dkt. No. 280) at 5. Indeed, EPA officials played a central role in the events giving rise to this litigation – repeatedly communicating to Navistar engineers an intent to engage in a "fruitful" discussion on the applications at issue while internally **undermining the applications**. *See* Ex. 59 to Ustian Mot. *in Limine* (Dkt. No. 283) (forwarding to Ustian an EPA email stating that EPA "will work as quickly as possible to respond" to a letter from Navistar on the January 2012 application and "then use that information as an agenda for a fruitful meeting in

3

the near future").  For example, notes from four different Navistar engineers who were present at a May 30, 2012, meeting with EPA on Navistar's May 2012 application indicate that Bunker said the application was "hard not to say yes to" and that he wants "more time to try to find a way to approve it."  *See* Exs. 47-50 to Ustian Mot. *in Limine* (Dkt. No. 283); *see also* Ustian Mot. *in Limine* No. 5 (Dkt. No. 283); 39-40.  Internally at EPA, however, Bunker claimed that he did "not believe we will be able to give Navistar a certificate for this engine."  *See* Ex. 46 to Ustian Mot. *in Limine* (Dkt. No. 283).  The schism between what EPA told Navistar engineers and what it said internally took place throughout the relevant period.  *See*, *e.g.*, Ex. 2, Email fr. B. Bunker (Apr. 19, 2012) (claiming in an internal EPA email that EPA Navistar "would not get certification" but that EPA "offered to meet again so they couldn't say that EPA has said no and won't meet with them" and so "they don't have a final agency decision to appeal"); Ex. 3, Email fr. B. Bunker (Apr. 27, 2012) (writing in an internal EPA email that EPA is "still in the mode of saying yes to every invitation" despite suggesting that EPA would not certify Navistar's application); *see also infra* at 5.  This evidence firmly suggests that EPA witnesses will be hostile to Ustian at trial.

Second, the EPA's interactions with the SEC throughout the course of this ligation have shown that instead of being neutral third-party, it is a "friend" of the SEC in exactly the way one would expect of two executive agencies of the United States.  *Ratliff v. Chicago*, 2012 WL 7993412, at *1 (N.D. Ill. Nov. 20, 2012).  For example, in June 2012 the SEC reached out to the EPA to schedule "informal discussion[s]" with EPA staff.  Ex. 4, Email fr. A. Blazek (June 6, 2013) at 8.  The EPA agreed, and both Justin Greuel and Byron Bunker set aside time to speak with the SEC without any subpoena or demand.  *Id*. at 4.  Ustian and Navistar, on the other hand, have to communicate through EPA's counsel and subpoena their depositions in order to speak

with the same EPA witnesses.  Similarly, the SEC sent the EPA an "access request," not a subpoena, to request records relating to Navistar and, incredibly, even asked the EPA to exercise its own discretion in selecting the documents that would help prove the SEC's case!  The SEC specifically requested that the EPA send "[a]ny communications from the EPA to Navistar (or records of meetings) suggesting that Navistar's applications may not be/would not be approved."  Ex. 5, Email fr. A. Blazek (Sept. 5, 2013) at 1.  Ustian, on the other hand, has access to EPA documents only by subpoena, and had to engage in a discovery process for over two years that involved over 130 pages of email correspondence, multiple letters, and numerous telephone conversations with counsel for the EPA, and he filed a motion to compel production of documents.  *See* Mot. to Compel (June 15, 2018) (Dkt. No. 144).

  <u>Third</u>, at the time the charged statements were made, Navistar (with Ustian as its CEO) was engaged in active litigation against the EPA.  *See Navistar, Inc. v. EPA*, No. 1:11-0449 (D.D.C. Feb. 28, 2011); *Navistar, Inc. v. Jackson*, 1:11-cv-00769-CCK (D.D.C. Apr. 21, 2011), *appeal docketed*, No. 12-5045 (D.C. Cir. Feb. 15, 2012); *Navistar, Inc. v. Jackson*, No. 1:11-cv-01234-CKK (D.D.C. July 5, 2011), and Navistar, Inc. v. EPA, No. 12-1127 (D.D.C. Mar. 3, 2012).  *See also infra at* Ustian's Resp. in Opp. to SEC Mot. *in Limine* No. 5 (pages 29-44).  Thus, during the relevant time period, the EPA was not just "identified with an adverse party," but was, itself, an adverse party.  This ongoing litigation with Navistar had a "chilling effect" on the EPA's communications with Navistar during the relevant time period.  Ex. 6, J. Greuel Dep. (Oct. 7, 2011) at 272:13.  In fact, the EPA is still engaged in litigation against Navistar stemming from issues that occurred during the relevant time period, and Mr. Ustian was subpoenaed and deposed by EPA on May 30, 2019, in connection with that lawsuit.

For the reasons stated above, the SEC's motion should be denied as premature. If the Court wishes to adjudicate this issue at this stage of litigation and believes that pre-trial evidence of likely adversity is sufficient, Ustian respectfully requests that his counsel be permitted to treat all EPA witnesses as hostile or adverse and that the SEC be prohibited from leading them during its "cross-examination." Ustian's claims in this regard are stronger than the SEC's claims.

## II. USTIAN'S RESPONSE IN OPPOSITION TO THE SEC'S MOTION *IN LIMINE* NO. 2 TO PRECLUDE USTIAN FROM INTRODUCING ANY EVIDENCE OR ARGUMENT THAT THE EPA NEVER RAISED CONCERNS TO USTIAN, NAVISTAR, OR OTHER AGENCIES ABOUT USTIAN'S AND NAVISTAR'S PUBLIC DISCLOSURES

The SEC wants to "exclude any evidence or argument by Defendant Ustian that the EPA never complained to Ustian, Navistar, the SEC, or anyone else about Navistar's public disclosures regarding its attempts at getting a 0.2 NOx EGR-only engine certified by the EPA." SEC Mot. *in Limine* No. 2 (Dkt. No. 280) at 7. In its view, such evidence would be irrelevant under Federal Rule of Evidence 401. *Id.* If the Court finds the evidence is relevant (it is), the SEC argues the Court should exclude the evidence under Rule 403 because the probative value of the evidence would be substantially outweighed by the risk of unfair prejudice to the SEC and the danger that the evidence would mislead or confuse the jury. *Id.*

But if the SEC is concerned about unfair prejudice arising from the evidence that EPA officials were allegedly concerned, then the solution is staring SEC right in the face: do not ask witnesses or introduce exhibits about alleged concerns over Ustian's and Navistar's statements. If the jury never hears of these concerns, then the jury will never hear about the fact that the alleged concerns were never reported to anyone. The SEC knows this is the simple solution because Mr. Ustian explained to the Court in Motion *in Limine* No. 5 why it should bar the SEC from asking witnesses or introducing exhibits about alleged concerns over Ustian's and Navistar's statements. *See* Ustian Mot. *in Limine* No. 5 (Dkt. No. 283) at 36-46.

In that motion, Ustian requested that the Court preclude the SEC from (a) asking EPA officials Margo Oge and Christopher Grundler whether the statements at issue in this case were false or misleading and (b) presenting any documents where Oge or Grundler opined on whether the statements at issue in this case were false or misleading. *See id.* at 36, 46. Ustian explained that Oge and Grundler each lacked firsthand knowledge of the applications in this case such that

7

their opinions on the veracity of the statements at issue would be impermissible lay opinions under Federal Rule of Evidence 701. *Id.* at 43-44; Fed. R. Evid. 701(a). On top of that, Oge's and Grundler's views on Ustian's statements have minimal probative value. *See* Ustian Mot. *in Limine* No. 5 (Dkt. No. 283) at 45. And that minimal probative value would be substantially outweighed by unfair prejudice and the risk that the jury would simply accept Oge's and Grundler's views of the statements rather than making its own determination. *Id.*

Both the unfair prejudice and the risk of jury confusion are multiplied by the SEC's present motion – if the jury does not hear Ustian's meaningful cross-examination on what EPA officials did with their alleged concerns, the more likely those concerns will act as proxy for the jury's determination to the unfair detriment of Ustian. *Cf. Taylor v. Chicago*, 2016 WL 5404603, at *4 (N.D. Ill. Sept. 28, 2016) (stating it would be unfair for a defendant to testify that he suffered emotional distress without allowing the plaintiff to cross-examine him on why the defendant thinks that). The Court should deny the SEC's motion for this reason, but also because – despite what the SEC says – the evidence is, in fact, relevant to a complete picture of what a witness thought of the statement at issue. And because the SEC's Rule 403 argument is baseless.

### A. Whether EPA Complained About Navistar's Public Disclosures Is Relevant

The SEC argues that whether EPA complained to Ustian or Navistar or the SEC or anyone else about the allegedly misleading nature of Ustian's statements is irrelevant because "the EPA does not regulate or enforce the federal securities laws[,] . . . has no obligation or authority to warn Ustian[,] . . . [and cannot] ratify such statements by its silence." *See* SEC Mot. *in Limine* No. 2 (Dkt. No. 283) at 8. As it does repeatedly in its motions *in limine*, however, the SEC's argument intentionally misses the point. Whether EPA had an **obligation** to warn Ustian that his statements could be misleading or whether EPA can **legally ratify** Ustian's statements by

silence has nothing to do with the trial. Ustian has never argued (and does not plan to argue) that EPA's inaction legally ratified his statement. For this reason, the SEC's cited cases are irrelevant. *See SEC v. Keating*, 1992 WL 207918, at *4 (C.D. Cal. July 23, 1992) (striking the defendant's affirmative defense that SEC legally ratified his alleged violations of the Securities Act); *SEC v. Bank of Am. Corp.*, 2009 WL 4797741, at *1 (S.D.N.Y. Dec. 8, 2009) (blocking production of SEC internal documents because defendant could not assert defense that SEC legally ratified the statements it made in its proxy statement). The SEC's strategy here – and again, a strategy common to many of its motions – is to start with something true and uncontroverted, "prove" the uncontroverted point with some cases, and then ask for a remedy that extends light years beyond the point is has "proven." EPA's silence is relevant because it impeaches the false claims of EPA officials who say they found Ustian's statements misleading.

At trial, the SEC intends to ask EPA witnesses at trial whether they thought the statements at issue were misleading. It also intends to introduce documents suggesting the same. The SEC's opposition to Ustian's Motion for Summary Judgment shows as much. *See* Opp'n to S.J. Mot. (Dkt. No. 260) at 22 ("[W]itnesses within . . . EPA expressed opinions different from these two engineers about the veracity of Ustian's statements"), 34 n.4 (recounting email where EPA official opines about the veracity of Ustian's statement). The SEC's draft exhibit list also shows its intention to introduce this evidence because it includes emails between EPA officials opining on the veracity of Ustian's statements. *See* Ex. 38 to Ustian Mot. *in Limine* (Dkt. No. 283), (commenting on a Navistar press release); Ex. 39 to Ustian Mot. *in Limine* (Dkt. No. 283) (commenting on statements made by Ustian on earnings call). And there are other documents in this case that the SEC could attempt to introduce to make this point. *See* Ex. 40 to Ustian Mot. *in Limine* (Dkt. No. 283) (discussing forthcoming January 2012 Application); Ex. 41 to Ustian

9

Mot. *in Limine* (Dkt. No. 283) (discussing the likelihood of certification of the January 2012 Application); Ex. 42 to Ustian Mot. *in Limine* (Dkt. No. 283) (discussing the likelihood of certification of the May 2012 Application); Ex. 43 to Ustian Mot. *in Limine* (Dkt. No. 283) (commenting on statements made by Ustian on an earnings call).

By introducing this evidence, the SEC improperly hopes to persuade the jury that the statements at issue were, in fact, misleading because EPA officials thought the statements were misleading. And with its motion, the SEC hopes to rob Ustian of his right to properly cross-examine these EPA officials. *See U.S. ex rel. Eddmonds v. Peters*, 1995 WL 117901, at *21 (N.D. Ill. Mar. 15, 1995) (observing that a witness was "skillfully cross-examined" because counsel asked whether witness whether he ever reported defendant's prior bad act to authorities), *aff'd sub nom. Eddmonds v. Peters*, 93 F.3d 1307 (7th Cir. 1996). The SEC, however, asks the Court to shield the witnesses from skillful cross-examination questions. The answers to such questions – no, no one at the EPA even ever reported alleged concerns to the SEC, the DOJ, the FTC, Navistar, or Ustian – help show the tiny degree to which EPA officials found Ustian's statements misleading or perhaps that they never really thought the statements were misleading at all. They are therefore relevant, and unsurprisingly, courts routinely allow these kinds of questions at trial. *See, e.g.*, *Middleby Corp. v. Hussmann Corp.*, 1993 WL 151290, at *16 (N.D. Ill. May 7, 1993) (holding plaintiff could present evidence of accounting changes and defendant could "point out that [plaintiff] never reported any such changes to Citibank," in order to show plaintiff did not regard the changes as a "material adverse change" under the relevant contract); *U.S. ex rel. Enoch v. Lane*, 581 F. Supp. 423, 426 (N.D. Ill. 1984) (noting that, at trial, prosecutor cross-examined alibi witness by asking why the witness never reported her version of the night of the crime to the police), *aff'd sub nom. U.S. ex rel. Enoch v. Hartigan*, 768 F.2d 161

(7th Cir. 1985); *U.S. ex rel. Redding v. Leibach*, 2007 WL 952011, at *3 (N.D. Ill. Mar. 24, 2007) (same); *U. S. ex rel. Gray v. Godinez*, 1992 WL 275576, at *3 (N.D. Ill. Sept. 30, 1992) (noting that, at trial, defense counsel cross-examined witness who testified to prior bad acts by the defendant by asking why the witness never reported the bad acts to the authorities); *Eddmonds*, 1995 WL 117901, at *21 (same). The Court here should allow them as well.

### B. The SEC's Rule 403 Argument Is Baseless

The SEC also argues that the Court should exclude evidence of EPA's silence under Rule 403 because the probative value of the evidence is substantially outweighed by the risk of confusion to the jury and by unfair prejudice to the SEC. SEC Mot. *in Limine* No. 2 (Dkt. No. 280) at 9. As an initial matter, the SEC's argument is based on its view that the evidence has no probative value, which, as explained above, is not true. *See supra* at 8-10. What EPA officials did after they claim to have felt that Ustian's statements were misleading is highly probative, such that the risk of confusion or unfair prejudice must be **significant** in order for it to "***substantially outweigh***" the probative value of the evidence. *See id.*; Fed. R. Evid. 403 (emphasis added). And indeed, the risk of confusion or unfair prejudice does not substantially outweigh the evidence's probative value – not even close.

The SEC's fear of jury confusion and unfair prejudice is based on its view that the jury might "believe that the EPA had no concerns with the disclosures." SEC Mot. *in Limine* No. 2 (Dkt. No. 280) at 9. But there is no reason to think that would happen. As articulated above, evidence of EPA silence contextualizes concerns that would have **already been presented** to the jury. *See supra* at 7-10. It is unclear how the jury could unfairly get the idea that EPA did not have concerns based on the SEC's choice to present evidence that EPA officials **had concerns.** Moreover, the SEC's fear of non-existent jury confusion reveals its true intention with this motion: to parade EPA officials and their alleged concerns in front of the jury without allowing

11

Ustian to properly respond. **That** situation would be one of gross unfair prejudice. And as explained above informs why the Court should grant Ustian's fifth motion *in limine*. *See supra* at 7-8.

Overall then, the SEC's argument that evidence of EPA silence should be excluded under Rule 403 is based on a phantom concern of unfair prejudice. And in fact, excluding the evidence would **create** unfair prejudice to Ustian – not eliminate it for the SEC. The Court should deny the SEC's motion.

### C. Conclusion

For the foregoing reasons set forth herein, the Court should deny the SEC's Motion *in Limine* No. 2 to Preclude Ustian from Introducing Any Evidence or Argument that the EPA Never Raised Concerns To Ustian, Navistar, or Other Agencies About Ustian's and Navistar's Public Disclosures.

III.   **USTIAN'S RESPONSE IN OPPOSITION TO THE SEC'S MOTION *IN LIMINE* NO. 3 TO PRECLUDE USTIAN FROM INTRODUCING ANY EVIDENCE OR ARGUMENT REGARDING FOIA EXEMPTIONS AND THE EPA'S RESPONSE TO FOIA REQUESTS**

In 2015, Navistar submitted a FOIA request asking EPA to disclose the certification deliberations on Navistar's own 2012 0.2g NOx engines. EPA's Byron Bunker rejected that request, asserting FOIA Exemption 5. Ex. 8 to SEC Mot. *in Limine* (Dkt. No. 280-8). One of the bases to invoke FOIA Exemption 5 is when the U.S. Government determines public disclosure might cause "confusion" – and it is apparent that the fear of "confusion" is the exact reason that EPA invoked FOIA Exemption 5 in this case. *See infra* at 14. Indeed, that is exactly what EPA said about a virtually identical FOIA request aimed at records related to certification of SCR engines. It is a painful paradox that the same U.S. Government now is suing Ustian because he failed to publicly disclose that same information.

EPA's decision to invoke Exemption 5 conformed with FOIA law, which requires a careful and considered decision. *See infra* at 15-16. That EPA decision is an important fact in Ustian's defense because it directly contradicts the SEC's claim that Ustian sowed confusion by not disclosing the very same information EPA worried could confuse the public. That fact is relevant, probative, and compelling. And that is exactly why the SEC does not want the jury to know it. But Ustian is entitled to have the jury know that **after** this lawsuit was filed, the same federal government implicitly determined that the government is wrong in claiming that he misled the public.

A.     **FOIA Evidence Is Relevant**

The SEC is charging Ustian with violating securities laws because he did not release information as to EPA's deliberations. *See* Am. Compl. (Dkt. No. 67) ¶¶ 97, 122, 128, 138, 177. The securities laws cited by the SEC exist to promote clarity in the market and ensure that

13

"statements made, in the light of the circumstances under which they were made, [are] not misleading." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011); *see also SEC v. Ralston Purina Co.*, 346 U.S. 119, 124 (1953) ("The design of the [Securities Act] is to protect investors by promoting full disclosure of information ***thought necessary to informed investment decisions***." (emphasis added)).  EPA, however, invoked Exemption 5 claiming that the public release of EPA's deliberations related to the applications at issue would promote confusion – not clarity.  As the DOJ guidance to U.S. Government agencies states:

> The most commonly invoked privilege incorporated within Exemption 5 is the deliberative process privilege, the general purpose of which is to "prevent injury to the quality of agency decisions."  Specifically, three policy purposes consistently have been held to constitute the bases for this privilege: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are actually adopted; ***and (3) to protect against public confusion that might result from disclosure***.

Dep't. of Justice, *Dep't. of Justice Guide to the Freedom of Information Act*, Exemption Five, 13 (Aug. 26, 2019), https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/exemption5.pdf ("DOJ FOIA Guide") (emphasis added)

Nevertheless, the SEC claims that Ustian confused investors by not disclosing the status of EPA's decision-making (information that EPA said should not be disclosed).  Never mind that the only status was that the applications were being deliberated (exactly what Ustian and Navistar disclosed).  *See* Undisputed Statement of Mat. Facts (Dkt. No. 255) ("UF") ¶ 39 ("EPA never denied any Navistar application. . . . Ustian understood that the Senior Engineering Group believed it could address EPA's concerns and deliver what EPA was asking for with respect to the 0.2g NOx certification applications.").  The law is clear that while agency deliberations are pending, the agency may not disclose information as to the status of those deliberations:

> The deliberative process privilege is designed to protect the "decision making processes of government agencies."  In concept, this privilege protects not merely documents, but also the integrity of the deliberative process itself where the

exposure of that process would result in harm. ***Thus, even the status of an agency decision within an agency decision making process may be protectable if the release of that information would have the effect of prematurely disclosing "the recommended outcome of the consultative process . . . as well as the source of any decision***."

DOJ FOIA Guide at 14 (emphasis added).

The SEC is not only wrong about the disclosure of EPA deliberations, but it also misstates Navistar's FOIA request by incorrectly saying that "the back-and-forth between Navistar and EPA . . . .was not even part of Navistar's FOIA request." SEC Mot. *in Limine* No. 3 (Dkt. No. 280) at 13. That is simply untrue. The truth is that Navistar's FOIA letter to the EPA asked for "***[a]ll*** documents relating to the consideration by the [EPA] of applications for certification of [Navistar's] 13L Engine submitted to the Agency by Navistar in Calendar year 2012." Ex. 7, Ltr. fr. E. Swibel (April 21, 2015) (emphasis added). EPA's "official response" stated that Navistar's request for "***all documents*** related to" EPA's consideration of the 2012 applications is protected by "FOIA exemption 5" – without limitation. Ex. 8 to SEC *Mot. in Limine* (Dkt. No. 280-8) (emphasis added). (Before receiving EPA's official response, counsel for Navistar agreed as an accommodation that EPA need not produce documents already in Navistar's possession, but both Navistar's request and EPA's response unequivocally referred to "all documents" related to EPA's consideration of the applications.)

Moreover, this was not a ritualistic incantation of Exemption 5 by an EPA scrivener. Exemption 5 mandates a careful determination that the requirements are met:

> Traditionally, courts have established two fundamental requirements, both of which must be met, for the deliberative process privilege to be invoked. ***First***, the communication must be predecisional, i.e., "antecedent to the adoption of an agency policy." ***Second***, the communication must be deliberative, i.e., "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." The burden is upon the agency to show that the information in question satisfies both requirements.

15

DOJ FOIA Guide at 15 (emphasis added).

Indeed, case law supports that Exemption 5 is intended to prevent disclosure of pre-decisional, deliberative documents for a very relevant and important reason; notably, to protect the "public from the *confusion* that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon." *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 773 (D.C. Cir. 1978) (emphasis added).

It is clear that EPA considers public disclosure of certification deliberations as denying the public that safeguard. In 2012, when the SEC says Ustian should have disclosed EPA certification deliberations, Navistar submitted a nearly identical FOIA request to EPA for documents relating to its deliberations on SCR certification. EPA's Bunker invoked Exemption 5 and said that disclosure might cause public confusion. *See* UF ¶ 130. Specifically, Bunker submitted a sworn affidavit in federal court attesting to, among other things, the fact that EPA would not publicly release "deliberations regarding certification" because the release of such documents "*could cause public confusion* . . . ." *Id.* (emphasis added).

So if, for example, EPA's February 17, 2012, letter was a decision to reject Navistar's January 2012 application as the SEC claims (*see* Opp'n to S.J. Mot. (Dkt. No. 260) at 11, 32), then EPA violated the law by not publicly releasing every single document in its files regarding the Navistar January 2012 application. But, of course, in reality, EPA did not violate any law by not disclosing its deliberations because it never made a decision. *See* UF ¶ 39. And that's why even though it was years after the fact, EPA it said it still has nothing to release and never will.

The FOIA facts are important to Ustian's defense for still another reason – they conclusively confirm that EPA never decided to reject any of Navistar's 2012 0.2g NOx applications. *See* SEC Mot. *in Limine* No. 3 (Dkt. No. 280) at 13 (claiming that "EPA

continually shot down Navistar's certification attempts"). The fact that EPA considered every single document to be pre-decisional dispels the SEC claim that EPA actually rejected Navistar's certification. And make no mistake: the SEC has persisted in this regard, continuing to insist that EPA rejected the applications despite the Court having ruled that it is "undisputed" that EPA never denied any Navistar application. *See* UF ¶ 39 (confirming "EPA never denied any Navistar application"). Indeed, had EPA really denied any one of Navistar's 0.2g NOx applications, the law is clear: FOIA requires EPA to release its "post-decisional" documents. *See* DOJ FOIA Guide at 20 ("The Supreme Court has declared that Exemption 5 ordinarily does not apply to post decisional documents as 'the public is vitally concerned with the reasons which did supply the basis for an agency policy actually adopted.'" (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152 (1975)))

Rather than address this statement of relevance directly, the SEC claims that it would be "unnecessary" and "cumulative" to raise FOIA evidence on this point since "EPA never made an appealable final decision on Navistar's certification applications." SEC Mot. *in Limine* No. 3 (Dkt. No. 280) at 16 n.3. The SEC may well have had a point if it was not committed to trying to convince the jury of the opposite. The SEC has every intention of arguing to the jury that EPA "*essentially*" rejected every one of the applications at issue. SEC Opp'n to S.J. Mot. (Dkt. No. 260) at 42-43 (emphasis added). For example, in its Opposition to Ustian's Motion for Summary Judgement – and in the face of a **Joint** Undisputed Material Fact stating the opposite – the SEC argued that EPA denied both Navistar's January and May 2012 applications. *See id.* at 32 ("The EPA sent a formal, detailed response to Navistar in February 2012 rejecting Navistar's January 2012 application[.]"); *id*. at 42 ("When the EPA delivered its rejection of the May 2012 application on June 4, 2012 . . ."). That is simply false and EPA's invocation of Exemption 5

17

leaves no doubt about it. Under FOIA, if there is a **decision**, there is no room for Exemption 5. *See* DOJ FOIA Guide at 20. No decision was ever made and Ustian is entitled to be sure that the jury will not be misled into believing otherwise.

### B. The SEC's Claims Are Factually Wrong

None of the arguments raised by the SEC undermine the relevance of the FOIA evidence here. Contrary to the SEC's assertion otherwise, Ustian never suggested that it was "categorically improper to disclose EPA feedback." SEC Mot. *in Limine* No. 3 (Dkt. No. 280) at 15. EPA's reliance on FOIA Exemption 5 is relevant to undermine the **SEC's claim** – not any suggestion from Ustian – that Ustian should have disclosed additional information that EPA communicated to Navistar engineers. The FOIA evidence here suggests that it would have caused public confusion to disclose more, detailed information about EPA and Navistar deliberations related to Navistar's 2012 applications.

Notably, the information that Navistar and Ustian released regarding its certification discussions with EPA is consistent with the information that EPA was willing to share with the public – *i.e.*, information that would not cause public confusion. For example, on March 1, 2012, Navistar publicly filed an EPA letter (the day after it was published by EPA), in which EPA stated that "[w]hile [EPA] has not taken final action regarding certification, and intends to continue discussions with Navistar, [EPA] has substantial concerns regarding the ability of Navistar to certify its engine at a .2 g/bhp-hr level." UF ¶ 165; Tab 398 to UF at 47. Navistar attached EPA's letter in full to a brief it filed in the D.C. Circuit. That brief was filed in connection with an appeal filed by Navistar's competitors, which was at the center of the EPA deliberations on Navistar's certification. *See id.* ¶ 168. In short, EPA determined what could be disclosed about the status of EPA/Navistar certification deliberations and Navistar followed suit.

The SEC also says that the jury should not hear the FOIA facts because EPA said disclosure of the deliberations "***could***" rather than "***would***" cause confusion. SEC Mot. *in Limine* No. 3 (Dkt. No. 280) at 14-15 (emphasis added). That is an obvious distinction without a difference and a bewildering diversion from the issue. This is a case ostensibly grounded in rules that mandate investor clarity, thus, the fact that information "**could**" confuse the public is plenty reason for it not to be released. There is nothing in the securities laws or SEC regulations that encourages public companies to release information that "could" confuse.

The SEC also says that "any determination by the EPA that disclosure of information could cause public confusion has no bearing on Ustian's or Navistar's disclosure obligations." SEC Mot. *in Limine* No. 3 (Dkt. No. 280) at 13. That is just plain wrong again considering that this is an SEC disclosure case. The fact that it is the certification "deliberator" made the FOIA determination that disclosure could **confuse**, rather than clarify is as relevant as it gets as to whether Ustian omitted material information that would have clarify things for investors.

### C. FOIA Evidence Does Not Raise Rule 403 Concerns

Contrary to the SEC's Motion *in Limine*, the FOIA evidence also does not raise any concerns identified in Rule 403. To start, the SEC's reliance on *United States v. Klein* is misplaced. 2017 WL 1316999 (E.D.N.Y. Feb. 10, 2017). Indeed, the SEC's own description of the case makes clear that it is inapplicable. *Klein* has nothing to do with FOIA and instead relates to the "introduction of an SEC complaint in a parallel criminal trial." SEC Mot. *in Limine* No. 3 (Dkt. No. 280) at 16.[3]

---

[3] Any potential probative value of *Klein* is undermined by the fact that the Court in that case found it significant that the two government entities made decisions based on different information. The court stated "the government's charging decision relied on a body of evidence that is ***likely to be substantially different from that available to the SEC***. Thus, to the extent that [Defendant] intends to argue that the SEC concluded that a different body of evidence was not sufficient to establish that [Defendant] acted with [] intent . . . that is not strongly probative of the conclusions to be drawn from the evidence before

pipe

More to the point, the SEC's supposed sources of "confusion" can be easily remedied by a single question on cross-examination, namely, whether the "FOIA exemption at issue actually related to the correspondence between the EPA and Navistar." SEC Mot. *in Limine* No. 3 (Dkt. No. 280) at 15. Moreover, there is no argument about whether EPA was acting properly or improperly in invoking Exemption 5; it is an incontestable fact. Furthermore, the introduction of FOIA evidence will not lead to "mini trials" as Ustian has no intention of questioning whether EPA's invocation of FOIA Exemption 5 was appropriate. Ustian only seeks to introduce the evidence showing that the EPA invoked the exemption. Finally, the SEC is right in saying that the introduction of FOIA evidence will cause the jury to ponder whether "the SEC was right about whether public disclosures of certain EPA 'pre-decisional' documents could 'confuse the public.'" SEC Mot. *in Limine* (Dkt. No. 280) at 16. That, of course, is Ustian's point.

### D. Conclusion

EPA's FOIA determination is a potent answer to the SEC's claim that Ustian created investor confusion by not disclosing the content of EPA deliberations. It simply is a bad idea for any public company, let alone the SEC, to promote disclosure that could cause investor confusion. If it would be misleading for EPA to disclose its deliberations, then it would not be any less misleading for Ustian to do so.

---

the jury. *Klein*, 2017 WL 1316999, at *9 (E.D.N.Y. Feb. 10, 2017) (internal quotation marks). Here there is no such issue. The EPA refused to disclose the very same information that the SEC alleges Ustian should have disclosed.

IV. **USTIAN'S RESPONSE IN OPPOSITION TO THE SEC'S MOTION** *IN LIMINE* **NO. 4 TO PRECLUDE USTIAN FROM INTRODUCING ANY EVIDENCE OR ARGUMENT THAT THE SEC AND EPA ARE PART OF ONE FEDERAL GOVERNMENT**

The SEC asks the Court to hide from the jury the plain fact that the SEC and EPA are both agencies of the federal government because knowledge of that fact could lead the jury to conclude "the SEC case is unfair given EPA inaction on Ustian and Navistar's misstatements." SEC Mot. *in Limine* No. 4 (Dkt. No. 280) at 18. The SEC claims it needs this relief based on several examples, all of which have little to do with the broad, vague remedy the SEC seeks. *Id.* at 18-19. EPA's determination that the details the SEC claims Ustian was compelled to disclose should **not** be disclosed is obviously relevant, and in event already covered by the SEC's Motion *in Limine* No. 3. EPA's continuous review of Navistar's securities filings and public statements without comment or concern to Ustian or anyone else is obviously relevant, and in any event already covered by the SEC's Motion *in Limine* No. 2. The Court should deny the motion because the SEC cites no legal authority supporting its position, because it is not apparent what relief the SEC is actually requesting, and because the SEC presents no workable solution for implementing any relief.

Worse still, the SEC's motion seeks to lay the groundwork for the SEC to misrepresent the nature of its relationship with EPA. The SEC would like to present a false narrative that EPA and the SEC are wholly independent in order to stifle Ustian's ability to cross-examine EPA witnesses effectively and to lay a proper foundation to show that EPA witnesses are aligned with the SEC under Federal Rule of Evidence 611(c). The potential prejudice the SEC has identified is pure speculation, and if it exists, it would be an unavoidable (not unfairly prejudicial) consequence of the fact that EPA and the SEC **are** both federal agencies, and they absolutely **did** cooperate on this case.

21

The Court should deny the SEC's Motion *in Limine* No. 4.

### A.      Ustian Has Not Suggested That EPA And The SEC "Are Synonymous"

The SEC argues that Ustian has "repeatedly suggested that the SEC and EPA are synonymous." SEC Mot. *in Limine* No. 4 (Dkt. No. 280) at 18. Although, again, Ustian would be hard-pressed to say exactly what counts as a suggestion that EPA and the SEC "are synonymous," Ustian has done no such thing. Nothing cited in the SEC's motion supports this conclusion, and none of the actions it describes was improper.

First, the SEC points to Ustian's legal argument that EPA deemed discussion of Navistar's EGR applications subject to the deliberative process privilege in part because disclosure would cause public confusion. SEC Mot. *in Limine* No. 4 (Dkt. No. 280) at 18.[4] Neither the cited fact, which Ustian proposed during the parties' efforts to draft a Joint Statement of Undisputed Material Facts, nor the legal argument Ustian made at the motion to dismiss stage, turns on the notion that EPA and the SEC are synonymous. *Id.* at 18. The proposed statement of fact was explicit that the SEC and EPA were **not** synonymous, describing EPA as "*another* arm of the government." Joint Motion to Determine Factual Disputes (Dkt. No. 241) at 85 (emphasis added). Nor do any of the legal arguments Ustian made at the motion-to-dismiss stage support the SEC's theory. The SEC selectively quotes from Ustian's reply in support of his motion to dismiss, but his opening brief makes the argument directly: "the disclosure obligation *SEC* seeks to impose is contrary to *EPA's* refusal to produce 'pre-decisional' Navistar certification documents in response to FOIA requests. ... Ustian cannot have violated the securities laws by failing to disclose information that *EPA itself* believes would confuse the public." Mem. in Support of Ustian Mot. to Dismiss (Dkt. No. 27) at 17 (first and second emphases added). This

---

[4] This evidence is the subject of a separate motion *in limine*.

was a legal argument to the Court, not a factual argument to a jury, and the Court determined resolution of the legal argument at the motion-to-dismiss stage was premature. The argument in no way suggests that EPA and the SEC are "synonymous." The argument is in no way confusing or unfairly prejudicial.

Next, the SEC incorrectly claims discovery correspondence from early in this litigation (a) previews Ustian's trial strategy and (b) suggests that EPA and the SEC are synonymous. The SEC is wrong on both points. The SEC cites June 1 and July 1, 2016, letters to the SEC discussing the SEC's legal control over EPA documents. The subject of these letters was a legal dispute related to discovery issues that are no longer relevant, and the SEC does not explain how or why these discussions would ever reach a jury. Moreover, the letters do not suggest EPA and the SEC are synonymous, but rather reflect Ustian's (correct!) understanding that the SEC had been working with EPA for years on document production and preservation, and that SEC attorneys would therefore be in a position to identify officials at EPA responsible for document preservation. As the June 1, 2016, letter makes clear, the letter was sent in reference to a "legal hold notice transmitted on July 25, 2014 by [SEC attorney] Amy Hartman to David Dickinson at the U.S. Environmental Protection Agency." Ex. 9 to SEC Mot. *in Limine* (Dkt. No. 280-8). Asking the SEC to "please identify the most knowledgeable person(s) within EPA so to the preservation of documents pertaining to this matter, as well as the person(s) within [the] SEC who are most knowledgeable about the hold" was neither unreasonable nor a suggestion that the two agencies are synonymous. *Id.*

Finally, the SEC points out that Ustian elicited deposition testimony about EPA's "purported failure to alert to alert the SEC of its concerns." SEC Mot. *in Limine* No. 4 (Dkt. No. 280) at 19. First, this again presumes the **difference** – not the synonymy – of the SEC

and EPA.  Second, the deposition testimony will support proper cross-examination of witnesses

on the SEC's will call list and discredits/impeaches documents on the SEC's exhibit list.  These

SEC-proffered documents suggest, in relevant part, that EPA employees monitored Ustian and

Navistar's statements and sent internal emails suggesting the opinion that the statements were

not accurate.  One email discusses whether other federal agencies, including the SEC, are aware

of the statements.  *See, e.g.*, Ex. 39 to Ustian Mot. *in Limine* (Dkt. No. 283).[5]  If these documents

are admitted and/or their senders or recipients testify, Ustian must be permitted to cross-examine

those witnesses effectively.  The deposition testimony cited in the motion is consistent with that

effort:  none of the EPA officials who sent or received those emails reported any concerns

outside of EPA, either to Ustian, Navistar, or the SEC.  The appropriateness of that cross-

examination has nothing to do with the fact that EPA and the SEC are both federal agencies, and

certainly the argument does not suggest the agencies are one and the same.

None of the examples in the SEC's motion supports the notion that the SEC and EPA are

synonymous.  Nevertheless, the SEC argues that "***taken together***, these arguments could suggest

to a jury that the EPA and the SEC are one body, and that the EPA's purported failure to alert the

SEC to its concerns regarding Ustian's and Navistar's statements at the time they were made

should limit the SEC's ability to pursue its claims against him."  SEC Mot. *in Limine* No. 4

(Dkt. No. 280) at 19 (emphasis added).  The SEC does not attempt to explain how Ustian's draft

undisputed facts or its discovery correspondence related to document preservation could

conceivably reach the jury.  There is no chance the jury would ever have the opportunity to take

---

[5]  Ironically, the SEC opposes Ustian's own Motion *in Limine* No. 5, which seeks to exclude many of
these same documents.  The SEC seemingly wants to introduce documents suggesting that EPA personnel
claim to have doubted certain Navistar statements but keep from the jury the impeaching fact that these
EPA personnel never acted on their supposed suspicions.  *See* Ustian Mot. *in Limine* No. 5 (Dkt. No. 283)
at 46 (moving to preclude hearsay and improper lay opinion testimony from certain EPA witnesses).

the arguments "together," which the SEC says is necessary for even the potential for prejudice to exist.  But in any event, none of the cited activity actually suggests that EPA and the SEC are one body.  This is dispositive.

> **B.**     **The SEC's Motion Does Not Present A Workable Method To Implement The Relief It Seeks**

The motion is conspicuously unclear as to the specific relief it seeks.  *See, e.g.*, *Tomao v. Abbott Labs., Inc*., 2007 WL 141909, at *6 (N.D. Ill. Jan. 16, 2007) (denying motion *in limine* where relief sought was "vague and unclear").  If knowledge that the SEC and EPA are both federal agencies is unduly prejudicial, there is no clear limit to the remedy.  Must jurors be stricken for cause if they are aware that EPA and the SEC are both federal agencies?  Must they be stricken if they are unfamiliar (or overly familiar) with administrative law?  Should the Court delete the words "United States" before "Securities and Exchange Commission" in the case caption, or in the scores of exhibits with reveal "United States" EPA?  Ustian has not and will not argue that EPA is **part** of the SEC, or vice versa.  Such an argument would be plainly false, so there is no risk Ustian will make the argument.  It is not clear what additional relief the SEC wants or needs.

Nor does the SEC cite any legal support for the propriety of its curious theory.  The only tangentially relevant case[6] on which the SEC relies actually **endorsed** the practice of using the phrase "the government" in reference to a single office of one federal agency.  *See United States v. Rourke*, 74 F.3d 802, 807 (7th Cir. 1996) ("it is obvious that the term 'government' refers solely to the U.S. Attorney for the Northern District of Illinois").  That case, which dealt with

---

[6] The SEC also cites *Simmons v. City of Chicago*, 2017 WL 3704844 at *4 (N.D. Ill. Aug. 28, 2017), and *Martinez v. City of Chicago*, 2016 WL 3538823 at *12 (N.D. Ill. June 29, 2016), for the proposition that a court may grant a motion *in limine* based on lack of relevance or undue prejudice.  Of course this is an accurate statement of the law.  *See* Fed. R. Evid. 401, 403.  But those opinions have zero factual overlap with this motion and are otherwise irrelevant.

whether a federal court could order the Department of Justice to order the Federal Aviation

Administration to issue a pilot certificate (*see id.* at 810), is otherwise irrelevant.

### C.     EPA And The SEC Did Cooperate In The Investigation And Are Identified With One Another

Perhaps the most problematic aspect of the SEC's motion is that it asks the Court to

endorse the false narrative that EPA and the SEC were wholly independent of one another during

the SEC's investigation and this litigation.  They were not silos.  The SEC's lawyers reached out

informally to EPA by email in June 2013 and requested an "informal discussion with the EPA

staff who dealt with Navistar" with respect to certification questions.  *See* Ex. 4, Email fr. A.

Blazek (Apr. 27, 2012).  EPA agreeably made an investigator who was "well versed in mobile

source issues" available to speak with and assist the SEC.  *Id.*  A few months later, the SEC took

advantage of an EPA regulation that explicitly permits EPA to share confidential information

with "other Federal agencies."  *See* 40 C.F.R. § 2.209(c).  The SEC used this regulatory

mechanism – still available to the SEC but unavailable to Ustian – to make self-serving

document requests, including the request that EPA provide to the SEC "communications from

EPA to Navistar (or records of meetings) suggesting that Navistar's applications may not

be/would not be approved."  *See* Ex. 5, Email fr. A. Blazek (Sept. 5, 2013).  Also during the

course of its investigation, EPA graciously allowed SEC staff to interview key employees who

are now on the SEC's trial witness list.  The SEC has withheld memoranda summarizing these

interviews, which attorneys for **EPA** attended, as attorney work product.  This is not

independence.

Perhaps the SEC wants to exclude this evidence because this type of coordination is part of the

evidence that Ustian could use to lay a proper foundation to treat EPA employees as "identified

with an adverse party" under Fed. R. Evid. 611(c).  Excluding discussion of this type of

coordination would also impair Ustian's ability to cross-examine EPA witnesses effectively as to their biases.

**D.      Conclusion**

Although Ustian and Navistar are not synonymous, the jury undoubtedly will evaluate Navistar documents and Navistar employee testimony with the knowledge that there was a relationship between the two.  Similarly, the United States Securities and Exchange Commission has a relationship with the United States Environmental Protection Agency that also should be considered by the jury.  This motion *in limine* seeks a remedy that would materially prejudice Ustian's trial rights in violation of the Federal Rules of Evidence.

For the reasons set forth herein, the SEC's Motion *in Limine* No. 4 to Preclude Ustian From Introducing Any Evidence Or Argument That The SEC and EPA Are Part of One Federal Government should be denied.

## V.     USTIAN'S RESPONSE IN OPPOSITION TO THE SEC'S MOTION *IN LIMINE* NO. 5 FOR AN ORDER PERMITTING THE SEC TO INTRODUCE EVIDENCE OF MEETINGS AND COMMUNICATIONS BETWEEN NAVISTAR AND THE EPA AND TO PRECLUDE USTIAN FROM ARGUING SUCH MEETINGS AND COMMUNICATIONS CONSTITUTED "SETTLEMENT DISCUSSIONS" UNDER RULE 408

The SEC's motion for an order to permit the SEC to introduce evidence of confidential settlement communications between EPA and Navistar on the one hand, and to prevent Ustian from explaining that the communications were confidential settlement communications on the other hand, should be denied.  Admissibility is precluded for three separate and independent reasons:  first, there is an ironclad, broad confidentiality agreement prohibiting disclosure to third parties; second, the prohibitions of Rule 408; and third, the protections of Rule 403.  The SEC's motion is predicated on an SEC invention; namely, that the discussions were not for litigation settlement – even though the settlement purpose is an immutable reality.  *See* Ustian Mot. *in Limine* No. 6 (Dkt. No. 283) at 47-58. The SEC has no factual support because there is none.

### A.     The Broad Confidentiality Agreement Bars Disclosure Of The Settlement Communications

Before addressing the specifics, we set out below the actual settlement confidentiality agreement between the government and Navistar to leave no doubt about the context.  The agreement (conspicuously **omitted** by the SEC) was memorialized in an email before the discussions began.  Among other things, that agreement provided for strict confidentiality that went far beyond the boundaries of even Rule 408.  Specifically, the government demanded a mutual promise to never discuss anything about those communications, including even the fact that discussions occurred.  The agreement makes the inadmissibility analysis simple and indisputable:

**From:** Laurence H Levine
**Sent:** Monday, June 20, 2011 8:45 AM
**To:** *Simon.Karl@epamail.epa.gov*
**Cc:** Charbonneau, Patrick E (Patrick.Charbonneau@navistar.com)
<Patrick.Charbonneau@navistar.com>; Covey, Steven K
(Steven.Covey@Navistar.com) <Steven.Covey@Navistar.com>;
robin.hulshizer@lw.com
**Subject:** June 30, 2011 Meeting

Dear Karl,

> *Consistent with your request, we write to confirm that the June 30 meeting between EPA and Navistar representatives and discussions related to it are and will remain confidential. Neither the occurrence of the meeting nor its content will be disclosed by the participants to third parties.* We understand that EPA representatives may not respond at the meeting to any settlement proposals Navistar offers, but that EPA will respond very quickly as it sees fit following the meeting.

> Since this meeting *and any related communications* are for the purpose of possible settlement of existing and anticipated litigation between Navistar and the EPA, the parties will *also* be bound by Rule 408 of the Federal Rules of Evidence and applicable exemptions of the Freedom of Information Act, including but not limited to Exemption 5 U.S.C. § 552(b)(5).

Ex. 52 to Ustian Mot. *in Limine* (Dkt. No. 283) (emphasis added).

## B. The Totality Of The Circumstances Demonstrates That The Purpose Of The Meetings Was To Settle The Level Playing Field Lawsuits

In its simplest terms, the SEC's claim that the purpose of the October 21, 2011, December 9, 2011, and December 16, 2011, meetings (collectively, the "Settlement Meetings") was "to help Navistar's business, not settle any litigation," is false. SEC Mot. *in Limine* No. 5 (Dkt. No. 280) at 21.

### 1. <u>There Is No Serious Question About Confidentiality</u>

The SEC not only omitted the comprehensive confidentiality agreement, it also skipped over the fact that several lawsuits were pending between Navistar and EPA in 2011. *See* Ustian Mot. *in Limine* No. 6 (Dkt. No. 282) at 47-48 (identifying the "Level Playing Field Lawsuits"). These lawsuits sought to level the certification-testing playing field to conform to EPA

regulations and its bedrock policy of neutrality in certification testing.  In other words, the EPA

does not pick winners and losers in emission control technologies.  All technologies will be

tested with the same procedure.  Everyone plays by the same set of rules.  More specifically, the

Level Playing Field Lawsuits were triggered by EPA's interpretation of its regulations for 0.2g

NOx that enabled SCR to pass the test by not requiring SCR engines to account for the fact that

they frequently fail to turn on in the real world.  *See id.*  EPA relaxed the certification test for

SCR engines.  SCR could be certified even though it releases ultra-high levels of NOx into the

air.  The EPA interpretation went off the rails when EPA turned a willful blind eye to the law and

asked Navistar to stick to real-world certification testing.  That tilted the testing playing field and

put Navistar at a competitive disadvantage.  (It is more difficult and expensive to meet real-world

testing.)  Navistar sued EPA to level that playing field and settlement discussions ensued.

While courts look to the "totality of the circumstances" to identify "settlement"

communications, here there are no circumstances other than settlement.  *Raybestos Prods. Co. v.*

*Younger*, 54 F.3d 1234, 1241 (7th Cir. 1995).  As memorialized in the June email from

Navistar's counsel (*see supra* at 30), and discussed in Ustian's Motion *in Limine* No. 6,

settlement discussions related to the Level Playing Field Lawsuits began in June 2011 with a

mutual ironclad promise of strict confidentiality.  Both parties wanted to settle and the

confidentiality agreement the government needed facilitated frank communications.  That is

precisely why written materials prepared in connection with **each** of the meetings bore distinct

confidentiality and Rule 408 designations.  *See* Ustian Mot. *in Limine* No. 6 (Dkt. No. 283) at

49-50.

And, those clearly were not *pro forma* confidentiality designations as the **content** of the

materials makes it clear that the purpose of the parties was to settle the Level Playing Field

30

Lawsuits.  For example, the very first bullet of **EPA's** talking points for the October 21 meeting states "<u>Settlement Privileged</u>:  This meeting is considered settlement privileged. . . . You should both feel free to have a frank and open conversation."  Ex. 53 to Ustian Mot. *in Limine* (Dkt. No. 283) (emphasis in original).  That memorandum then continues to identify different avenues to settlement, including a discussion of non-conformance penalties ("NCPs"), a consent decree, and **a conditional engine certification** for Navistar, among other ideas.  *See id.*  The EPA memorandum prepared for the December 9 meeting similarly discusses various settlement ideas, including an "Alternative Environmental Offset," among other items.  *See* Ex. 54 to Ustian Mot. *in Limine* (Dkt. No. 283).

Also omitted by the SEC is the Power Point Navistar prepared for the December 16, 2011, settlement meeting that bore "Confidential-Rule 408" designations on every page – a meeting that the SEC is anxious to use as an "off the books" EPA technology assessment, which the SEC hopes will prejudice the jury's thinking about subsequent Navistar/EPA certification discussions.  *See id.* at Ex. 55; *see also* Ustian Mot. *in Limine* No. 6 (Dkt. No. 283) at 57 (discussing the SEC's use of a December 16, 2011, EPA email, which stated that EPA did not approve of the "engine described" during the settlement meeting).  The seven-slide presentation generally describes the Navistar 0.2g-NOx, in-cylinder technology, its delay due to hardware supply, and settlement with **a conditional certification** via a "Not-To Exceed" deficiency (*i.e.*, a waiver) provided for in EPA regulations.  Ex. 55 to Ustian Mot. *in Limine* (Dkt. No. 283) at Slide 6.

Since the actual facts do not work, the SEC does more than "embellish"; it makes up a fact and claims that the December 16, 2011, meeting was not a settlement meeting at all, but a "business" meeting to have EPA approve a nonexistent certification application.  SEC Mot. *in*

*Limine* No. 5 (Dkt. No. 280) at 21-23.  No application was submitted at any of the meetings.  Nor was any test data submitted.  Those are just two *sine qua non* for a certification application even to be considered by EPA.  Undeterred by the facts, however, the SEC goes on to "embellish" some more and say it wants to tell the jury that EPA actually decided to reject the nonexistent data and nonexistent application at the December 16, 2011, meeting.  *See* Ustian Mot. *in Limine* No. 6 (Dkt. No. 283) at 57-58 (discussing ways the SEC has misused a December 16, 2011, EPA email).  Even if it were not covered by the confidentiality agreement, the slide presentation for the December 16, 2011, meeting and associated emails that the SEC wants to use say no such thing.  Instead, the contemporaneous documents prepared for the Settlement Meetings confirm that the sole purpose of the parties in that meeting was the same in every other meeting they had for six months, namely, to level the playing field for Navistar's EGR engines so they could settle the Level Playing Field Lawsuits.

Indeed, additional documents from late 2011 further buttress the fact that these meetings were protected by both Rule 408 and the parties' confidentiality agreement.  Byron Bunker's handwritten notes from meetings throughout late 2011 – including the October 21, 2011, meeting – were stamped repeatedly with "settlement" notations like "Navistar discussions are settlement privileged."  Ex. 10, B. Bunker Notes (Oct. 21, 2011) at 3; *see also id.* at 1 (noting October 17, 2011, meeting as "settlement"); *see also id.* at 2 (designating October 20, 2011, call with Patrick Charbonneau as "settlement confidential"), *id.* at 4 (same for October 25, 2011, meeting), *id.* at 5 (same for November 4, 2011, meeting), *id.* at 6-8 (same for an undated November 2011 meeting).  Similarly, a memorandum that Justin Greuel prepared for Bunker in October 2011 emphasized that an upcoming meeting should be designated as a "settlement discussion so that both parties can talk freely without concern that the statements will later be brought out as part of

the current *or future* litigation." Ex. 11, Email fr. J. Greuel (Oct. 7, 2011) at 2 (emphasis added). In short, the parties took measures to ensure that the content of their communications in late 2011 would be protected by Rule 408 and the parties' confidentiality agreement and thus not disclosed – particularly to third parties for use in a "future litigation."

      **2.**    <u>The SEC Business "Argument" Only Reinforces The Reality Of Settlement</u>

     The SEC's lurching struggle to erase "settlement" from the record only causes the SEC to verify that there is nothing to this. The SEC first nonsensically says the absence of lawyers at the Settlement Meetings converts those discussions into business meetings. *See* SEC Mot. *in Limine* No. 5 (Dkt. No. 280) at 22-23. It should be unnecessary to observe that it is elementary that parties to litigation can meet to try to settle their disputes without their lawyers. That is not only true as a general matter, but (again omitted by the SEC) that is precisely what **EPA demanded**. The SEC has a letter dated, November 1, 2011, which counsel for Navistar sent to DOJ and EPA counsel addressing "the government's objection to [counsel's] participation in recent settlement discussions with [EPA]." Ex. 12, Ltr. fr. L. Levine (Nov. 1, 2011) at 1. Counsel for Navistar observed that the purpose of those discussions was "to reach a resolution of the tilted playing field created by the EPA SCR certification procedures." *Id.* at 2. EPA nevertheless requested that lawyers not be present at the meetings. *See id.* at 1. While Navistar noted "that your instructions [no lawyers] . . . are counterproductive to that effort," Navistar agreed to "honor your request," and further indicated that principles of fairness mandate that "the government's lawyers do exactly the same." *Id.* at 2. That is why no lawyers were present.

     Next, the SEC cites one document in connection with the October 21 meeting to try and demonstrate that the meeting did not relate to settlement. *See* Ex. 11 to SEC Mot. *in Limine* (Dkt. No. 280-11). To start, as the SEC is clearly aware, that document is dated four days after

the October 21 meeting and makes no specific mention of that meeting. Even if the document did relate to that meeting, it affirms – not contradicts – that the purpose of that meeting was to try and settle the Level Playing Field. *See id.* (citing a partially privileged email sent to Navistar's General Counsel and outside trial counsel).

That is followed by three documents relating to a December 9, 2011, settlement meeting. The first is an internal Navistar email sent almost seven months after the meeting occurred with a five-sentence summary of the meeting. *See* Ex. 12 to SEC Mot. *in Limine* (Dkt. No. 280-12) (dated June 27, 2012). The second is an email from EPA following the meeting, which the SEC highlighted only because the email happened to "not mention any litigation or settlement." SEC Mot. *in Limine* No. 5 (Dkt. No. 280) at 23; *see also* Ex. 13 SEC Mot. *in Limine* No. 5 (Dkt. No. 280-13). Neither a cursory, *post-hoc* summary of the meeting nor the fact that a communication failed to use the word "settlement" converts the meeting from an effort to resolve the Level Playing Field Lawsuits into something else. The third document that the SEC cites is a November 2011 email that concerns a non-settlement meeting, unremarkably distinguishes it from the separate track of ongoing "settlement meetings," and alerts the recipient that for that meeting, "We are not in settlement negotiations." Ex. 14 to SEC Mot. *in Limine* (Dkt. No. 280-14) (dated Nov. 28, 2011).

And the lone document the SEC seizes on for the December 16 meeting simply states that the parties will discuss a "new certification application" at the meeting. Ex. 15 to SEC Mot. *in Limine* (Dkt. No. 280-15). That is accurate – many certification ideas that would level the playing field were analyzed by the parties during the extended settlement meetings as a mutual *quid pro quo* to get to dismissal of the lawsuits. *See* Ustian Mot. *in Limine* No. 6 (Dkt. No. 283) at 57 (reinforcing that the December 16 meeting involved an informal discussion of a settlement

34

framework).  In short, reality intrudes.  The meetings were demonstrably for settlement and were promised to be kept confidential and undisclosed, period.

Finally, the SEC tries to use testimony from a few EPA witnesses who did not refer to the meetings as "settlement" discussions.  *See* SEC Mot. *in Limine* No. 5 (Dkt. No. 280) at 22-23.  As an initial matter, the SEC omits that some witnesses **did** recall the settlement purpose of these meetings.  *See* Ustian Mot. *in Limine* No. 6 (Dkt. No. 283) at 50 (citing testimony from R. Younessi and D. Ustian).  Moreover, for the witnesses who did not explicitly testify that the Level Playing Field lawsuits precipitated the meetings in question – that makes sense.  The meetings took place eight years ago and in the middle of dozens of other communications with Navistar about myriad issues, including but not limited to the three applications at issue in this case.  It is no wonder certain EPA witnesses may blur their Navistar-related communications together.  In fact, one of those EPA witnesses, Byron Bunker, through his own testimony proved that his memory was defective as he insisted on direct that a Navistar lawyer attended the December 16, 2011, meeting.  Ex. 13, (Oct. 23, 2018) at 238:20-25 (claiming that Larry Levine attended the meeting); Ex. 14, Dep. of B. Bunker (Dec. 7, 2018) at 159:21-160:2 (same).  He testified with rich detail about the conversation he "recalled" he had with that lawyer.  *See* Ex. 14, Dep. of B. Bunker (Dec. 7, 2018) at 165:8-10 (claiming "Mr. Levine and I had a long conversation about our discretion to certify something above the standard"); *see also id.* at 361:13-362-7 (claiming the "bulk of that conversation was carried by counsel, Larry Levine").  But, as certain as Bunker was about his recall, that recollection – including all that detail – was imaginary.  The lawyer was not even there.  In fact, consistent with EPA's demand, no lawyers attended that meeting.  *See* Ex. 15, EPA Memo (Dec. 16, 2011) (identifying attendees at the December 16, 2011, meeting, which included no attorneys).

### C. Evidence Regarding The Settlement Meetings Are Barred By Prior Agreement

Before reaching the bar under the applicable Federal Rules of Evidence, the inadmissibility of the Settlement Meetings here is conclusively put to rest by the sweeping confidentiality restrictions imposed by the government.  As shown in Ustian's Motion *in Limine* No. 6, disclosure of settlement communications is independently barred by operation of a 2011 agreement between EPA and Navistar.  That agreement (set out in full above) precluded disclosure to third parties of anything – even the fact that settlement meetings took place: "***Neither the occurrence of the meeting nor its content will be disclosed by the participants to third parties***."  Ex. 52 to Ustian Mot. *in Limine* (Dkt. No. 283) (emphasis added).  The agreement says it all in plain English and there is nothing to say in response by the SEC on the agreement since (perhaps understandably) the SEC quite intentionally skipped over it altogether.  None of the arguments made by the SEC regarding the applicability of Rule 408 undermine the mutual agreement between the U.S. Government and Navistar that prohibits the disclosure of this material.

### D. Rule 408 Also Preludes Admissibility

The Level Playing Field Lawsuits overlap with this case and trigger Rule 408.  *See* SEC Mot. *in Limine* No. 5 (Dkt. No. 283) at 25-26.  To start, and as described in Ustian's Motion *in Limine* No. 6, even though the parties functionally are the same (*i.e.*, the U.S. Government versus Navistar or its former CEO), identity of parties is not necessary for Rule 408 to apply.  *See* Ustian Mot. *in Limine* No. 6 (Dkt. No. 283) at 54-55 (collecting cases).  There also is undeniable and complete overlap between the EPA real-world-certification issue the parties were trying to settle in 2011 and the SEC claim here that Navistar did not disclose that EPA questioned whether

Navistar's certification applications met EPA requirements since EPA was requiring of Navistar testing to account for real-world NOx.

Specifically, the Level Playing Field Lawsuits revolved around the lawfulness of the certification test procedures that EPA used to certify SCR engines because those test procedures did not take into account real-world NOx emissions. *See id.* at 47-48 (detailing Level Playing Field Lawsuits). Whether accounting for real-world NOx emissions was required under EPA certification requirements is the core issue as to the good faith of Navistar's applications and its engineers. The SEC has put that question front and center: in its Complaint, unintentionally paraphrasing the Level Playing Field Lawsuits, the SEC says Navistar operated its engine "below the 0.20 NOx standard during emissions testing in a laboratory but above the 0.20 NOx standard when a vehicle was in motion." Am. Compl. (Dkt. No. 67) ¶ 97. Thus, both in the Level Playing Field Lawsuits and the case at bar, the trier of fact must answer this question: whether EPA's certification testing procedures must account for real-world NOx emissions.

Even if the claims were not identical, the "spirit of Rule 408" separately requires exclusion of evidence related to the Settlement Meetings. In *Washtenaw Cty. Emp.'s Ret. Sys. v. Walgreen Co.*, the court put it best when it denied **discovery** of settlement discussions in a case with non-identical parties or claims:

> Disclosure of Rule 408-protected materials creates a burden beyond the monetary cost of providing the discovery, and this burden is not addressed by the entry of a protective order that limits disclosure to third parties or even beyond the parties' attorneys. The burden lies in the chilling effect on free and frank settlement negotiations. If, for example, a party knew that its presentations and statements to regulators or to government investigators . . . will be freely discoverable in the follow-on civil litigation, that form and content of such a party's communications with the regulators . . . will be significantly affected. Parties may refrain from making written presentations, either in the form of PowerPoint slides or so-called 'white papers.'"

2019 WL 6108220, (N.D. Ill. Nov. 15, 2019) at *7. No engine manufacturer would engage in "free and frank" settlement discussions with United States EPA if it understood that those discussions could be used by the United States SEC to try to establish securities fraud. Rule 408 applies to the Settlement Meetings and any evidence related to them should be barred from trial.

The cases relied upon by the SEC have no bearing on the applicability of Rule 408 here. In *Raybestos Products*, the court admitted the correspondence in question because it was sent months before plaintiff filed the complaint in an effort to "intimidate the plaintiff," not as part of any settlement for a lawsuit that did not yet exist. 54 F.3d at 1241; *see also* SEC Mot. *in Limine* No. 5 (Dkt. No. 280) at 25. In *Rennenger v. Manley Toy Direct LLC*, the president of the defendant company called the plaintiff, claimed that "he represented" the defendant company and "said he could give her a gift, some money, or a car," if the parties settled the lawsuit. 161 F. Supp. 3d 719, 721 (S.D. Iowa 2015). The court there admitted evidence of that call "[g]iven [that it was a] surprise con-tact [*sic*] from the President of a defendant company to an individual plaintiff," which "appear[ed] more an intentional or inartful effort to influence the [p]laintiff" than a "statement made during compromise negotiations about [a] claim." *Id.* at 722; Fed. R. Evid. 408(a)(2). Here, there was neither an effort to intimidate nor influence any party; the Settlement Meetings were planned meetings between two sophisticated parties to try to level the playing field for Navistar. Evidence thereof triggers Rule 408 protection.

### E. The SEC Wants The Settlement Meetings To Prove A Disputed Claim

Not only is there clear overlap between the Level Playing Lawsuits and this case triggering Rule 408, but the SEC candidly states that it intends to use the Settlement Communications for the very purpose prohibited by the Rule – to "prove . . . the validity of a disputed claim." Fed. R. Evid. 408. The SEC bluntly declares that it wants to use the communications to try to establish that "Ustian and Navistar were on notice that the EPA would

not certify an engine with the characteristics proposed by Navistar." SEC Mot. *in Limine* No. 5 (Dkt. No. 280) at 27. Put more directly, the SEC wants to convert a settlement dialogue into a "virtual" certification application, which was "virtually" rejected by EPA and then "virtually resubmitted" by Navistar later knowing it was doomed. And, voila, that proves securities fraud. Yet, the facts and the law intervene.

To start, neither settlement meeting that Ustian attended – the October 21 and December 9 meetings – included any discussion regarding "the characteristics" of an engine to be submitted to EPA for certification. SEC Mot. *in Limine* No. 5 (Dkt. No. 280) at 27; *see also* Ustian Mot. *in Limine* No. 6 (Dkt. No. 283) at 49-50, 56-57 (describing the Settlement Meetings and establishing that neither meeting Ustian attended had anything to do with the technical details of any application). Thus, even if they were otherwise admissible, the operative facts simply will not allow a credible claim that either of those meetings establish "notice" of any EPA communication about any engine application, or show "Ustian's state of mind" related to any engine application. SEC Mot. *in Limine* No. 5 (Dkt. No. 280) at 28.

Regarding the December 16 meeting – which Ustian did not attend – EPA sent an email after the meeting vaguely saying that the engine "***described*** today by the Navistar team . . . does not appear to meet" EPA certification requirements. Am. Compl. (Dkt. No. 67) ¶ 93 (quoting a portion of the six-sentence email) (emphasis added). That, of course, tells the reader zero about the "description" being referenced. Furthermore, on December 16, 2011, there was no application pending and no test data furnished. *See* Ustian Mot. *in Limine* No. 6 (Dkt. No. 283) at 57-58. Failing to reach a settlement agreement in a discussion describing an unspecified engine says nothing to anyone, let alone a "notice" that "EPA would not certify" yet-to-be assembled and yet-to-be submitted certification application.

The SEC's objective is clear: to prejudicially use the failure of a settlement to try to sway the jury on liability. Nowhere is that clearer than the Complaint. The SEC block-quotes EPA's December 16 email, presents it as though it relates to Navistar's forthcoming (and not yet drafted) January 2012 application, and claims that the email demonstrates that Ustian "knew, but did not disclose, that . . . Navistar's statements in the December 2011 Annual Report conflicted with what the EPA had told Navistar. . . . Any interpretation to the contrary by Ustian of the EPA's feedback was highly unreasonable." Am. Compl. (Dkt. No. 67) ¶¶ 93-97.

In other words, if admitted into evidence, the SEC will tell the jury that these settlement communications establish that Ustian "violated . . . Section 10(b) of the Exchange Act" by making an allegedly "untrue statement[] of material fact[] and omitted to state material facts necessary in order to make statements made . . . not misleading." *Id.* ¶¶ 188-90. Thus, evidence related to the Settlement Meetings fall squarely in the confines of Rule 408. *See* Ex. 58 to Ustian Mot. *in Limine* (Dkt. No. 283), *Walgreen Co.*, 2019 WL 6108220, at *7-8 (denying discovery of Rule 408 material because "[p]laintiffs want to use the documents to prove the validity of their claims under Section 10(b) that defendants made false, material representations with scienter").

Again, the cases relied upon by the SEC are inapposite. In *Zurich Am. Ins. Co. v. Watts Industry, Inc.*, the Seventh Circuit affirmed the introduction of settlement evidence because it expressly was not being used to demonstrate liability, but to show that there was an "arbitrable dispute under the deductible agreements." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 690 (7th Cir. 2005). In *Wine & Canvas Devel. v. Muylle*, the Seventh Circuit affirmed the introduction of settlement evidence because the settlement discussions pertained to one claim yet it was being offered as evidence relevant to a separate claim. 868 F.3d 534, 540 (7th Cir. 2017). Here, as discussed, the claim in the Level Playing Field Lawsuits and the claim here – *i.e.*,

40

whether EPA certifies engines without accounting for real-world NOx emissions – is the same. Even if the claims are not identical, however, the spirit of Rule 408 mandates exclusion of evidence related to the Settlement Communications.  *See supra* at 38-39.

### F.     The SEC Cannot Unilaterally Bar Ustian From Referring To Settlement

While we respectfully submit that the Court should preclude use of the settlement communications, the SEC's flip request to preclude Ustian from even "argu[ing] before the jury that these communications are settlement-related" is a remarkable display of uninhibited tactical expediency.  SEC's Mot. *in Limine* No. 5 (Dkt. No. 280) at 29.  The SEC is functionally asking the Court to bless its effort to unfairly prejudice Ustian and to confuse and mislead the jury.  To try and establish liability, the SEC is forced to twist a **December 2011** settlement communication about a "description" of an engine application into a rejection of a **January 2012 application**.  That counter-factual use of a confidential settlement communication alone is sufficient to bar the evidence under Rule 403.  *See* Ustian Mot. *in Limine* No. 6 (Dkt. No. 283) at 56-58.

But the SEC wants go a step further; now the SEC is asking to present that communication to the jury without allowing Ustian an opportunity to at least attempt to cure the misleading way in which the SEC wants to present it.  The SEC wants to prevent the jury from understanding why Navistar and EPA met, why Navistar engineers raised a conceptual engine application with EPA on December 16, and why EPA wrote the email that it did on December 16.  It is understandable why the SEC does not want the jury to hear the context underlying EPA's December 16 email – the context is what fatally undermines the SEC's case.  The Level Playing Field Lawsuits firmly establish that EPA, Navistar engineers, and Ustian knew that EPA certified SCR engines in a manner that did not reflect real-world NOx emissions.  The fact that EPA certified SCR engines without accounting for their high-polluting real-world NOx

emissions is the precise reason why Ustian had a good-faith belief that Navistar's 2012 applications met EPA certification requirements and should be certified. Navistar's 2012 applications were tested under the same procedure approved by EPA for SCR but with less real-world NOx pollution.

The SEC does not want Ustian to provide that context to the jury because it highlights the reasonableness, honesty, and good faith of Ustian's state of mind during the relevant time period. The fact that the SEC is moving to bar Ustian from explaining how "these communications are settlement related" simply reinforces that the SEC's intended use of this evidence is to unfairly prejudice Ustian, and to confuse and mislead the jury. SEC Mot. *in Limine* No. 5 (Dkt. No. 280) at 29. Evidence related to the Settlement Meetings should be barred under Rule 403. But, should the Court allow settlement communications to be introduced, Ustian is entitled to have a full and fair opportunity to correct the record and present the jury with all facts necessary to accurately understand communications related to the Settlement Meetings.

### G. Conclusion

For the reasons set forth herein and for the reasons set forth in Ustian's Motion *in Limine* No. 6, the SEC's motion should be denied and Ustian respectfully submits that reference to, discussion of, or the introduction of evidence regarding the Settlement Meetings should be excluded at trial as barred by Rules 408 and 403 of the Federal Rules of Evidence and independently barred by the broad 2011 non-disclosure agreement between Navistar and the government.

## VI.    USTIAN'S RESPONSE IN OPPOSITION TO THE SEC'S MOTION *IN LIMINE* NO. 6 TO PRECLUDE USTIAN FROM ELICITING LAY OPINION TESTIMONY REGARDING THE ACCURACY OF DISCLOSURES AND USTIAN'S STATE OF MIND

The SEC wants to "preclude[] [Ustian] from eliciting testimony regarding a witness's opinion on (1) whether statements by Ustian or Navistar were inaccurate and; (2) Ustian's state of mind."  SEC Mot. *in Limine* No. 6 (Dkt. No. 280) at 30.  In reality, the SEC's Motion *in Limine* No. 6 involves two separate motions, one illustrated by questions asked of engineers (who worked on the engine programs at issue and had firsthand knowledge of the development/certification of the engines at various periods in time) and the other illustrated by questions asked of Michael Hammes who worked for years with Ustian.  The SEC's Motion *in Limine* No. 6 is similar to, yet quite unlike, Ustian's Motions *in Limine* Nos. 3 and 5, which seek to exclude lay opinion testimony from analysts on materiality and lay opinion testimony from certain EPA witnesses regarding the accuracy of statements at issue, respectively.  *See* Ustian Mot. *in Limine* Nos. 3, 5 (Dkt. No. 283) at 22-30, 36-46.  All four motions turn on the applicability of Federal Rule of Evidence 701.  When that law is applied, however, it is clear that SEC's two "lay opinion" motions should be denied while Ustian's two "lay opinion" motions should be granted.

Ustian agrees with the SEC that Rule 701 bars speculative opinion testimony to try to establish fraud by hindsight.  *See* SEC Mot. *in Limine* No. 6 (Dkt. No. 280) at 32.  Thus, as set forth in Ustian's Motion *in Limine* No. 3, the Court should bar the SEC from asking analysts hypothetical questions about what the analyst "would have considered 'important'" a decade ago when Ustian made the statements at issue.  *See* Ustian Mot. *in Limine* No. 3 (Dkt. No. 283) at 22-30.  Ustian further agrees that lay witnesses cannot offer opinions "about loaded legal concepts such as whether or not the defendant's statements were materially false or misleading or

43

inaccurate[.]" *See* SEC Mot. *in Limine* No. 6 (Dkt. No. 283) at 33. That is precisely why, as set forth in Ustian's Motion *in Limine* No. 5, the Court should bar EPA witnesses Margo Oge and Chris Grundler from offering their opinions (whether live or in emails) about the accuracy of statements at issue, particularly given their admitted lack of firsthand knowledge regarding the applications at issue or what Ustian was told about those applications. *See* Ustian Mot. *in Limine* No. 5 (Dkt. No. 283) at 47-58.

In contrast, the SEC's Motion *in Limine* No. 6 should be denied as it is hopelessly vague and overbroad, seeking to bar as "improper opinion testimony" questions from engineers about the facts they themselves lived while developing the engines at issue and/or testimony from Hammes about facts he is aware of and beliefs he has based on direct interactions with Ustian. The engineers and Hammes are not being asked hypotheticals (like the analysts subject to Ustian's Motion *in Limine* No. 3) or opinions based upon hearsay (like Oge and Grundler, the subjects of Ustian's Motion *in Limine* No. 5). For example, the SEC's motion covers questions about whether a witness is "aware of any facts" related to a statement at issue, as well as questions about whether an email written by the witness was true. *See* SEC Mot. *in Limine* No. 6 (Dkt. No. 280) at 30-31 (citing testimony from Hammes regarding whether statements he wrote in an email were true). Were the SEC's motion to be granted, attorneys could not ask questions about facts within a witness's personal knowledge or about statements that a witness wrote in an email based on their personal interactions with Ustian. For that reason alone, the SEC's Motion *in Limine* No. 6 should be denied. Separately, both "lay opinion" motions within the SEC's Motion *in Limine* No. 6 fail because the proffered testimony does not constitute a lay opinion, is highly relevant, and is not unfairly prejudicial to the SEC.

For the reasons set forth below and in Ustian's Motions *in Limine* Nos. 3 and 5, the SEC's two "lay opinion" motions should be denied, and Ustian's two "lay opinion" motions should be granted.

### A. The SEC's Motion To Exclude Testimony About The Statements At Issue Is Unworkable And Seeks To Bar Highly Relevant Fact-Based Testimony From Percipient Witnesses

The SEC's motion to preclude Ustian from "eliciting testimony regarding a witness's opinion on . . . whether statements by Ustian or Navistar were inaccurate" should be denied. SEC Mot. *in Limine* No. 6 (Dkt. No. 280) at 30. As an initial matter, it is unclear what order the SEC is asking the Court to enter. The SEC concedes that "[d]efense counsel can ask [witnesses] questions about the facts that might lead them to conclude that the statements were not inaccurate[.]" *Id.* at 34. Yet in support of its motion, the SEC cited the following question as one that should be barred from trial: "***Are you aware of any facts*** that you believe are inconsistent with that statement as of the date it was circulated?" *Id.* at 30-31 (emphasis added). That is a "question[] about the facts" within the witness's personal knowledge "that might lead them to conclude that the statements were not inaccurate" – the precise type of question that SEC said could be **allowed** at trial. The motion should be barred because even the SEC cannot articulate what questions can and cannot be asked of witnesses at trial.

Even if the SEC's motion was appropriately circumscribed (which it is not), it should be denied because it seeks to bar fact-based testimony from percipient witnesses – not improper opinion testimony within the purview of Rule 701. The SEC appears to be targeting testimony from Navistar engineers like Titus Iwaszkiewicz and Steve Ostarello, and presumably other senior Navistar engineers upon whom Ustian relied during the relevant period (referred to in Ustian's Motion for Summary Judgment as the "Senior Engineering Group"). *See* Joint Statement of Undisputed Mat. Facts (Dkt. No. 255) ("UF") ¶ 5. Those Navistar engineers,

45

however, were the most intimately involved in the development of the engines at issue, in communications with EPA about the applications at issue, and in providing Ustian with updates regarding the same. *See id.* ¶¶ 18, 38, 41, 43, 54, 86, 88, 96, 141, 150, 181, 187, 217, 219, 240. Thus, they are the witnesses most likely to know the **facts** underlying the statements at issue. That is why counsel for Ustian asked the following fact-based questions during their depositions:

- Do you know of *any facts* that are inconsistent with what Mr. Ustian has said there on that call?

- Do you know of *any facts* that were inconsistent with the December 22, 2010, statement?

- [A]re you aware of *any facts* inconsistent with that statement?

- Do you see anything that you believe is *factually inconsistent* with what you knew to be the status of what was going on back in the December 2011 time period?

- Are you aware of *any facts* inconsistent with that statement?

Ex. 16, Dep. of T. Iwaszkiewicz (Sept. 25, 2018) at 269:7-12, 270:6-9, 278:7-10, 293:14-17, 309:4-5. These questions are expressly seeking to elicit **facts** within the witness's personal knowledge, thus, necessarily are outside the scope of the **opinion** testimony targeted by Rule 701. Such questions – and the testimony they seek to elicit – are permissible at trial.

Even if questions about facts within a witness's personal knowledge somehow elicited opinion testimony (they do not), the proffered testimony is not barred by Rule 701. Again, while somewhat unclear from the SEC's motion, the SEC seems to be arguing that the proffered testimony is barred by Rule 701(b) because a "non-expert opinion on" a statement at issue "is not helpful[.]" SEC Mot. *in Limine* No. 6 (Dkt. No. 280) at 33; *see also* Fed. R. Evid. 701(b) (requiring lay opinion testimony be "helpful to clearly understanding the witness's testimony or

determining a fact in issue").[7]  The SEC is correct that lay opinion testimony that encompasses a legal conclusion in the case should be barred because it would be unhelpful to a jury, in violation of Rule 701(b).  *See* SEC Mot. *in Limine* No. 6 (Dkt. No. 280) at 34.  The proffered testimony here, however, does not cross that threshold; it is being offered to tell the jury only "what is in the evidence," and not "what inferences to draw from that evidence."  *United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009).  Not all testimony about the statements at issue in the case "encompasses a legal conclusion."  SEC Mot. *in Limine* No. 6 (Dkt. No. 280) at 34 (citation omitted).  If that were the rule, then the SEC could try to hold Ustian liable for making alleged misstatements while preventing percipient witnesses from testifying about the facts underlying them.  That is not the law.  *See Smith v. Levy Sec. Corp.*, 2012 WL 1655955, at *2 n.6 (N.D. Ill. May 10, 2012) (denying motion to strike testimony because under Rule 701 witnesses "may provide opinions that are rationally based on their perception of the incident"); *Cartwright v. City of Chicago*, 2012 WL 13162260, at *3 (N.D. Ill. Jan. 26, 2012) (permitting witness testimony under Rule 701 "regarding their personal observations and experiences relating to plaintiff's condition").

The SEC also makes a cursory claim that the proffered testimony should be barred under Rule 403.  The SEC does not dispute the relevance of the testimony, thus it seems to be arguing that the risk of "unfair[] prejudice" outweighs that probative value.  SEC Mot. *in Limine* No. 6 (Dkt. No. 280) at 33.  To the extent this testimony prejudices the SEC at all, however, that prejudice easily can be cured through cross-examination.  The SEC can cross-examine Navistar

---

[7]  While the SEC cites Rule 701 in its entirety, the SEC does not argue that the proffered testimony should be barred because it would not be "rationally based on the witness's perception" or because it would be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

engineers about whether their "level of knowledge at a . . . 2020 trial is markedly different from their knowledge when Ustian made the alleged misstatements." *Id.* at 32. And the SEC can cross-examine Navistar witnesses about whether they are "coming to the rescue of an embattled co-worker," as the SEC suggests. *Id.* at 34. The testimony it is admissible.

Finally, the cases cited by the SEC are distinguishable because each case dealt with opinion testimony on an ultimate issue. *See* SEC Mot. *in Limine* No. 6 (Dkt. No. 280) at 33-34; *United States v. Ness*, 665 F.2d 248, 249-50 (8th Cir. 1981) (affirming the exclusion of testimony from defendants' coworkers about whether the defendant "had any intent to injure or defraud the bank [where they worked]" where "intent to injure or defraud the bank" was an essential element of the crime); *United States v. Wantuch*, 525 F.3d 505, 514-15 (7th Cir. 2008) (excluding testimony as to whether the defendant's conduct was "illegal"); *United States v. Baskes*, 649 F.2d 471, 478 (7th Cir. 1980) (excluding testimony as to whether defendant acted "unlawfully"); *cf. Woods v. Amazon.com, LLC*, 2019 WL 2323874, at *6 (N.D. Ill. May 30, 2019) ("Lay witness opinions on an ultimate issue, however, are often unhelpful to the jury."). Third-party testimony about whether someone had the requisite criminal intent or broke the law, however, is far different from asking fact witnesses about the facts within their personal knowledge. The proffered testimony should be admitted.

### B. The SEC's Motion To Exclude "Lay Opinion Regarding Ustian's State Of Mind" Should Be Denied

The SEC's motion to preclude Ustian from "eliciting testimony regarding a witness's opinion on Ustian's state of mind" should be denied. In support of this motion, the SEC cites portions of the deposition of Hammes (a Navistar director), claims it all relates to "Ustian's state of mind," and asserts that it is inadmissible under Rule 701 because opinion testimony about

another's "state of mind" supposedly "cannot be 'rationally based on the witness's perception.'"[8]
SEC Mot. *in Limine* No. 6 (Dkt. No. 280) at 35 (citing Fed. R. Evid. 701(a)).  While the SEC
wants to blur the targeted Hammes testimony together, it falls into three distinct categories.  The
first two have nothing to do with Ustian's "state of mind" or Rule 701; and the third category
directly rebuts evidence the SEC intends to introduce at trial and is admissible under Rule 701.
Ustian takes each in category in turn.

    <u>First</u>, the SEC cites testimony from Hammes about whether statements in an email that
Hammes wrote were true.  Ex. 17, Dep. of M. Hammes (Nov. 28, 2018) at 270:12-17 (asking
Hammes whether the following statement that he wrote "[i]s a true statement:"  "As chairman
and CEO, Dan was, simply put, outstanding"); *see also id.* at 270:18-22 (asking Hammes
whether the following statement he wrote "[i]s a true statement:"  "Dan is a leader, and a leader
with vision and is passionate about what he does").  To start, the SEC's reliance on this
testimony demonstrates how unworkable its motion is; the order would have to bar testimony
from witnesses about statements they wrote based on their personal interactions with Ustian over
multiple years.  That simply is not feasible.  Additionally, statements that Hammes wrote about
his view of Ustian as a CEO based on years working with Ustian have absolutely nothing to do
with Ustian's "state of mind" when Ustian made the statements at issue, making it even less clear
what the SEC is seeking to bar through this motion.  Finally, to the extent any of this testimony
bears on Rule 701 (it does not), asking a witness whether a statement they wrote is true
necessarily seeks information "rationally based on the witness's perception" and would help the

---

[8]  It is unclear whether the scope of the motion is limited to the Hammes testimony cited by the SEC.  To
the extent it extends beyond the cited Hammes testimony, the motion should be denied because the SEC
has not provided the Court (or Ustian) with notice as to the documents, questions, or testimony that would
fit into whatever order the SEC is seeking through this motion.

jury "understand[] the witness's testimony." Fed. R. Evid. 701(a)-(b). It is not an improper lay opinion.

Second, the SEC cites testimony from Hammes that counsel for Ustian elicited in response to questions posed by the SEC. Specifically, during its direct examination of Hammes, the SEC asked the following questions:

- Did you believe that as CEO of the company, Mr. Ustian had a responsibility to be honest in his communications with the board?

- Did you think he had a responsibility to be honest with investors in the company's stock?

- Did you think he had a responsibility to establish high standards of ethics of the company?

- Did you think he had a responsibility to try to detect – deter and prevent fraud at the company?

Ex. 17, Dep. of M. Hammes (Nov. 28, 2018) at 26:1-12. During Ustian's cross-examination of Hammes, counsel for Ustian "ask[ed] [Hammes] a few questions about some questions that [SEC counsel] asked [him] earlier." Ex. 17, Dep. of M. Hammes (Nov. 28, 2018) at 271:3-5. Specifically, counsel asked:

- Do you believe that Mr. Ustian, in fact, fulfilled his responsibility to be honest in his communications with the board?

- Do you believe that Mr. Ustian fulfilled his responsibility to be . . . honest with investors in the company?

- Do you believe that Mr. Ustian fulfilled his responsibility to have a high standard of ethics?

Ex. 17, Dep. of M. Hammes (Nov. 28, 2018) at 271:25-272:17.

The SEC cannot credibly contend that this testimony either relates to Ustian's "state of mind" or is barred by Rule 701(a). *See* SEC Mot. *in Limine* No. 6 (Dkt. No. 280) at 35. Similar to the category of testimony discussed immediately above, in this rebuttal testimony, Hammes is

50

offering his opinion of Ustian as a CEO, which is based entirely on Hammes' firsthand experience working with Ustian and thus will help a jury understand his testimony. *See* Fed. R. Evid. 701; *Gomez v. Palmer*, 2016 WL 212800, at *7 (N.D. Ill. Jan, 19, 2016) (admitting under Rule 701 physician's "observations and opinions developed during and as part of his treatment of [plaintiff]"). And like the category of testimony identified above, such testimony is completely untethered from what Ustian knew or believed during the relevant period. The SEC simply wants to exclude it because it is unhelpful to its case – but that is not a basis to exclude opinion evidence under Rule 701.

Even more critically, however, this rebuttal evidence is admissible under Rule 608. The SEC has **designated its portion of the Hammes' testimony cited immediately above for trial**. *See* Ex. 22 to Ustian Mot. *in Limine* (Dkt. No. 283) (designating Hammes testimony at 26:1-12). Thus, the SEC certainly intends to introduce evidence suggesting (incorrectly) that Ustian was a dishonest and unethical CEO – *i.e.*, to "attack[]" his "character for truthfulness." Fed. R. Evid. 608(a). Indeed, this entire case is challenging Ustian's "character for truthfulness." *Id.*; *see also* Advisory Committee Notes to Fed. R. Evid. 608 (attacking character for truthfulness includes "evidence of misconduct . . . [or] of corruption"). Testimony from percipient witnesses about Ustian's "reputation for having a character for truthfulness," therefore, is highly relevant and permissible.

Third, the SEC cited testimony from Hammes about Ustian's compensation. *See* SEC Mot. *in Limine* No. 6 (Dkt. No. 280) at 31. The SEC has made clear its intent to "introduce evidence of both Ustian's compensation and the payment he received pursuant to [his Employment Separation Agreement] in an effort to demonstrate scienter, and specifically to try and show that Ustian had a supposed motive to commit securities fraud." Ustian Mot. *in Limine*

No. 8 (Dkt. No. 283) at 62. Notably, the minimal probative value of such evidence is far outweighed by its unfair prejudice to Ustian, which is why Ustian filed his Motion *in Limine* No. 8 to exclude it from trial. *See id.* at 62-65. Yet if the SEC is permitted to introduce evidence regarding Ustian's compensation – even if only to state that he received a significant compensation – Ustian has a right to present the jury with evidence demonstrating that theory to be false. Such evidence is admissible lay opinion testimony under Rule 701. *See Bohannon v. Pegelow*, 652 F.2d 729, 731-32 (7th Cir. 1981) (affirming admission of Rule 701 testimony "in which [witness] suggested that the arrest was motivated by racial prejudice" because Rule 701 "permits lay opinion testimony and does not limit the subject matter to which it can relate"); *United States v. Guzzino*, 810 F.2d 687, 699 (7th Cir. 1987) (relying on *Bohannon* in holding that "lay opinion testimony as to the mental state of another is indeed competent under that rule [Rule 701]"); *United States v. Locke*, 643 F.3d 235, 240 (7th Cir. 2011) (same).

Finally, none of the cases relied upon by the SEC support excluding the type of testimony from Hammes identified by the SEC. *See* SEC Mot. *in Limine* No. 6 (Dkt. No. 280) at 35. Indeed, in three of the cases, the court indicated that testimony similar to that at issue here was admissible. *See United States v. Hauert*, 40 F.3d 197, 201 (7th Cir 1994) (indicating that testimony that defendant was an "honest and sincere person" is admissible); *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) (in age discrimination case, indicating testimony from employees who "worked closely" with CEO about CEO's knowledge of plaintiff's soon-to-vest pension was admissible); *Bates v. Delgasi*, 2009 WL 3234227, at *1 (D. Conn. Oct. 2, 2009) (excluding third-party testimony of police officer's motivation for an improper search, but indicating that testimony regarding what the officer said during the search would be admissible to show motivation). The other cases relied upon by the SEC excluded

conclusory statements by a third-party witness about what a separate party believed or felt. *See United States v. Jackson*, 569 F.2d 1003, 1011 n.17 (7th Cir. 1978) (in dictum, excluding testimony from lay witness that defendant had depression); *United States v. Dashner*, 2015 WL 3660331, at *3 (N.D. Cal., June 2, 2015) (excluding testimony from witnesses about what the defendant believes about "the nature of tax law"). Here, the categories of testimony identified by the SEC are proper statements of fact or personal opinions from a percipient witness based on his experience working with Ustian. The testimony should be admitted.

### C.    The SEC's Motion Reaffirms That The Court Should Grant Ustian's Motions *In Limine* Nos. 3 And 5

The same law that supports denying the SEC's two "lay opinion" motions also supports granting Ustian's two "lay opinion" motions. The primary distinguishing feature between the two sets of motions is that all of the witnesses targeted by the SEC's motions have "personal knowledge" and are testifying "rationally based on the witness's perception." Fed. R. Evid. 602; 701(a). The Navistar engineer testimony targeted by the SEC is testimony based on their firsthand knowledge working on the engines and applications at issue and communicating with Ustian about the same; and the testimony from Hammes targeted by the SEC is based his years working alongside Ustian. Ustian's "lay opinion" motions, on the other hand, target testimony that fails to meet the foundational requirements of either Rule 602 or 701(a) – testimony from analysts about their hypothetical opinions as to what "would have" been "important" to know a decade ago, and opinion testimony from Oge and Grundler about Ustian's statements even though their opinions are based entirely on hearsay.

More specifically, with respect to Ustian's Motion *in Limine* No. 3, which seeks to bar speculative and hypothetical testimony from analysts, Ustian agrees with the SEC that it "cannot prove 'guilt' or 'innocence' in hindsight." SEC Mot. *in Limine* No. 6 (Dkt. No. 280) at 32

53

(citation omitted). The SEC even explained why hindsight, speculative opinion testimony from analysts is unfairly prejudicial to Ustian: "The witnesses now are aware of the SEC's allegations and in many cases . . . [and] have [submitted declarations] prepared by [the SEC's] own attorneys." *Id.* "Thus, whether a[n] [analyst] thinks a[n] [allegedly omitted fact is 'important'] today is not probative of whether that [allegedly omitted fact was material] to a reasonable investor at the time it was made." *Id.* Accordingly, for all of the reasons set forth in Ustian's Motion *in Limine* No. 3 as well as for the arguments made by the SEC here, testimony from analysts regarding their speculative and hindsight opinions about whether certain facts were "important" should be barred from trial. *See* Ustian Mot. *in Limine* No. 3 (Dkt. No. 283) at 22-30; *see also Gomez*, 2016 WL 212800, at *6 (barring under Rule 701 physician testimony about "whether he would consider a variety of hypothetical injuries to be 'serious'").

Similarly, with respect to Ustian's Motion *in Limine* No. 5, which seeks to bar EPA's Oge and Grundler from offering improper lay opinion testimony on the veracity of the statements at issue, Ustian agrees with the SEC that "[w]itnesses should be allowed to present evidence about discrete matters based on their perceptions: what they heard, saw, and said. Anything more would involve the type of speculation clearly prohibited under Rule 701(a)." SEC Mot. *in Limine* No. 6 (Dkt. No. 280) at 35-36. As discussed in Ustian's Motion *in Limine* No. 5, neither Oge nor Grundler have any firsthand knowledge regarding the applications at issue or what Ustian was told about the applications at issue. *See* Ustian Mot. *in Limine* No. 5 (Dkt. No. 280) at 37-39. Unlike the engineers and Hammes, their testimony/statements are not "rationally based on [their] perception." Fed. R. Evid. 701. Accordingly, for all of the reasons set forth in Ustian's Motion *in Limine* No. 5 and consistent with the SEC's statements here, neither Oge nor Grundler should be permitted to opine on the accuracy of statements at issue.

**D.     Conclusion**

For the reasons set forth herein, the SEC's motions to (a) "exclude lay opinion regarding Ustian's and Navistar's disclosures;" and (b) "exclude lay opinion regarding Ustian's state of mind" should be denied, and Ustian's Motions *in Limine* Nos. 3 and 5 should be granted.

**VII.    USTIAN'S COMBINED RESPONSE IN OPPOSITION TO THE SEC'S MOTIONS *IN LIMINE* NO. 7 TO PRECLUDE USTIAN FROM INTRODUCING EVIDENCE AND ARGUMENT REGARDING UNKNOWN SCR ISSUES AND NO. 8 TO EXCLUDE THE TRIAL TESTIMONY OF EPA OFFICIAL ALLEN DUNCAN**

**A.    Introduction**

Evidence related to SCR (from documents and from witnesses, including Dr. Allen Duncan) is critically relevant in three distinct ways.  First, as the SEC concedes, SCR-related evidence will show that Ustian had a good faith belief that the Navistar certification applications complied with EPA testing procedures.  Second, SCR-related evidence will also demonstrate that Ustian's statements were honest, held in good faith, and not misleading.  Third, SCR-related evidence will also negate the false narrative that the SEC intends to present at trial regarding Navistar "lobbying" efforts in 2011 and 2012.

Given the damage that SCR facts do, it is understandable but wrong for the SEC to ask the Court to preclude Ustian from introducing the exculpatory SCR evidence (SEC's Motion *in Limine* No. 7).  In an unintended (but unavoidable) nod to SCR relevancy, the SEC vaguely and generally asks the Court to preclude only "unknown" SCR issues (whatever that means).  Likewise, in Motion *in Limine* No. 8, the SEC asks the Court to exclude percipient trial testimony of EPA's Dr. Allen Duncan by declaring that percipient knowledge to be an "expert opinion."  Both motions serve only one purpose – censoring decisive SCR.  Both motions should be denied.

The SEC's claim that SCR is "not relevant" is belied by its Complaint, which cites SCR nearly 24 times in 11 different paragraphs.  *See* Am. Compl. (Dkt. No. 67) ¶¶ 28, 30, 33, 55-56, 151, 175, 176, 184-86.  Significantly, the SEC did not stop there.  It injected Ustian's SCR defense right into paragraph 111 of its Complaint, which expressly incorporates Navistar's written response to the first EPA "preliminary" inquiry concerning Navistar's January 2012

application. Navistar's response was eight pages long and included a detailed explanation of EPA's interpretation of its regulations and policy in certifying SCR as a foundation for the Navistar application – the heart of the SEC's case. The point is that when the SEC filed its Complaint, SCR was not just relevant but front and center.

And now, discovery confirms that the crux of Ustian's defense (and the axis on which the SEC case turns) is that Navistar engineers and Ustian relied on their good-faith understanding of the controlling testing precedent EPA established with SCR. EPA indisputably interpreted its regulations to not require simulation of real-world NOx emissions. Ustian and Navistar engineers believed in good faith (and correctly) that EPA would apply controlling precedent (as it always did in the past) to Navistar's applications following EPA certification of SCR at 0.2g NOx without taking into account the fact that SCR often cannot turn on in the real world (notably including in heavily polluted urban environments like Chicago's Loop).

The SEC does not want the jury to hear this story. Instead, it wants the jury to hear only EPA's certification ruminations that ignore the SCR template. So the SEC now says SCR is irrelevant and asks the Court to quash facts that are poisonous to its case. Seemingly, the SEC's objective is to convince the Court to order that the jury can only hear one side of the story – a story narrated by the EPA witnesses who are committed to the record they made back in 2012. To that end, the SEC incorrectly says that: (a) Ustian cannot testify about the SCR facts because he did not know them when the applications were filed and (b) EPA's Dr. Duncan cannot testify because he is an "undisclosed expert." Both propositions are false.

First, as to the SEC's gambit to preclude Ustian from introducing evidence about "unknown" SCR issues, the SEC says a record was made in discovery as to: (a) SCR technology; (b) the performance of SCR engines on the road; and (c) regulatory treatment of

such engines.  That is definitely true.  What is definitely not true (and definitely contradicted by the record) is the SEC's *ipse dixit* that "such information was not available to Ustian or Navistar at the time of such deliberations."  SEC Mot. *in Limine* No. 7 (Dkt. No. 280) at 37-38.  The record is crystal clear that Ustian knew the key SCR facts and knew them for many years prior to Navistar's applications.  Ustian knew that SCR is the mechanism that reduces NOx in competitors' diesel engines.  And he knew that SCR frequently is not turned on in real-world operation.  He knew that from his engineers and from common sense.  *See* Ex. 18, Ustian Decl. ¶ 9.  He knew that if real-world circumstances were simulated in certification testing, SCR-equipped engines could not possibly pass the certification test any more than a light bulb could succeed if its circuit breaker is tripped.

Ustian also knew the results of the EnSight independent SCR testing he authorized in 2010 and 2011, which documented SCR's failure to function in the real world.  *See id.* ¶¶ 8-9.  That testing was memorialized in a lengthy report and a video, called "License to Pollute," that Ustian saw in 2010 when it was screened for the industry in a public EPA meeting.  *See id.* ¶ 8; Ex. 19, Dep. of K. Simon (Dec. 6, 2018) at 162:20-166:9 (testifying about Navistar's "License to Pollute" video played at a 2010 workshop).  In short, the SEC's Motion *in Limine* No. 7 fails because neither the Court nor Ustian's counsel can determine what SCR facts the SEC claims Ustian did **not** know.  Certainly, however, he did know that SCR was readily certified by EPA without simulating its NOx emissions in the real world.

Second, the SEC moves the Court to preclude Ustian from calling Dr. Duncan.  Without so much as word of explanation or support (none exists), the SEC declares that Dr. Duncan will not testify from his percipient certification testing knowledge but instead will offer expert

opinions. With that false claim as the predicate, the SEC claims Dr. Duncan is an undisclosed expert witness and for that reason should be barred.

Dr. Duncan not only has percipient and highly relevant regulatory knowledge, but he is EPA's Director of Certification for heavy-duty diesel engines – a fact that the SEC overlooks. Dr. Duncan has already testified and will testify at trial based on his personal, historical work as an EPA diesel engine certification official about the 0.2g NOx certification requirements that were applied. He will not offer an opinion about what the regulations should, could, or might mean. Instead, he will testify as an eye and ear witness about how he and other EPA officials, **in fact**, interpreted and implemented engine certification regulations and policies. He will testify to that based on his percipient factual knowledge, just like the EPA witnesses called by the SEC will do. Dr. Duncan's testimony also will be probative, highly relevant, indisputably credible, and decidedly non-cumulative because it will negate the testimony of the SEC-sponsored EPA witnesses who intend to testify (incorrectly) that Navistar's engineers were required to apply real-world NOx to Navistar's engine testing.

Even more specifically, Dr. Duncan is not some random witness who might know something relevant about certification. He is a top EPA diesel engine certification regulator. He is EPA's diesel engine **certification director** and works side-by-side with the very same EPA officials whom the SEC will call to testify. In fact, he worked at EPA for many years and now holds the same position held in 2012 by one of the SEC's EPA trial witnesses (Justin Greuel). Like the other EPA trial witnesses (Dr. Duncan's colleagues), Dr. Duncan **certifies diesel engines**. As a result, he and they are knowledgeable about EPA certification test procedures and policies, and he will testify that those procedures are applied in the same way to all emission control technologies.

It is correct, but meaningless, for the SEC to note that Dr. Duncan did not work on the Navistar applications. He does not need to have worked on those applications to identify the applicable test procedures and to testify how the regulations are interpreted and implemented by EPA. An NFL official who referees games would be a credible and qualified witness to testify about the rules of football, and how referees interpreted them in fact, regardless of whether she or he personally officiated any particular game. Indeed, if there were a dispute concerning a specific play, the disinterested official would be a **more** credible witness than the officials who worked the games and are predisposed to defend their own decisions.

To that point, Dr. Duncan's sworn testimony is immensely important and powerfully probative since he bluntly contradicts the false NOx-testing narrative that the SEC wants the jury to believe. Specifically, Dr. Duncan testified that EPA interpreted and implemented the very regulation cited in 2012 by the SEC's EPA witnesses to **not** require real-world NOx to be simulated in certification testing.

**B.     Argument**

**1.     SCR Issues Are Relevant To Scienter**

Fundamental to Ustian's defense is that Navistar's EGR engines met the 0.2g NOx standard by following the EPA's controlling precedent in certifying SCR – albeit in a more environmentally sound way because Navistar's EGR system worked in the real world (and did not turn off). Yet, EPA certified SCR-equipped engines time and time again. That fact left no doubt for Navistar engineers that EPA had interpreted its certification regulations as applied to 0.2g NOx certification testing to not require real-world NOx. *See* Joint Statement of Undisputed Mat. Facts (Dkt. No. 255) ("UF") ¶ 34.

Moreover, long before the 2011 and 2012 certification applications were submitted by Navistar, Ustian knew that in low-speed driving (*e.g.*, stop-and-go traffic) as well as other

60

conditions approved by EPA (*e.g.*, operation with an empty DEF tank) SCR did not turn on. *See id.* That was not just learned from the Navistar-sponsored SCR testing. It was public knowledge understood by EPA and the industry. EPA's certification official, Dr. Duncan, whose testimony the SEC wants to exclude, confirmed that SCR real-world failures were common knowledge in the industry and that EPA certified SCR without requiring SCR to be turned off in the test-cell certification tests, even though that is what happens to it in the real world. Ex. 20, Dep. of A. Duncan (Apr. 3, 2019) at 175:3-10.

Significantly, Ustian will testify that he understood that EPA was required to ensure a level playing field for all emission control technologies, meaning if SCR did not have to account for real-world 0.2g NOx emissions in certification testing, no technology did. *See* UF ¶ 34; Ex. 18, Ustian Decl. ¶¶ 8-9. In short, SCR evidence is not just relevant; it is decisive.

The two primary cases relied upon by the SEC are inapposite. In both *FTC v. Chemence, Inc.* and *CFPB v. Navient Corp*., the court denied discovery related to competitors of the defendants because the defendants claimed that such evidence was relevant to show that the plaintiff–government agency could have brought the same case against the competitors. *See* 209 F. Supp. 3d 981, 985-86 (N.D. Ohio 2016) ("Even if Chemence could demonstrate that its competitors had violated the FTC Act but were not prosecuted, that would be irrelevant to the current lawsuit."); 2018 WL 2088760, at *6 (M.D. Pa. May 4, 2018) (citing *Chemence* to show actions of competitors are not relevant to assessing actions of defendant). Here, Ustian is not taking issue with any prosecutorial discretion; Ustian is arguing that EPA's consistent, known treatment of Navistar competitors affected his mental state when he made the statements at issue, which, in turn, is directly relevant to scienter and – as discussed immediately below – whether the statements at issue were true and not misleading.

61

The SEC mangles Judge Schenkier's discovery ruling barring disclosure of proprietary SCR certification applications. *See* SEC Mot. *in Limine* No. 5 (Dkt. No. 280) at 41. The SEC counterintuitively relies on that ruling as support for its claim that Ustian only learned about non-real-world SCR testing from SCR applications that he never has seen. Those dots obviously cannot connect. There is no need to see the applications to know that SCR functioning is what reduces NOx, and if the SCR system were turned off in testing to simulate what occurs in the real world, it could not pass the near-zero NOx standard. One does not need to see proprietary SCR testing to know that no SCR function means no NOx reduction any more than one needs disclosure of proprietary information to know that when the gas tank is empty, the truck will fail any speed test.

As it did in its Opposition to Ustian's Motion for Summary Judgment, the SEC claims that Judge Schenkier "already rejected Ustian's argument that evidence of this nature is relevant to his state of mind." SEC Mot. *in Limine* No. 5 (Dkt. No. 280) at 41; *see also* Opp'n to S.J. Mot.(Dkt. No. 260) at 40. Putting common sense aside, the record is indisputably clear that Ustian was privy during the relevant time period to information that showed that "EPA had certified SCR at 0.2g NOx" even though SCR engines "emitted uncontrolled NOx under some real-world conditions." UF ¶ 39. And Ustian did know that senior Navistar engineers had concluded, because of technological neutrality, that "EPA should certify Navistar's 0.2g NOx applications based on EPA's treatment of SCR certification applications." *Id.* SCR evidence, therefore, is within Ustian's personal knowledge and thus consistent with Judge Schenkier's discovery ruling.[9]

---

[9] The other cases cited by the SEC also are distinguishable. The fact that *Apex Mortg. Corp. v. Great N. Ins. Co.* and *Loomis v. I-Flow, LLC* barred discovery on third-party information because it was unknown to a party has no bearing on the SCR evidence here because Ustian **did** know about EPA's certification of

2.    SCR Facts Show That Ustian's Statements Were True And Not
      Misleading

Separate from its relevance to 10b–5 scienter, SCR evidence also is relevant and central

to establishing that certain statements at issue were true and not misleading.  The SEC has

alleged that the following statements regarding the second application at issue – the January

2012 application – were misleading:

- "We believe that our engines meet both agencies certification requirements."
  Am. Compl. (Dkt. No. 67) ¶ 95 (citing the Navistar International Corporation's
  2011 Form 10-K); and

- "We formally submitted our 0.2g NOx in-cylinder engine certification data for
  our 13L engine to [EPA]."  *Id.* ¶ 118 (citing Navistar International Corporation's
  March 2012 Form 10-Q).

Back when it wrote its Complaint, the SEC thought SCR was relevant and claimed that it was

misleading for Ustian to discuss the Navistar application without disclosing that the engines were

"below the 0.20 NOx standard during emissions testing in a laboratory but above the 0.20 NOx

standard when a vehicle was in motion."  *Id.* ¶ 97; *see also id.* ¶ 122 (same).

That is a clear-cut misstatement of the EPA regulations (the regulations do not require

that engines be at 0.2g NOx when the vehicle is moving).  More to the point, this is indicative of

the fact that the SEC built its "case" on its own confusion about EPA mobile source regulations

and how EPA implemented them for 0.2g NOx.  Respectfully, EPA regulations are not the daily

fare of the SEC, but it now knows with the benefit of the evidence developed during this case

that EPA did set a "controlling precedent" in certifying SCR engines at 0.2g NOx without

accounting for real-world NOx emissions.  Instead of dropping its debunked claim, that Navistar

was not in good faith because EPA required simulation of real-world NOx for 0.2g NOx

---

SCR engines without accounting for real-world emissions.  2018 WL 318481, at *2 (N.D. Ill. Jan 8,
2018); 2013 WL 12330077, at *4 (D.N.M. June 28, 2013).

certification, however, the SEC seeks to preserve the claim by barring the negative dispositive evidence!

Without SCR for the correct context, the jury would only hear that EPA raised questions about real-world NOx simulation in the Navistar testing. It will only hear, for example, that in February 2012, EPA's Byron Bunker sent a list of "preliminary concerns" to Navistar about its January 2012 application, citing 40 CFR 1065.10(c)(1) and said real-world NOx should be simulated in the certification test. *See* Am. Compl. (Dkt. No. 67) ¶ 111 (citing letter from Bunker). That's half the story. As indicated above, the SEC incorporated Navistar's response to that letter in its Complaint, leaving no doubt that it considered both SCR and Navistar's understanding of it to be relevant – albeit not in the way it thought back then. Nevertheless, for purposes of the motion *in limine*, it is important to note that the Navistar response cited by the SEC explained that EPA had indisputably interpreted the very regulation he cited to dispense with real-world NOx simulation for SCR and that EPA regulations and policy promised a level certification playing field:

> ***When low operating temperatures are encountered, urea is not dosed and SCR NOx reduction does not occur).*** … [T]he SCR engine makers ***do nothing*** to include (let alone, "substantially include" as the AECD regulation states) "real world" low operating temperatures. And that is true for all three tests- FTP, SET or NTE.

Ex. 21, Email fr. T. Iwaszkiewicz (Feb. 27, 2012) at 20 (emphasis added). Navistar engineers knew that EPA had always promised a level playing field – meaning the same testing regime for all emission control technology – and believed that the disparity in treatment between SCR and EGR testing would be corrected during the give-and-take of the certification dialogue. *See* UF ¶¶ 34, 38-39, 160. They reported that to Ustian. *See id.*

With that foundation, Ustian reported to investors that Navistar had submitted an application for 0.2g NOx certification. EPA's relaxed certification testing for SCR and level playing field policy made his statements true and not misleading. Ustian's statements were corroborated by Dr. Duncan, who readily testified that EPA interpreted and implemented 40 CFR 1065.10(c)(1) to not require real-world NOx simulation for 0.2g NOx certification:

> Q. And the only other thing, with the case of the SCR, [*40 CFR 1065.10*] is interpreted for it to allow for those conditions [*i.e.*, SCR not functioning] that we have been talking about today, that you and I talked about back in 2015, to *not* be reflected in the certification testing, even though they happen in the real world and still be certified. ***That is just the way the EPA decided to implement?***
>
> THE WITNESS [Dr. Duncan] ***Yes.***

Ex. 20, Dep. of A. Duncan (Apr. 3, 2019) at 184:15-186:5 (objection omitted) (emphasis added).

Dr. Duncan also testified that neutrality in technology means that EPA assures a level playing field for all emissions-control technologies (*i.e.*, what EPA adopts as acceptable testing for SCR will be applied to EGR), which is exactly what the Navistar engineers reported to Ustian:

> Q. And, are you familiar with an EPA policy of technological neutrality?
>
> A. Yes.
>
> Q. What is your understanding of what that is?
>
> A. EPA defines performance-based standards without defining the technological pathways to achieve.
>
> Q. Right. And, ***EPA also says that it has one set of testing requirements that apply to whatever technology is going to be used, everybody is on a level playing field. Correct?***
>
> A. ***Yes***.

Ex. 20, Dep. of A. Duncan (Apr. 3, 2019) at 175:12-176:3 (objection omitted) (emphasis added); *see also* UF ¶¶ 34, 38-39.

Dr. Duncan also confirmed the widely known fact that SCR engines do not reduce NOx emissions in common driving conditions. *See* Ex. 20, Dep. of A. Duncan (Apr. 3, 2019) at 184:15-185:5 (agreeing EPA certified SCR engines in a manner that did not reflect real-world conditions), *id.* at 88:14-89:5 (agreeing that SCR engines do not reduce NOx emissions if the truck does not contain "DEF" fluid necessary for SCR to function), *id.* at 93:20-94:20 (testifying that SCR engines do not reduce NOx emissions during "low load operation" or "extended idle"); *see also* UF ¶ 26 (collecting testimony from Dr. Duncan confirming that during the 2010-2012 time period, EPA interpreted the 0.2g NOx standard as not requiring EPA to account for real-world NOx emissions).

For these reasons, and in response to Motion *in Limine* No. 8, it matters not that Dr. Duncan did not work on the Navistar applications – a fact that only lends credibility and relevance to his testimony. Dr. Duncan is highly qualified and no less able than his EPA colleagues, but, unlike the Navistar reviewers at EPA, he does not have an interest in trying to defend a misapplication of the regulations. Accordingly, Dr. Duncan is an EPA witness who is not only a percipient witness, but he is an EPA witness who can give the jury a disinterested and unbiased description of EPA certification procedure for 0.2g NOx.

        **3.**      <u>SCR Issues Are Relevant To Rebut The Lobbying Story The SEC Intends To Introduce At Trial</u>

SCR facts also are relevant to rebut the false lobbying narrative that the SEC intends to present at trial. The SEC claims that Navistar "contacted numerous elected officials . . . regarding Navistar's efforts to certify an EGR-only engine at the 0.20 NOx standard" (Am. Compl. (Dkt. No. 67) ¶ 148), and that "[i]t was unusual for an engine manufacturer to bring an EPA certification issue to the political level." Opp'n to S.J. Mot. (Dkt. No. 260) at 10. The SEC further claims that this lobbying story supports its fraud

allegations because, according to the SEC, there was a disconnect between Navistar's communications to politicians and Navistar's contemporaneous public statements. *See* Opp'n to S.J. Mot. (Dkt. No. 260) at 38. To support this narrative, the SEC intends to call four witnesses to testify about "Navistar's lobbying efforts regarding EPA certification," "outreach to public officials regarding Navistar's certification efforts," and those witnesses' "interactions with Ustian involving [the] same." Ex. 23 to Ustian Mot. *in Limine* (Dkt. No. 283) at 2-3 (identifying Patrick Charbonneau, Robert Jones, Brien Sheahan, and Tyrone Fahner). The SEC's lobbying story is a fiction that Ustian will correct at trial, with the help of SCR evidence.

SCR evidence is relevant to correct the SEC's lobbying narrative in two ways. First, SCR evidence demonstrates that there is nothing improper or unusual about Navistar lobbying in connection with certification efforts. Ustian intends to introduce evidence showing that **all** engine manufacturers engage with government agencies on certification issues in support of the technologies they intend to deploy. For example, SCR manufacturers successfully lobbied EPA to relax EPA's certification procedures for SCR. In February 2009, EPA issued a guidance document (which was favorable to SCR) that "supplement[ed] the previous document" (which was less favorable to SCR); that 2009 guidance document "delineated our intended approach for the certification of vehicles and engines using SCR systems[.]" Ex. 22, EPA Guidance Document (CISD-09-04 (HDDE)) (Feb. 18, 2009) at 1. SCR manufacturers participated in the drafting of this document. *See* Ex. 23, Dep. of G. Orehowsky (Nov. 27, 2018) at 66:4-67:9, 74:18-76:6. Indeed, members of the Engine Manufacturers Association ("EMA") – not including Navistar – appear to have taken a lead role in drafting EPA's February 2009 guidance document; a draft of it appears on EMA letterhead. *See* Ex. 24, Email fr. K. Reed (Oct. 20,

2008) at 1 (noting that EPA has "been working with EMA on this for a few months"). This type of SCR-related evidence demonstrates that lobbying is commonplace in the industry.

Second, the lobbying conducted by SCR manufacturers is relevant to explain why Navistar contacted politicians in connection with its January 2012 application – namely, to level the playing field. As discussed immediately above, in direct response to lobbying done by SCR manufacturers, EPA relaxed its certification procedures for SCR engines, thus tilting the playing field. When Navistar submitted its January 2012 application, however, EPA suggested that it may apply a different certification procedure for Navistar's EGR engines than it applied to SCR engines – one that would take into account real-world NOx emissions. That position went against EPA's commitment to technological neutrality. *See supra* at 63. Accordingly, Navistar lobbied in an effort to level the playing field and ensure that EPA would test and certify Navistar's engines the same way it tested and certified SCR engines. The SCR manufacturers' lobbying effort, therefore, is necessary to explain that Navistar's 2012 lobbying effort in no way stemmed from any doubt that Navistar's applications met the EPA standards but rather Navistar's confidence that its applications **did** meet the standards on a level playing field. The SEC wants to keep out this evidence not because the evidence is irrelevant but because it is highly relevant and highly detrimental to its case.

**4.** <u>SCR Evidence Is Highly Probative And Will Clarify Issues At Trial – Not Confuse Them</u>

Not only is SCR evidence highly probative for the reasons discussed above, but it does not raise any of the concerns identified in Rule 403. Indeed, SCR-related evidence will clarify issues at trial – not confuse them. Following the SEC's case-in-chief, the jury may be left with the following questions that Ustian is entitled to answer to show that there is no securities fraud:

- Why did Navistar engineers believe it was okay to test their engines without including the higher NOx emission that sometimes occurred in the real world?

- Did EPA previously approve of certification testing for 0.2g NOx without accounting for real-world NOx emissions?

- Is it common in the engine manufacturing industry for manufacturers to lobby in connection with certification issues?

- Was Navistar or Ustian actually lobbying about its January 2012 application or a broader principle?

Evidence related to SCR will answer each of these questions. SCR-related evidence, therefore, is highly probative and will be helpful to understanding the complicated issues in this case.

Moreover, as discussed above, the SEC has failed to provide a governing principle for the Court to apply in determining what SCR-related evidence would be excluded from trial. The only parameter offered by the SEC is "SCR-related evidence unknown to Ustian and Navistar," but it remains unclear what exactly that leaves (other than Dr. Duncan) given that Ustian and Navistar were aware of everything discussed herein. SEC Mot. *in Limine* No. 7 (Dkt. No. 280) at 40.

### C.    Conclusion

Back when it filed its Complaint, the SEC was right to think that SCR is relevant to Navistar's 0.2g NOx certification applications. But for the SEC, that was then. Back then, before it knew the real facts, the SEC infused its Complaint with provocative SCR allegations. But this is no longer then. This is now. And now, the SEC has learned that the real SCR facts are not just relevant but powerfully probative of Ustian's good faith and the good faith of his engineers.

So now, the SEC has done a 180-degree turn – the SCR facts suddenly are "irrelevant." Though incongruent with its Complaint, the SEC says SCR is out. While the text of the motion

does not really explain why, the subtext is obvious – the SCR facts are so highly relevant and so painfully damaging to its case that the SEC needs SCR to disappear altogether.  But those facts cannot disappear any more than the Complaint will disappear.  That Complaint is laced by the SEC with pernicious insinuations about the virtue of SCR as compared to Navistar's EGR.  That is the case that the SEC brought and that is the case that will be tried.

**VIII. USTIAN'S COMBINED RESPONSE IN OPPOSITION TO THE SEC'S MOTIONS *IN LIMINE* NO. 9 TO PRECLUDE USTIAN FROM INTRODUCING EVIDENCE AND ARGUMENT REGARDING RELIANCE ON COUNSEL AND NO. 10 TO EXCLUDE THE TRIAL TESTIMONY OF FORMER NAVISTAR GENERAL COUNSEL STEVEN COVEY**

Ustian responds to the SEC's Motions *in Limine* No. 9 and 10 together for the sake of efficiency and because the subject matter of the two motions overlaps. Together, the motions make a long, compelling argument that Ustian has not pled an affirmative defense based on the advice of counsel and is not entitled to "charge a jury on advice-of-counsel[.]" SEC Mot. *in Limine* No. 9 (Dkt. No. 280) at 48. As the SEC correctly notes, Ustian has never asserted this defense. He is not asserting it now and does not intend to assert it at trial. All of these truisms are irrelevant to the disposition of either motion.

The SEC's Motion *in Limine* No. 9 well supports an order precluding Ustian from getting something he does not seek – namely, a jury charge on the advice-of-counsel defense. But the Motion does not contain any explanation of what evidence the Court should exclude that Ustian **does** plan to introduce. This omission is telling and arguably dispositive. Despite its title and legal authority centered on a reliance on counsel affirmative defense, the motion slips seamlessly (and strategically) into very different territory, asking the Court to exclude Ustian from "intimating" advice of counsel or "evidence of attorney involvement." *Id.* at 48, 50. Defendants clearly may introduce evidence of **non**-privileged things seen, heard, or said by lawyers. Such testimony properly may negate scienter, tend to support a defendant's good faith, and establish the circumstances under which an alleged misstatement was made.

Taking a slightly different route to the same double overkill result, Motion *in Limine* No. 10 seeks to exclude **all** the testimony of Navistar's former general counsel, Steve Covey, on the additional ground that he was disclosed too late by Ustian. Covey was listed on the **SEC's** 26(a)(1) disclosures, counter-designated by Ustian in his own 26(a)(1) disclosures, and

testified for a full day during the SEC's underlying investigation. *See* Ex. 25, Pl.'s 26(a)(1) Discl. at 4; Ex. 26, Def.'s 26(a)(1) Discl. at 25. The Court's November 20, 2019, oral ruling precludes any reliance on Rule 37 to exclude Covey because the **SEC** affirmatively disclosed him years ago (and Ustian counter-designated him). *See* Ex. 27, Tr. of Nov. 20, 2019, Hr'g at 10:12-14. It is also clear that the SEC would not suffer any prejudice by allowing Covey to testify. The SEC took a full day of testimony from Covey during the underlying investigation. Ustian proposed, and the Court accepted, four undisputed facts in the course of briefing the pending summary judgment motion based in part on Covey's SEC testimony. *See* Joint Statement of Undisputed Mat. Facts (Dkt. No. 255) ("UF") ¶¶ 116, 120, 122, 123. That Navistar (not Ustian) asserted privilege in response to **some** of the SEC's questions during Covey's testimony obviously does not preclude his testimony on other, relevant subjects.

The Court should deny the SEC's Motions *in Limine* Nos. 9 and 10.

### A. Evidence That Includes Counsel's Involvement Is Relevant And Admissible

The SEC argues that Ustian may not introduce any evidence involving attorneys because he has not pled a formal affirmative defense based on the advice of counsel. The SEC is wrong. "[R]eliance on the advice of counsel need not be a formal defense; it is simply evidence of good faith, a relevant consideration in evaluating a defendant's scienter." *Howard v. SEC*, 376 F.3d 1136, 1147 (D.C. Cir. 2004). In a case that was remarkably similar to this one, a court in this District denied an SEC motion *in limine* where the defendant introduced evidence of attorney involvement to support his good faith defense and negate allegations of scienter. *See SEC v. Ferrone*, 163 F. Supp. 3d 549, 570 (N.D. Ill. 2016) (denying SEC motion *in limine* to exclude evidence of involvement of counsel where defendant asserted a good faith defense); *see also SEC v. Am. Growth Funding II, LLC*, 2018 WL 6322145, at *3-4 (S.D.N.Y. Dec. 4, 2018) (denying SEC motion *in limine* to exclude evidence related to reliance on and involvement of

counsel). That is exactly what Ustian seeks to do here. This Court too should "allow[] the jury to decide the case rather than gut[] [Ustian's] defense out of the box." *Ferrone*, 163 F Supp. 3d at 570.

The SEC attempts to distinguish *Ferrone* in a footnote on the sole basis that *Ferrone* did not involve a defendant's "egregious failure to disclose his intent to claim he relied on a lawyer[.]" SEC Mot. *in Limine* No. 9 (Dkt. No. 280) at 51. This is disingenuous at best. *Ferrone* involved a defendant who did not assert an affirmative defense based on the advice of counsel, but instead planned to introduce evidence of his good faith. *See Ferrone*, 163 F Supp. 3d at 568. Ustian's intent is exactly the same. The SEC's repeated claims that Ustian egregiously failed to disclose something are calculated distortions. Ustian could not "fail to disclose" an intent he did not have. Moreover, the SEC accused Ferrone of **precisely** the same egregious failure the SEC lodges against Ustian. *See Ferrone*, No. 11-cv-5223, (N.D. Ill. May 14, 2015), Pl.'s Mot. *in Limine* (Dkt. No. 141) at 7. ("Ferrone did not raise the affirmative defense of advice of counsel in his answer and failed to identify [his former employer's SEC counsel] as a person with knowledge in his initial or supplemental disclosures."). And the SEC still lost the motion.

The SEC has the burden of establishing scienter. The SEC may not attempt to shift the burden of proof on the question of scienter by requiring Ustian to establish any facts before introducing evidence tending to negate his intent. *See SEC v. Snyder*, 292 F. App'x 391, 405-06, 408 (5th Cir. 2008) (reversing and remanding for new trial where jury instruction shifted burden to defendant to establish elements of advice of counsel defense before introducing evidence of attorney involvement). And it is proper to put on such evidence without waiving privilege. *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, 2015 WL 5123652, at *7 (N.D. Ill. Sept. 1,

2015) ("[T]he attorney-client privilege is not waived merely because counsel's advice may have influenced a litigant's state of mind and is therefore relevant to that state of mind.").  Covey testified, for example, that he (and Ustian) personally participated in a December 17, 2011, discussion with Navistar engineers during which the engineers "were feeling encouraged" and discussed "meeting concerns raised by the EPA at that December [16] meeting."  *See* UF ¶ 116(e).  That non-privileged testimony corroborates Ustian's belief that Navistar's technology met EPA regulations and negates the inference that he acted with scienter.

In addition to proving scienter, the SEC has the burden to prove that Ustian made the alleged misstatements.  *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 141 (2011) (liability under Rule 10b–5 requires proof that defendant "'made' the material misstatements" at issue).  Covey testified that he is "reasonably certain" that he, not Ustian, drafted the language in Navistar International Corporation's December 2011 Form 10-K that the SEC claims is misleading.  *See* UF ¶ 120.  Evidence of the circumstances of the drafting of an allegedly fraudulent statement, including evidence that another individual drafted the specific language at issue, is relevant to whether Ustian made the misstatements.  *See Glickenhaus & Co. v. Household Intern., Inc.*, 787 F.3d 408, 427 (7th Cir. 2015) (whether CEO made statement in company release was "an inherently fact-bound inquiry").

The SEC's reliance on *SEC v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2013), to support its position that not even an "intimation" of lawyers should be allowed and that Covey should be barred is misplaced.  Fundamentally, the court there **did not** exclude all evidence of attorney involvement.  Instead, the Court weighed case specific facts in conducting a Fed. R. Evid. 403 balance, considered that the lawyer involvement often related specifically to the disclosures in question, and "precluded evidence relevant ***solely*** to show that the lawyers attended meetings"

74

and "emphasis" on the "presence of counsel." *Id*. at 684 (emphasis added). Even so, the *Tourre* court **allowed** attorney "evidence tending to show [the defendant] was not the person primarily responsible," as well as evidence on the "context" of the transaction, and evidence that showed that "numerous individuals and/or committees" participated. *Id*. The *Tourre* court also allowed the use of the words "'counsel,' 'lawyer,' or 'attorney,'" and identification of the "profession of the individuals reflected" on exhibits. *Id*. at 685. As a court in this District pointed out in 2016 denying the SEC's motion *in limine* in *Ferrone*: "*Tourre* [a 2013 S.D.N.Y. case] … does not bear the weight the SEC places on it." 163 F. Supp. 3d at 570. Because it relies principally on *Tourre*, *SEC v. Lek*, , is similarly unpersuasive. *See* 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019).

Nor is *SEC v. McNamee* persuasive. 481 F.3d 451 (7th Cir. 2007); *see* SEC Mot. *in Limine* No. 9 (Dkt. No. 280) at 49. There, the Seventh Circuit approved the district court's decision not to permit a defendant to rely on an advice of counsel defense to negate an inference of scienter in a civil-contempt proceeding because "scienter [was] not required in civil-contempt proceedings." *McNamee*, 481 F.3d at 456. In other words, the evidence was completely irrelevant. But scienter is very much in play here. The SEC misleadingly quotes *McNamee* for the proposition that "it isn't possible" to put forward such a defense "without producing the actual advice from an actual lawyer." SEC Mot. *in Limine* No. 9 (Dkt. No. 280) at 49. But the opinion has nothing to do with waiver or hiding behind privilege. The court was merely observing that "no lawyer could be found to stand behind the 'advice' that [the defendant] claim[ed] to have received" because the conduct was so transparently illegal. *McNamee*, 481 F.3d at 456. Except for the SEC misuse of some language it liked, *McNamee* has nothing to do with the case against Mr. Ustian.

### B. Covey Was Adequately Disclosed And Should Be Permitted To Testify

#### 1. The SEC Disclosed Covey On Its 26(a)(1) Disclosures

In no uncertain terms, this Court has ruled that "the defendant can certainly call as witnesses anybody that the SEC has identified on its disclosures." *See* Ex. 27, Tr. of Nov. 20, 2019 Hr'g. at 10:12-14. On June 14, 2016, the SEC disclosed 193 individuals pursuant to Rule 26(a)(1), which requires parties to disclose persons with discoverable information "that the disclosing party may use to support its claims or defenses," one of whom was Steve Covey. *See* Ex. 25, Pl.'s 26(a)(1) Discl. at 4. The SEC disclosed that Covey was "likely to have discoverable information regarding, among other things, Navistar's efforts to develop EGR-only technology to meet the 0.2 NOx standard, Navistar's efforts to obtain EPA certification, communications with Ustian regarding same, Navistar's and Ustian's disclosures relating to those matters." *Id.* The SEC removed Covey from its **amended** disclosures (SEC Mot. *in Limine* No. 9 (Dkt. No. 280) at 54), but that is irrelevant. The transcript of Covey's SEC testimony remained on the list of documents that "may be used" in the SEC's amended disclosures in 2018. *See* Ex. 28, Pl.'s Am. 26(a)(1) Discl. at 25. Based on the Court's November 20, 2019, oral ruling, these disclosures are sufficient to resolve the present motion to exclude his testimony.

#### 2. Ustian Incorporated The SEC's Disclosures By Reference And Timely Disclosed Covey

Furthermore, Ustian explicitly incorporated all of the individuals on the SEC's 26(a)(1) disclosures when he made his own 26(a)(1) disclosures. *See* Ex. 26, Def.'s 26(a)(1) Discl. at 5 ("In addition to the individuals above, Ustian may rely on any individual identified by the SEC, including in its initial disclosure statement, in response to written discovery, or in its document

production."). This type of counter-disclosure is commonplace. Indeed, the SEC did the same thing on both its initial and amended disclosures.

In connection with briefing the summary-judgment motion, counsel for Ustian reviewed the transcripts of **SEC** investigative testimony from witnesses who were not deposed in this case, including Covey, to determine whether they contained any testimony relevant to the motion. Ustian ultimately included four undisputed facts based in part on that testimony. When it came time to produce witness lists, Ustian informed the SEC that it may call Covey to testify to information similar to the information included in his summary judgment briefing, similar to the information in the SEC's initial disclosures, and similar to the information about which Covey testified during his SEC testimony. There is nothing outside the letter **or** the intent of the rule here.

### 3. The SEC Would Not Be Prejudiced If Covey Testified

The SEC would not suffer any prejudice if Covey were allowed to testify. During the underlying investigation, the SEC took testimony from Covey, and the SEC listed a transcript of that testimony as a document the SEC itself may use on its most recent 26(a)(1) disclosures. *See* Ex. 28, Pl.'s Am. 26(a)(1) Discl. at 25. During that testimony, Covey testified at length about Navistar's disclosure process, his role in that process, his role reviewing SEC filings, meetings he attended with third parties, meetings he attended at Navistar, and some of the statements at issue. At times, Navistar's counsel instructed Covey not to answer some of the SEC's questions. This should not have been a surprise. Covey served as Navistar's general counsel at the time, and many communications with Covey were privileged. But Navistar – not Ustian – holds the power to waive that privilege. To the extent there are topics about with Covey cannot testify, Ustian is disadvantaged more than the SEC. But so be it. Just like the SEC (until recently)

77

planned to use Covey's testimony on subjects that were **not** privileged, so too does Ustian.  No more, no less.

The SEC's newfound respect for the attorney–client privilege is a stark, transparently convenient reversal of the positions it has taken throughout the underlying investigation and this litigation.  The SEC filed a subpoena enforcement action to overturn Navistar's assertions of privilege in the underlying investigation and a motion to compel in this case that required Navistar to re-review or produce hundreds of documents involving attorneys.  Those motions, which met with some success, were premised on the proposition that in-house lawyers wear several hats and some of those hats are not in the arena of legal advice.  Therefore, the SEC is well aware that not everything an attorney does is part of an attorney–client relationship and not everything an attorney does is privileged.  Indeed, the **SEC's** initial disclosures in this matter listed over a dozen attorneys[10] who possessed information that the SEC might use to support its case.  Covey, the only attorney Ustian has disclosed as a potential witness, appears on the SEC's initial disclosures.  *See* Ex. 25, Pl.'s 26(a)(1) Discl. at 4.  During the investigation underlying this case, the SEC subpoenaed Covey to give testimony, and the SEC deposed two other attorneys (William Anaya and Ty Fahner) in this litigation.  The SEC's **amended** 26(a)(1) disclosures list Covey's testimony transcript as a "document that may be used."  *See* Ex. 28, Pl.'s Am. 26(a)(1) Discl. at 25.  Certainly, the SEC gave every indication of using events "involving" lawyers and even testimony of lawyers until very recently.  No prejudice to the SEC would result from Ustian covering these topics.

---

[10]  The SEC disclosed the following individuals, all of whom are attorneys, as persons the SEC "may use to support its claims" on its initial disclosures:  Steven Covey, Curt Kramer, Chris Perzan, Chip Mulaney, James Mahlo, Robin Hulshizer, Laurence Levine, Michael Horowitz, John Hannon, Tyrone Fahner, Robert Jones, Robert Dole, Billy Tauzin, Bill Anaya.  *See generally* Ex. 25, Pl.'s 26(a)(1) Discl.  Three of those lawyers, in **addition** to Covey, are in-house counsel to Navistar.

The SEC's claim that it would be prejudiced as a result of failing to litigate Navistar's privilege assertions of communications with Covey even more aggressively than it did because Ustian did not disclose him as a potential witness is nonsensical.  *See* SEC Mot. *in Limine* No. 10 (Dkt. No. 280) at 67-68.  As the SEC's motion makes clear, the SEC filed a subpoena enforcement against Navistar in 2014 – years before it filed this lawsuit against Ustian.  To the extent that action failed to focus on communications with Covey (when Covey was the only in-house lawyer the SEC subpoenaed for testimony), Ustian certainly cannot be responsible for the SEC's allocation of resources as it investigated this case.  Nor is it even true that the SEC did not focus its resources on litigating privilege related to Covey.  In this matter, the SEC successfully compelled Navistar to re-review approximately 700 documents, nearly 600 of which involved communications with Covey.  *See* Feb 21, 2018 Order (Dkt. No. 129).  The SEC has been focused on Covey and aware of his potential testimony throughout this litigation and the underlying investigation.

## C.     Conclusion

For the reasons set forth herein, the SEC's motions to (a) "Preclude Ustian From Introducing Evidence And Argument Regarding Reliance On Counsel," and (b) "Exclude The Trial Testimony Of Former Navistar General Counsel Steven Covey" should be denied.

Dated:  December 10, 2019

Respectfully submitted,

**DANIEL C. USTIAN**

*/s/ Sean M. Berkowitz*
By Sean M. Berkowitz

Sean M. Berkowitz (ARDC No. 6209701)
Cary R. Perlman (ARDC No. 6197698)
Robin M. Hulshizer (ARDC No. 6230994)
Eric R. Swibel (ARDC No. 6297743)
Caitlin E. Dahl (ARDC No. 6312614)
Adam L. Rosenbloom (ARDC No. 6317055)
LATHAM & WATKINS LLP
330 N. Wabash Avenue
Suite 2800
Chicago, Illinois 60611
(312) 876-7700

Laurence H. Levine (ARDC No. 1638459)
LAURENCE H. LEVINE LAW OFFICES
189 East Lake Shore Drive
16th Floor
Chicago, Illinois 60611
(312) 927-0625

*Attorneys for Defendant Daniel C. Ustian*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 10, 2019, I will cause to be served the exhibits

supporting this motion that are being filed under seal (Exhibits 3, 4, 10-12, 21, and 24) via email

to the following counsel of record:


Eric M. Phillips (phillipse@sec.gov)
Jonathan S. Polish (polishj@sec.gov)
Anne Graber Blazek (blazeka@sec.gov)
Timothy Stockwell (stockwellt@sec.gov)
U.S. Securities and Exchange Commission
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604



*/s/ Sean M. Berkowitz*
Sean M. Berkowitz

81