# Tab 1:

*SEC v. Conaway*, No. 2:05-40263-RHC
(E.D. Mich. June 1, 2009),
Jury Instructions

SEC v. Conaway et al., Case No. 05-40263

17

**VERDICT FORM**

F I L E D

JUN - 4 2009

CLERK'S OFFICE
U.S. DISTRICT COURT
ANN ARBOR, MI

## CLAIM ONE

**Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5
Promulgated Thereunder**

**For each Question below, please refer to the corresponding jury
instructions for Claim One.**

After you have answered questions 1 through 7 below, you will be asked to
answer the following question:

> Did Charles Conaway violate Section 10(b) of the Securities
> Exchange Act of 1934 and Rule 10b-5 promulgated thereunder
> with respect to one or more of the alleged statements or
> omissions in questions 1 through 7?

1.    With respect to the statement in the Management Discussion & Analysis
section of Kmart's Form 10-Q that, "Our primary sources of working capital are
cash flows from operations and borrowings under our credit facilities,"

Do you find by a preponderance of the evidence:

a.    That Charles Conaway made the statement or caused the statement to
be made?

Answer:  Yes ____✓____     No _____

1

SEC v. Conaway et al., Case No. 05-40263

## **CLAIM ONE**

b.    That the statement was false or misleading?

Answer: Yes   ✓        No _____

c.    That the statement was material?

Answer: Yes   ✓        No _____

d.    That Charles Conaway acted with intent to defraud or with reckless disregard for the truth?

Answer: Yes   ✓        No _____

2.    With respect to the statement in the Management Discussion & Analysis section of Kmart's Form 10-Q that, "Inventory increased … due to seasonal inventory fluctuations and actions taken to improve our overall in-stock position,"

Do you find by a preponderance of the evidence:

a.    That Charles Conaway made the statement or caused the statement to be made?

Answer: Yes   ✓        No _____

b.    That the statement was false or misleading?

Answer: Yes   ✓        No _____

c.    That the statement was material?

Answer: Yes   ✓        No _____

2

## CLAIM ONE

d.   That Charles Conaway acted with intent to defraud or with reckless disregard for the truth?

Answer: Yes ___✓___   No _____

3.   With respect to the alleged omission from the Management Discussion & Analysis section of Kmart's Form 10-Q that it did not identify a known material liquidity event that occurred in the third quarter of 2001,

Do you find by a preponderance of the evidence:

a.   That Charles Conaway made the omission or caused the omission to be made?

Answer: Yes ___✓___   No _____

b.   That Kmart had a known material liquidity event that occurred in the third quarter of 2001?

Answer: Yes ___✓___   No _____

c.   That Kmart was required to disclose this fact under Item 303 of Regulation S-K?

Answer: Yes ___✓___   No _____

d.   That the omitted fact was necessary in order to make the Management Discussion & Analysis section of the Form 10-Q, in light of the circumstances under which it was made, not misleading?

Answer: Yes ___✓___   No _____

SEC v. Conaway et al., Case No. 05-40263

## CLAIM ONE

e.   That the omitted fact was material?

   Answer: Yes _____✓_____   No _____

f.   That Charles Conaway acted with intent to defraud or with reckless disregard for the truth?

   Answer: Yes _____✓_____   No _____

4.   With respect to the alleged omission from the Management Discussion & Analysis section of Kmart's Form 10-Q that it did not disclose that Kmart had a material liquidity deficiency during the third quarter of 2001 or the course of action involving the delay of vendor payments taken by Kmart's management to remedy that deficiency,

   Do you find by a preponderance of the evidence:

a.   That Charles Conaway made the omission or caused the omission to be made?

   Answer: Yes _____✓_____   No _____

b.   That Kmart had a material liquidity deficiency during the third quarter of 2001 and, if so, remedied that deficiency by a course of action involving the delay of vendor payments?

   Answer: Yes _____✓_____   No _____

## CLAIM ONE

c.  That Kmart was required to disclose these facts under Item 303 of Regulation S-K?

> Answer: Yes ____✓____    No _____

d.  That the omitted fact was necessary in order to make the Management Discussion & Analysis section of the Form 10-Q, in light of the circumstances under which it was made, not misleading?

> Answer: Yes ____✓____    No _____

e.  That the omitted facts were material?

> Answer: Yes ____✓____    No _____

f.  That Charles Conaway acted with intent to defraud or with reckless disregard for the truth?

> Answer: Yes ____✓____    No _____

5.  With respect to the alleged omission from the Management Discussion & Analysis section of Kmart's Form 10-Q that it did not identify the delay in vendor payments as a material change in an internal source of liquidity during the third quarter of 2001,

Do you find by a preponderance of the evidence:

a.  That Charles Conaway made the omission or caused the omission to be made?

> Answer: Yes ____✓____    No _____

<u>SEC v. Conaway et al.</u>, Case No. 05-40263

## **CLAIM ONE**

b.  That the delay in vendor payments was a material change in an internal source of liquidity during the third quarter of 2001?

Answer: Yes __✓__    No _____

c.  That Kmart was required to disclose this fact under Item 303 of Regulation S-K?

Answer: Yes __✓__    No _____

d.  That the omitted fact was necessary in order to make the Management Discussion & Analysis section of the Form 10-Q, in light of the circumstances under which it was made, not misleading?

Answer: Yes __✓__    No _____

e.  That the omitted fact was material?

Answer: Yes __✓__    No _____

f.  That Charles Conaway acted with intent to defraud or with reckless disregard for the truth?

Answer: Yes __✓__    No _____

SEC v. Conaway et al., Case No. 05-40263

## **CLAIM ONE**

6.      With respect to the statement on the conference call with analysts on

November 27, 2001, that "We've clearly caused some systems issues, as John

mentioned. During our accounts payable conversion, certain invoices were

dropped and has clearly caused some confusion,"

    Do you find by a preponderance of the evidence:

a.      That the statement was false or misleading?

        Answer: Yes ____✓____    No _____

b.      That the statement was material?

        Answer: Yes ____✓____    No _____

c.      That Charles Conaway acted with intent to defraud or with reckless
        disregard for the truth?

        Answer: Yes ____✓____    No _____

7.      With respect to the statement on the conference call with analysts on

November 27, 2001, that, ". . . And then, I just think there is a – you know, there

was a lot of noise from a small group of suppliers," which was in response to an

analyst's question, "And in terms of the vendors and the payables, … what has

been the biggest problem with the vendors?"

SEC v. Conaway et al., Case No. 05-40263

## **CLAIM ONE**

Do you find by a preponderance of the evidence:

a.    That the statement was false or misleading?

        Answer: Yes ____✓____    No _____

b.    That the statement was material?

        Answer: Yes ____✓____    No _____

c.    That Charles Conaway acted with intent to defraud or with reckless disregard for the truth?

        Answer: Yes ____✓____    No _____

Did Charles Conaway violate Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder with respect to one or more of the alleged statements or omissions in questions 1 through 7?

        Answer: Yes ____✓____    No _____

8

SEC v. Conaway et al., Case No. 05-40263

## CLAIM TWO

**Aiding and Abetting Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 Promulgated Thereunder**

**For each Question below, please refer to the corresponding jury instructions for Claim Two.**

After you have answered questions 1 through 4 below, you will be asked to answer the following question:

> Did Charles Conaway aid and abet one or more violations by Kmart Corporation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder as to the Kmart Form 10-Q for the quarterly period ending October 31, 2001?

Do you find by a preponderance of the evidence:

1.  That Kmart violated Section 10(b) and Rule 10b-5 with respect to one or more of the following statements or alleged omissions:

    a.  With respect to the statement in the Management Discussion & Analysis section of Kmart's Form 10-Q that "Our primary sources of working capital are cash flows from operations and borrowings under our credit facilities," do you find:

        i.  That the statement was false or misleading?

            Answer: Yes $\checkmark$      No _____

SEC v. Conaway et al., Case No. 05-40263

## CLAIM TWO

    ii.   That the statement was material?

        Answer: Yes ____✓____    No _____

    iii.   That Kmart acted with intent to defraud or with reckless disregard for the truth?

        Answer: Yes ____✓____    No _____

b.    With respect to the statement in the Management Discussion & Analysis section of Kmart's Form 10-Q that "Inventory increased … due to seasonal inventory fluctuations and actions taken to improve our overall in-stock position," do you find:

    i.   That the statement was false or misleading?

        Answer: Yes ____✓____    No _____

    ii.   That the statement was material?

        Answer: Yes ____✓____    No _____

    iii.   That Kmart acted with intent to defraud or with reckless disregard for the truth?

        Answer: Yes ____✓____    No _____

c.    With respect to the alleged omission from the Management Discussion & Analysis section of Kmart's Form 10-Q that it did not identify a known material liquidity event that occurred in the third quarter of 2001, do you find:

    i.   That Kmart had a known material liquidity event that occurred in the third quarter of 2001?

        Answer: Yes ____✓____    No _____

## CLAIM TWO

    ii.    That Kmart was required to disclose this fact under Item 303 of Regulation S-K?

        Answer: Yes  ✓     No _____

    iii.   That the omitted fact was necessary in order to make the Management Discussion & Analysis section of the Form 10-Q, in light of the circumstances under which it was made, not misleading?

        Answer: Yes  ✓     No _____

    iv.   That the omitted fact was material?

        Answer: Yes  ✓     No _____

    v.    That Kmart acted with intent to defraud or with reckless disregard for the truth?

        Answer: Yes  ✓     No _____

    d.    With respect to the alleged omission from the Management Discussion & Analysis section of Kmart's Form 10-Q that it did not disclose that Kmart had a material liquidity deficiency during the third quarter of 2001 or the course of action involving the delay of vendor payments taken by Kmart's management to remedy that deficiency, do you find:

        i.    That Kmart had a material liquidity deficiency during the third quarter of 2001 and, if so, remedied that deficiency by a course of action involving the delay of vendor payments?

           Answer: Yes  ✓     No _____

SEC v. Conaway et al., Case No. 05-40263

## CLAIM TWO

    ii.   That Kmart was required to disclose these facts under Item 303 of Regulation S-K?

        Answer: Yes __✓__ No _____

    iii.  That the omitted fact was necessary in order to make the Management Discussion & Analysis section of the Form 10-Q, in light of the circumstances under which it was made, not misleading?

        Answer: Yes __✓__ No _____

    iv.  That the omitted facts were material?

        Answer: Yes __✓__ No _____

    v.   That Kmart acted with intent to defraud or with reckless disregard for the truth?

        Answer: Yes __✓__ No _____

  c.   With respect to the alleged omission from the Management Discussion & Analysis section of Kmart's Form 10-Q that it did not identify the delay in vendor payments as a material change in an internal source of liquidity during the third quarter of 2001,

    i.   That the delay in vendor payments was a material change in an internal source of liquidity during the third quarter of 2001?

        Answer: Yes __✓__ No _____

    ii.  That Kmart was required to disclose this fact under Item 303 of Regulation S-K?

        Answer: Yes __✓__ No _____

## CLAIM TWO

iii. That the omitted fact was necessary in order to make the Management Discussion & Analysis section of the Form 10-Q, in light of the circumstances under which it was made, not misleading?

Answer:  Yes  __✓__  No _____

iv. That the omitted fact was material?

Answer:  Yes  __✓__  No _____

v. That Kmart acted with intent to defraud or with reckless disregard for the truth?

Answer:  Yes  __✓__  No _____

2. That Charles Conaway had a general awareness that his role was part of an overall activity that was improper?

Answer:  Yes  __✓__  No _____

3. That Charles Conaway knowingly assisted Kmart in its violation of Section 10(b) and Rule 10b-5?

Answer:  Yes  __✓__  No _____

4. That Charles Conaway substantially assisted Kmart in its violation of Section 10(b) and Rule 10b-5?

Answer:  Yes  __✓__  No _____

<u>SEC v. Conaway et al.</u>, Case No. 05-40263

## **CLAIM TWO**

Did Charles Conaway aid and abet one or more violations by Kmart

Corporation of Section 10(b) of the Securities Exchange Act of 1934 and Rule

10b-5 promulgated thereunder as to the Kmart Form 10-Q for the quarterly period

ending October 31, 2001?

Answer: Yes ____✓____ No _____

## CLAIM THREE

### Aiding and Abetting Section 13(a) of the Securities Exchange Act of 1934 and Rule 12b-20 and 13a-13 Promulgated Thereunder

**For each Question below, please refer to the corresponding jury instructions for Claim Three.**

After you have answered questions 1 through 4 below, you will be asked to answer the following question:

> Did Charles Conaway aid and abet one or more violations by Kmart Corporation of Section 13(a) of the Securities Exchange Act of 1934 and Rules 12b-20 and 13a-13 promulgated thereunder as to the Kmart Form 10-Q for the quarterly period ending October 31, 2001?

Do you find by a preponderance of the evidence:

1.     That Kmart violated Section 13(a) and Rules 12b-20 and 13a-13 in its Form 10-Q for the third quarter of 2001 with respect to one or more of the statements or alleged omissions in Question 1 under Claim Two?   (Please base your answer to this question on your answers to Question 1 under Claim Two, except do not consider the question:   "That Kmart acted with intent to defraud or with reckless disregard for the truth?"   As set forth in Instruction No. 31 at page 40, you

SEC v. Conaway et al., Case No. 05-40263

## CLAIM THREE

do not need to find that Kmart acted knowingly or recklessly in order for Kmart to

have violated Section 13(a) and Rules 12b-20 and 13a-13.)

Answer: Yes ___✓___    No _____

2.    That Charles Conaway had a general awareness that his role was part of an

overall activity that was improper?

Answer: Yes ___✓___    No _____

3.    That Charles Conaway knowingly assisted Kmart in its violation of Section

13(a) and Rules 12b-20 and 13a-13?

Answer: Yes ___✓___    No _____

4.    That Charles Conaway substantially assisted Kmart in its violation of

Section 13(a) and Rules 12b-20 and 13a-13?

Answer: Yes ___✓___    No _____


Did Charles Conaway aid and abet one or more violations by Kmart

Corporation of Section 13(a) of the Securities Exchange Act of 1934 and Rules

12b-20 and 13a-13 promulgated thereunder as to the Kmart Form 10-Q for the

quarterly period ending October 31, 2001?

Answer: Yes ___✓___    No _____

<u>SEC v. Conaway et al.</u>, Case No. 05-40263

The jury reached the above answers unanimously.

Signed:

_____ s/Jury Foreperson

Forep

Dated: _____ 6/1/09 _____

# Tab 2:

*In re Vivendi Universal, S.A., Securities Litig.*,
No. 1:02-cv-05571-RJH-HMP
(S.D.N.Y. Jan. 29, 2010),
Jury Instructions

COURT EXHIBIT # _#3_

DATE : _1/4/10_
TIME : _12:40 pm_
CASE : _02 CV 5571_
_VERDICT Form_

# ___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - x

IN RE VIVENDI UNIVERSAL, S.A.               02 Civ. 5571 (RJH) (HBP)
SECURITIES LITIGATION
                                            **VERDICT FORM**

This Document Relates To:

ALL ACTIONS

- - - - - - - - - - - - - - - - - - - - - - - x

U.S. DISTRICT COURT
FILED
FEB 0 2 2010
D.S.
S.D. OF N.Y.

**Question No. 1A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 1 on Table A?

| | | |
|---|---|---|
| **Vivendi** | Yes ✔ | No ___ |
| **Mr. Messier** | Yes ___ | No ✔ |
| **Mr. Hannezo** | Yes ___ | No ✔ |

**Question No. 1B:** If you answered "yes" to Question No. 1A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 1A for any defendant, do <u>not</u> answer Question No. 1B with respect to that defendant.

| | | |
|---|---|---|
| **Vivendi** | Knowingly ___ | Recklessly ✗ |
| **Mr. Messier** | Knowingly ___ | Recklessly ___ |
| **Mr. Hannezo** | Knowingly ___ | Recklessly ___ |

**PLEASE PROCEED TO QUESTION NO. 2A.**

1 of 72

**Question No. 2A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 2 on Table A?

**Vivendi**          Yes ✔          No _____

**Question No. 2B:** If you answered "yes" to Question No. 2A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 2A for any defendant, do not answer Question No. 2B with respect to that defendant.

**Vivendi**          Knowingly _____          Recklessly ✗

**PLEASE PROCEED TO QUESTION NO. 3A.**

**Question No. 3A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 3 on Table A?

| | | |
|---|---|---|
| **Vivendi** | Yes ✔ | No _____ |
| **Mr. Messier** | Yes _____ | No ✗ |

**Question No. 3B:** If you answered "yes" to Question No. 3A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 3A for any defendant, do not answer Question No. 3B with respect to that defendant.

| | | |
|---|---|---|
| **Vivendi** | Knowingly _____ | Recklessly ✗ |
| **Mr. Messier** | Knowingly _____ | Recklessly _____ |

**PLEASE PROCEED TO QUESTION NO. 4A.**

3 of 72

**Question No. 4A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 4 on Table A?

| | | | |
|---|---|---|---|
| **Vivendi** | Yes ✔ | No ____ |
| **Mr. Messier** | Yes ____ | No ✔ |

**Question No. 4B:** If you answered "yes" to Question No. 4A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 4A for any defendant, do <u>not</u> answer Question No. 4B with respect to that defendant.

| | | | |
|---|---|---|---|
| **Vivendi** | Knowingly ____ | Recklessly ✗ |
| **Mr. Messier** | Knowingly ____ | Recklessly ____ |

**PLEASE PROCEED TO QUESTION NO. 5A.**

4 of 72

**Question No. 5A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 5 on Table A?

| | | |
|---|---|---|
| **Vivendi** | Yes ✔ | No ____ |
| **Mr. Messier** | Yes ____ | No ✗ |

**Question No. 5B:** If you answered "yes" to Question No. 5A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 5A for any defendant, do <u>not</u> answer Question No. 5B with respect to that defendant.

| | | |
|---|---|---|
| **Vivendi** | Knowingly ____ | Recklessly ✗ |
| **Mr. Messier** | Knowingly ____ | Recklessly ____ |

**PLEASE PROCEED TO QUESTION NO. 6A.**

5 of 72

**Question No. 6A:**  Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 6 on Table A?

      **Vivendi**          Yes ✔          No ____

**Question No. 6B:**  If you answered "yes" to Question No. 6A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line.  If you answered "no" to Question No. 6A for any defendant, do <u>not</u> answer Question No. 6B with respect to that defendant.

      **Vivendi**          Knowingly ____      Recklessly ✘

**PLEASE PROCEED TO QUESTION NO. 7A.**

**Question No. 7A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 7 on Table A?

      **Vivendi**        Yes ✔        No _____

**Question No. 7B:** If you answered "yes" to Question No. 7A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 7A for any defendant, do <u>not</u> answer Question No. 7B with respect to that defendant.

      **Vivendi**        Knowingly _____    Recklessly ✘

**PLEASE PROCEED TO QUESTION NO. 8A.**

**Question No. 8A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 8 on Table A?

| | | |
|---|---|---|
| **Vivendi** | Yes ✔ | No _____ |
| **Mr. Messier** | Yes _____ | No ✔ |

**Question No. 8B:** If you answered "yes" to Question No. 8A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 8A for any defendant, do **not** answer Question No. 8B with respect to that defendant.

| | | |
|---|---|---|
| **Vivendi** | Knowingly _____ | Recklessly ✘ |
| **Mr. Messier** | Knowingly _____ | Recklessly _____ |

**PLEASE PROCEED TO QUESTION NO. 9A.**

8 of 72

**Question No. 9A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 9 on Table A?

      **Vivendi**          Yes ✓          No _____

**Question No. 9B:** If you answered "yes" to Question No. 9A for any defendant, indicate whether that defendant acted knowingly or recklessly **(choose one)** by placing an X on the appropriate line. If you answered "no" to Question No. 9A for any defendant, do <u>not</u> answer Question No. 9B with respect to that defendant.

      **Vivendi**          Knowingly _____     Recklessly ✗

**PLEASE PROCEED TO QUESTION NO. 10A.**

**Question No. 10A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 10 on Table A?

| | | |
|---|---|---|
| **Vivendi** | Yes ✔ | No ____ |
| **Mr. Messier** | Yes ____ | No ✔ |

**Question No. 10B:** If you answered "yes" to Question No. 10A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 10A for any defendant, do **not** answer Question No. 10B with respect to that defendant.

| | | |
|---|---|---|
| **Vivendi** | Knowingly ____ | Recklessly ✘ |
| **Mr. Messier** | Knowingly ____ | Recklessly ____ |

**PLEASE PROCEED TO QUESTION NO. 11A.**

10 of 72

**Question No. 11A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 11 on Table A?

| | | |
|---|---|---|
| **Vivendi** | Yes ✔ | No ____ |
| **Mr. Messier** | Yes ____ | No ✔ |

**Question No. 11B:** If you answered "yes" to Question No. 11A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 11A for any defendant, do <u>not</u> answer Question No. 11B with respect to that defendant.

| | | |
|---|---|---|
| **Vivendi** | Knowingly ____ | Recklessly ✗ |
| **Mr. Messier** | Knowingly ____ | Recklessly ____ |

**PLEASE PROCEED TO QUESTION NO. 12A.**

11 of 72

**Question No. 12A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 12 on Table A?

**Vivendi**     Yes ✔     No ____

**Mr. Messier**     Yes ____     No ✔

**Question No. 12B:** If you answered "yes" to Question No. 12A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 12A for any defendant, do not answer Question No. 12B with respect to that defendant.

**Vivendi**     Knowingly ____     Recklessly ✗

**Mr. Messier**     Knowingly ____     Recklessly ____

**PLEASE PROCEED TO QUESTION NO. 13A.**

**Question No. 13A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 13 on Table A?

| | | |
|---|---|---|
| **Vivendi** | Yes ✔ | No ____ |
| **Mr. Messier** | Yes ____ | No ✔ |

**Question No. 13B:** If you answered "yes" to Question No. 13A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 13A for any defendant, do <u>not</u> answer Question No. 13B with respect to that defendant.

| | | |
|---|---|---|
| **Vivendi** | Knowingly ____ | Recklessly ✘ |
| **Mr. Messier** | Knowingly ____ | Recklessly ____ |

**PLEASE PROCEED TO QUESTION NO. 14A.**

13 of 72

**Question No. 14A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 14 on Table A?

| | | |
|---|---|---|
| **Vivendi** | Yes ✔ | No ____ |
| **Mr. Hannezo** | Yes ____ | No ✗ |

**Question No. 14B:** If you answered "yes" to Question No. 14A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 14A for any defendant, do **not** answer Question No. 14B with respect to that defendant.

| | | |
|---|---|---|
| **Vivendi** | Knowingly ____ | Recklessly ✗ |
| **Mr. Hannezo** | Knowingly ____ | Recklessly ____ |

**PLEASE PROCEED TO QUESTION NO. 15A.**

14 of 72

**Question No. 15A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 15 on Table A?

> **Vivendi**        Yes ✔           No ____
>
> **Mr. Hannezo**    Yes ____       No ✔

**Question No. 15B:** If you answered "yes" to Question No. 15A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 15A for any defendant, do **not** answer Question No. 15B with respect to that defendant.

> **Vivendi**        Knowingly ____    Recklessly ✘
>
> **Mr. Hannezo**    Knowingly ____    Recklessly ____

**PLEASE PROCEED TO QUESTION NO. 16A.**

**Question No. 16A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 16 on Table A?

      **Vivendi**        Yes ✔            No _____

**Question No. 16B:** If you answered "yes" to Question No. 16A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 16A for any defendant, do not answer Question No. 16B with respect to that defendant.

      **Vivendi**        Knowingly _____     Recklessly ✘

**PLEASE PROCEED TO QUESTION NO. 17A.**

16 of 72

**Question No. 17A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 17 on Table A?

| | | |
|---|---|---|
| **Vivendi** | Yes ✔ | No _____ |
| **Mr. Messier** | Yes _____ | No ✔ |

**Question No. 17B:** If you answered "yes" to Question No. 17A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 17A for any defendant, do **not** answer Question No. 17B with respect to that defendant.

| | | |
|---|---|---|
| **Vivendi** | Knowingly _____ | Recklessly ✗ |
| **Mr. Messier** | Knowingly _____ | Recklessly _____ |

**PLEASE PROCEED TO QUESTION NO. 18A.**

17 of 72

**Question No. 18A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 18 on Table A?

**Vivendi**  Yes ✔ No _____

**Mr. Messier**  Yes _____ No ✗

**Question No. 18B:** If you answered "yes" to Question No. 18A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 18A for any defendant, do **not** answer Question No. 18B with respect to that defendant.

**Vivendi**  Knowingly _____ Recklessly ✗

**Mr. Messier**  Knowingly _____ Recklessly _____

**PLEASE PROCEED TO QUESTION NO. 19A.**

18 of 72

**Question No. 19A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 19 on Table A?

**Vivendi**          Yes ✔___          No ___

**Question No. 19B:** If you answered "yes" to Question No. 19A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 19A for any defendant, do not answer Question No. 19B with respect to that defendant.

**Vivendi**          Knowingly ___          Recklessly ✗___

**PLEASE PROCEED TO QUESTION NO. 20A.**

19 of 72

**Question No. 20A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 20 on Table A?

**Vivendi**         Yes ✔         No _____

**Mr. Messier**      Yes _____       No ✗

**Question No. 20B:** If you answered "yes" to Question No. 20A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 20A for any defendant, do <u>not</u> answer Question No. 20B with respect to that defendant.

**Vivendi**         Knowingly _____    Recklessly ✗

**Mr. Messier**      Knowingly _____    Recklessly _____

**PLEASE PROCEED TO QUESTION NO. 21A.**

**Question No. 21A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 21 on Table A?

| | | | |
|---|---|---|---|
| **Vivendi** | Yes ✔ | No ____ |
| **Mr. Messier** | Yes ____ | No ✔ |

**Question No. 21B:** If you answered "yes" to Question No. 21A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 21A for any defendant, do <u>not</u> answer Question No. 21B with respect to that defendant.

| | | | |
|---|---|---|---|
| **Vivendi** | Knowingly ____ | Recklessly ✗ |
| **Mr. Messier** | Knowingly ____ | Recklessly ____ |

**PLEASE PROCEED TO QUESTION NO. 22A.**

21 of 72

**Question No. 22A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 22 on Table A?

|  |  |  |
|---|---|---|
| **Vivendi** | Yes ✔ | No ____ |
| **Mr. Hannezo** | Yes ____ | No ✔ |

**Question No. 22B:** If you answered "yes" to Question No. 22A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 22A for any defendant, do <u>not</u> answer Question No. 22B with respect to that defendant.

|  |  |  |
|---|---|---|
| **Vivendi** | Knowingly ____ | Recklessly ✗ |
| **Mr. Hannezo** | Knowingly ____ | Recklessly ____ |

**PLEASE PROCEED TO QUESTION NO. 23A.**

**Question No. 23A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 23 on Table A?

**Vivendi**        Yes ✔        No _____

**Mr. Hannezo**    Yes _____    No ✔

**Question No. 23B:** If you answered "yes" to Question No. 23A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 23A for any defendant, do not answer Question No. 23B with respect to that defendant.

**Vivendi**        Knowingly _____    Recklessly ✘

**Mr. Hannezo**    Knowingly _____    Recklessly _____

**PLEASE PROCEED TO QUESTION NO. 24A.**

23 of 72

**Question No. 24A**: Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 24 on Table A?

**Vivendi**          Yes ✔          No ____

**Question No. 24B**: If you answered "yes" to Question No. 24A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 24A for any defendant, do <u>not</u> answer Question No. 24B with respect to that defendant.

**Vivendi**          Knowingly ____          Recklessly ✗

**PLEASE PROCEED TO QUESTION NO. 25A.**

24 of 72

**Question No. 25A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 25 on Table A?

    **Vivendi**        Yes ✔          No &<u>    </u>

**Question No. 25B:** If you answered "yes" to Question No. 25A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 25A for any defendant, do not answer Question No. 25B with respect to that defendant.

    **Vivendi**        Knowingly &<u>    </u>    Recklessly ✗

**PLEASE PROCEED TO QUESTION NO. 26A.**

**Question No. 26A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 26 on Table A?

**Vivendi**          Yes ✔          No ____

**Question No. 26B:** If you answered "yes" to Question No. 26A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 26A for any defendant, do **not** answer Question No. 26B with respect to that defendant.

**Vivendi**          Knowingly ____          Recklessly ✗

**PLEASE PROCEED TO QUESTION NO. 27A.**

26 of 72

**Question No. 27A**: Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 27 on Table A?

      **Vivendi**           Yes ✔           No _____

**Question No. 27B**:  If you answered "yes" to Question No. 27A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line.  If you answered "no" to Question No. 27A for any defendant, do not answer Question No. 27B with respect to that defendant.

      **Vivendi**           Knowingly _____      Recklessly ✘

**PLEASE PROCEED TO QUESTION NO. 28A.**

**Question No. 28A**: Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 28 on Table A?

**Vivendi**      Yes  ✔        No _____

**Mr. Messier**    Yes _____      No ✔

**Question No. 28B**: If you answered "yes" to Question No. 28A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 28A for any defendant, do **not** answer Question No. 28B with respect to that defendant.

**Vivendi**      Knowingly _____    Recklessly ✘

**Mr. Messier**    Knowingly _____    Recklessly _____

**PLEASE PROCEED TO QUESTION NO. 29A.**

**Question No. 29A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 29 on Table A?

| | | | |
|---|---|---|---|
| **Vivendi** | Yes ✔ | No ____ |
| **Mr. Messier** | Yes ____ | No ✗ |

**Question No. 29B:** If you answered "yes" to Question No. 29A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 29A for any defendant, do **not** answer Question No. 29 with respect to that defendant.

| | | | |
|---|---|---|---|
| **Vivendi** | Knowingly ____ | Recklessly ✗ |
| **Mr. Messier** | Knowingly ____ | Recklessly ____ |

**PLEASE PROCEED TO QUESTION NO. 30A.**

29 of 72

**Question No. 30A**:  Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 30 on Table A?

**Vivendi**          Yes _✔_          No _____

**Question No. 30B**:  If you answered "yes" to Question No. 30A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line.  If you answered "no" to Question No. 30A for any defendant, do not answer Question No. 30B with respect to that defendant.

**Vivendi**          Knowingly _____          Recklessly _✗_

**PLEASE PROCEED TO QUESTION NO. 31A.**

**Question No. 31A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 31 on Table A?

| | | |
|---|---|---|
| **Vivendi** | Yes ✔ | No ____ |
| **Mr. Messier** | Yes ____ | No ✔ |

**Question No. 31B:** If you answered "yes" to Question No. 31A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 31A for any defendant, do <u>not</u> answer Question No. 31B with respect to that defendant.

| | | |
|---|---|---|
| **Vivendi** | Knowingly ____ | Recklessly ✖ |
| **Mr. Messier** | Knowingly ____ | Recklessly ____ |

**PLEASE PROCEED TO QUESTION NO. 32A.**

**Question No. 32A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 32 on Table A?

| | | | |
|---|---|---|---|
| **Vivendi** | Yes ✔ | No _____ |
| **Mr. Messier** | Yes _____ | No ✔ |

**Question No. 32B:** If you answered "yes" to Question No. 32A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 32A for any defendant, do <u>not</u> answer Question No. 32B with respect to that defendant.

| | | | |
|---|---|---|---|
| **Vivendi** | Knowingly _____ | Recklessly ✘ |
| **Mr. Messier** | Knowingly _____ | Recklessly _____ |

**PLEASE PROCEED TO QUESTION NO. 33A.**

**Question No. 33A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 33 on Table A?

| | | |
|---|---|---|
| **Vivendi** | Yes ✔ | No ____ |
| **Mr. Messier** | Yes ____ | No ✔ |

**Question No. 33B:** If you answered "yes" to Question No. 33A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 33A for any defendant, do <u>not</u> answer Question No. 33B with respect to that defendant.

| | | |
|---|---|---|
| **Vivendi** | Knowingly ____ | Recklessly ✘ |
| **Mr. Messier** | Knowingly ____ | Recklessly ____ |

**PLEASE PROCEED TO QUESTION NO. 34A.**

33 of 72

**Question No. 34A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 34 on Table A?

**Vivendi**        Yes ✔        No ____

**Mr. Messier**        Yes ____        No ✔

**Question No. 34B:** If you answered "yes" to Question No. 34A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 34A for any defendant, do <u>not</u> answer Question No. 34B with respect to that defendant.

**Vivendi**        Knowingly ____        Recklessly ✘

**Mr. Messier**        Knowingly ____        Recklessly ____

**PLEASE PROCEED TO QUESTION NO. 35A.**

**Question No. 35A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 35 on Table A?

| | | |
|---|---|---|
| **Vivendi** | Yes ✔ | No ____ |
| **Mr. Messier** | Yes ____ | No ✔ |

**Question No. 35B:** If you answered "yes" to Question No. 35A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 35A for any defendant, do not answer Question No. 35B with respect to that defendant.

| | | |
|---|---|---|
| **Vivendi** | Knowingly ____ | Recklessly ✗ |
| **Mr. Messier** | Knowingly ____ | Recklessly ____ |

**PLEASE PROCEED TO QUESTION NO. 36A.**

**Question No. 36A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 36 on Table A?

| | | |
|---|---|---|
| **Vivendi** | Yes ✔ | No ____ |
| **Mr. Messier** | Yes ____ | No ✔ |

**Question No. 36B:** If you answered "yes" to Question No. 36A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 36A for any defendant, do **not** answer Question No. 36B with respect to that defendant.

| | | |
|---|---|---|
| **Vivendi** | Knowingly ____ | Recklessly ✖ |
| **Mr. Messier** | Knowingly ____ | Recklessly ____ |

**PLEASE PROCEED TO QUESTION NO. 37A.**

36 of 72

**Question No. 37A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 37 on Table A?

**Vivendi**            Yes ✔___            No ____

**Mr. Messier**        Yes ____            No ✔___

**Question No. 37B:** If you answered "yes" to Question No. 37A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 37A for any defendant, do **not** answer Question No. 37B with respect to that defendant.

**Vivendi**            Knowingly ____        Recklessly ✗___

**Mr. Messier**        Knowingly ____        Recklessly ____

**PLEASE PROCEED TO QUESTION NO. 38A.**

**Question No. 38A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 38 on Table A?

> **Vivendi**      Yes ✓      No ____

**Question No. 38B:** If you answered "yes" to Question No. 38A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 38A for any defendant, do **not** answer Question No. 38B with respect to that defendant.

> **Vivendi**      Knowingly ____      Recklessly ✗

**PLEASE PROCEED TO QUESTION NO. 39A.**

**Question No. 39A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 39 on Table A?

**Vivendi**          Yes ✓____          No ____


**Question No. 39B:** If you answered "yes" to Question No. 39A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 39A for any defendant, do **not** answer Question No. 39B with respect to that defendant.

**Vivendi**          Knowingly ____          Recklessly ✗____


**PLEASE PROCEED TO QUESTION NO. 40A.**

39 of 72

**Question No. 40A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 40 on Table A?

**Vivendi**　　　　Yes ✔　　　　　No ____

**Mr. Messier**　　Yes ____　　　　No ✔

**Question No. 40B:** If you answered "yes" to Question No. 40A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 40A for any defendant, do <u>not</u> answer Question No. 40B with respect to that defendant.

**Vivendi**　　　　Knowingly ____　　Recklessly ✗

**Mr. Messier**　　Knowingly ____　　Recklessly ____

**PLEASE PROCEED TO QUESTION NO. 41A.**

40 of 72

**Question No. 41A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 41 on Table A?

| | | | |
|---|---|---|---|
| **Vivendi** | Yes ✔ | No _____ |
| **Mr. Messier** | Yes _____ | No ✔ |

**Question No. 41B:** If you answered "yes" to Question No. 41A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 41A for any defendant, do <u>not</u> answer Question No. 41B with respect to that defendant.

| | | | |
|---|---|---|---|
| **Vivendi** | Knowingly _____ | Recklessly ✘ |
| **Mr. Messier** | Knowingly _____ | Recklessly _____ |

**PLEASE PROCEED TO QUESTION NO. 42A.**

41 of 72

**Question No. 42A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 42 on Table A?

| | | |
|---|---|---|
| **Vivendi** | Yes ✓ | No _____ |
| **Mr. Messier** | Yes _____ | No ✓ |

**Question No. 42B:** If you answered "yes" to Question No. 42A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 42A for any defendant, do <u>not</u> answer Question No. 42B with respect to that defendant.

| | | |
|---|---|---|
| **Vivendi** | Knowingly _____ | Recklessly ✗ |
| **Mr. Messier** | Knowingly _____ | Recklessly _____ |

**PLEASE PROCEED TO QUESTION NO. 43A.**

**Question No. 43A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 43 on Table A?

| | | |
|---|---|---|
| **Vivendi** | Yes ✔ | No ____ |
| **Mr. Messier** | Yes ____ | No ✗ |

**Question No. 43B:** If you answered "yes" to Question No. 43A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 43A for any defendant, do not answer Question No. 43B with respect to that defendant.

| | | |
|---|---|---|
| **Vivendi** | Knowingly ____ | Recklessly ✗ |
| **Mr. Messier** | Knowingly ____ | Recklessly ____ |

**PLEASE PROCEED TO QUESTION NO. 44A.**

43 of 72

**Question No. 44A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 44 on Table A?

| | | | |
|---|---|---|---|
| **Vivendi** | Yes ✔ | No ____ |
| **Mr. Messier** | Yes ____ | No ✔ |
| **Mr. Hannezo** | Yes ____ | No ✔ |

**Question No. 44B:** If you answered "yes" to Question No. 44A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 44A for any defendant, do **not** answer Question No. 44B with respect to that defendant.

| | | |
|---|---|---|
| **Vivendi** | Knowingly ____ | Recklessly ✘ |
| **Mr. Messier** | Knowingly ____ | Recklessly ____ |
| **Mr. Hannezo** | Knowingly ____ | Recklessly ____ |

**PLEASE PROCEED TO QUESTION NO. 45A.**

44 of 72

**Question No. 45A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 45 on Table A?

| | | |
|---|---|---|
| **Vivendi** | Yes ✔ | No ____ |
| **Mr. Messier** | Yes ____ | No ✔ |
| **Mr. Hannezo** | Yes ____ | No ✔ |

**Question No. 45B:** If you answered "yes" to Question No. 45A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 45A for any defendant, do <u>not</u> answer Question No. 45B with respect to that defendant.

| | | |
|---|---|---|
| **Vivendi** | Knowingly ____ | Recklessly ✗ |
| **Mr. Messier** | Knowingly ____ | Recklessly ____ |
| **Mr. Hannezo** | Knowingly ____ | Recklessly ____ |

**PLEASE PROCEED TO QUESTION NO. 46A.**

45 of 72

**Question No. 46A**: Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 46 on Table A?

      **Vivendi**          Yes  ✔            No \_\_\_\_

**Question No. 46B**: If you answered "yes" to Question No. 46A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 46A for any defendant, do <u>not</u> answer Question No. 46B with respect to that defendant.

      **Vivendi**          Knowingly \_\_\_\_    Recklessly ✗\_\_

**PLEASE PROCEED TO QUESTION NO. 47A.**

**Question No. 47A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 47 on Table A?

| | | | |
|---|---|---|---|
| **Vivendi** | Yes ✔ | No ____ | |
| **Mr. Messier** | Yes ____ | No ✗ | |

**Question No. 47B:** If you answered "yes" to Question No. 47A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 47A for any defendant, do <u>not</u> answer Question No. 47B with respect to that defendant.

| | | | |
|---|---|---|---|
| **Vivendi** | Knowingly ____ | Recklessly ✗ | |
| **Mr. Messier** | Knowingly ____ | Recklessly ____ | |

**PLEASE PROCEED TO QUESTION NO. 48A.**

47 of 72

**Question No. 48A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 48 on Table A?

| | | | | |
|---|---|---|---|---|
| **Vivendi** | Yes | ✔ | No | ___ |
| **Mr. Messier** | Yes | ___ | No | ✔ |

**Question No. 48B:** If you answered "yes" to Question No. 48A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 48A for any defendant, do not answer Question No. 48B with respect to that defendant.

| | | | | |
|---|---|---|---|---|
| **Vivendi** | Knowingly | ___ | Recklessly | ✗ |
| **Mr. Messier** | Knowingly | ___ | Recklessly | ___ |

**PLEASE PROCEED TO QUESTION NO. 49A.**

48 of 72

**Question No. 49A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 49 on Table A?

| | | | |
|---|---|---|---|
| **Vivendi** | Yes ✔ | No ____ |
| **Mr. Hannezo** | Yes ____ | No ✔ |

**Question No. 49B:** If you answered "yes" to Question No. 49A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 49A for any defendant, do **not** answer Question No. 49B with respect to that defendant.

| | | | |
|---|---|---|---|
| **Vivendi** | Knowingly ____ | Recklessly ✗ |
| **Mr. Hannezo** | Knowingly ____ | Recklessly ____ |

**PLEASE PROCEED TO QUESTION NO. 50A.**

**Question No. 50A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 50 on Table A?

**Vivendi**          Yes ✓          No ____


**Question No. 50B:** If you answered "yes" to Question No. 50A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 50A for any defendant, do **not** answer Question No. 50B with respect to that defendant.

**Vivendi**          Knowingly ____          Recklessly ✗


**PLEASE PROCEED TO QUESTION NO. 51A.**

**Question No. 51A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 51 on Table A?

**Vivendi**      Yes ✔         No _____

**Question No. 51B:** If you answered "yes" to Question No. 51A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 51A for any defendant, do not answer Question No. 51B with respect to that defendant.

**Vivendi**      Knowingly _____    Recklessly ✗

**PLEASE PROCEED TO QUESTION NO. 52A.**

**Question No. 52A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 52 on Table A?

**Vivendi**    Yes __✔__    No ____

**Mr. Hannezo**    Yes ____    No __✗__

**Question No. 52B:** If you answered "yes" to Question No. 52A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 52A for any defendant, do <u>not</u> answer Question No. 52B with respect to that defendant.

**Vivendi**    Knowingly ____    Recklessly __✗__

**Mr. Hannezo**    Knowingly ____    Recklessly ____

**PLEASE PROCEED TO QUESTION NO. 53A.**

52 of 72

**Question No. 53A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 53 on Table A7

| **Vivendi** | Yes ✓ | No ____ |
| **Mr. Hannezo** | Yes ____ | No ✓ |

**Question No. 53B:** If you answered "yes" to Question No. 53A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 53A for any defendant, do <u>not</u> answer Question No. 53B with respect to that defendant.

| **Vivendi** | Knowingly ____ | Recklessly ✗ |
| **Mr. Hannezo** | Knowingly ____ | Recklessly ____ |

**PLEASE PROCEED TO QUESTION NO. 54A.**

**Question No. 54A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 54 on Table A?

| | | | |
|---|---|---|---|
| **Vivendi** | Yes ✔ | No |
| **Mr. Hannezo** | Yes _____ | No ✔ |

**Question No. 54B:** If you answered "yes" to Question No. 54A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 54A for any defendant, do not answer Question No. 54B with respect to that defendant.

| | | | |
|---|---|---|---|
| **Vivendi** | Knowingly _____ | Recklessly ✗ |
| **Mr. Hannezo** | Knowingly _____ | Recklessly _____ |

**PLEASE PROCEED TO QUESTION NO. 55A.**

54 of 72

**Question No. 55A**: Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 55 on Table A?

     **Vivendi**          Yes __✔__          No ____

**Question No. 55B**: If you answered "yes" to Question No. 55A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 55A for any defendant, do <u>not</u> answer Question No. 55B with respect to that defendant.

     **Vivendi**          Knowingly ____      Recklessly __✗__

**PLEASE PROCEED TO QUESTION NO. 56A.**

55 of 72

**Question No. 56A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 56 on Table A?

    **Vivendi**        Yes ✔        No _____


**Question No. 56B:** If you answered "yes" to Question No. 56A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 56A for any defendant, do <u>not</u> answer Question No. 56B with respect to that defendant.

    **Vivendi**        Knowingly _____    Recklessly ✗


**PLEASE PROCEED TO QUESTION NO. 57A.**

**Question No. 57A:** Have plaintiffs proven each element of their Section 10(b) claim against any defendant with regard to the statement(s) listed as Entry No. 57 on Table A?

**Vivendi**           Yes ✔____             No ____

**Mr. Messier**      Yes ____               No ✗____

**Question No. 57B:** If you answered "yes" to Question No. 57A for any defendant, indicate whether that defendant acted knowingly or recklessly (**choose one**) by placing an X on the appropriate line. If you answered "no" to Question No. 57A for any defendant, do <u>not</u> answer Question No. 57B with respect to that defendant.

**Vivendi**           Knowingly ____      Recklessly ✗

**Mr. Messier**     Knowingly ____      Recklessly ____

**PLEASE PROCEED TO QUESTION NO. 58.**

If you answered "no" for all the statements in Questions No. 1A through 57A, you have finished with the Verdict Form. Please turn to the last page, sign and date the Form, and inform the Court that you have finished.

If you answered "yes" for any statement in Questions No. 1A through 57A, please proceed to Question No. 58.

Question No. 58:

Please identify the daily inflation amount (in euros/dollars per share), if any, that you find was caused by the Section 10(b) violation(s) you identified in Questions No. 1A through 57A. You may consult PX-1486 and DX-1878 for guidance in answering this question.

| Date | Amount of Inflation Per Ordinary Share | Amount of Inflation Per ADS |
|---|---|---|
| 10/30/2000 | € 0.15 per share | $ 0.13 per share |
| 10/31/2000 | € 0.15 per share | $ 0.13 per share |
| 11/01/2000 | € 0.15 per share | $ 0.13 per share |
| 11/02/2000 | € 0.15 per share | $ 0.13 per share |
| 11/03/2000 | € 0.15 per share | $ 0.13 per share |
| 11/06/2000 | € 0.15 per share | $ 0.13 per share |
| 11/07/2000 | € 0.15 per share | $ 0.13 per share |
| 11/08/2000 | € 0.15 per share | $ 0.13 per share |
| 11/09/2000 | € 0.15 per share | $ 0.13 per share |
| 11/10/2000 | € 0.15 per share | $ 0.13 per share |
| 11/13/2000 | € 0.15 per share | $ 0.13 per share |
| 11/14/2000 | € 0.15 per share | $ 0.13 per share |
| 11/15/2000 | € 0.15 per share | $ 0.13 per share |
| 11/16/2000 | € 0.15 per share | $ 0.13 per share |
| 11/17/2000 | € 0.15 per share | $ 0.13 per share |
| 11/20/2000 | € 0.15 per share | $ 0.13 per share |
| 11/21/2000 | € 0.15 per share | $ 0.13 per share |
| 11/22/2000 | € 0.15 per share | $ 0.13 per share |
| 11/23/2000 | € 0.15 per share | |
| 11/24/2000 | € 0.15 per share | $ 0.13 per share |
| 11/27/2000 | € 0.15 per share | $ 0.13 per share |
| 11/28/2000 | € 0.15 per share | $ 0.13 per share |
| 11/29/2000 | € 0.15 per share | $ 0.13 per share |
| 11/30/2000 | € 0.15 per share | $ 0.13 per share |
| 12/01/2000 | € 0.15 per share | $ 0.13 per share |
| 12/04/2000 | € 0.15 per share | $ 0.13 per share |
| 12/05/2000 | € 0.15 per share | $ 0.13 per share |
| 12/06/2000 | € 0.15 per share | $ 0.13 per share |
| 12/07/2000 | € 0.15 per share | $ 0.13 per share |
| 12/08/2000 | € 0.15 per share | $ 0.13 per share |
| 12/11/2000 | € 0.15 per share | $ 0.13 per share |

| Date | Amount of Inflation Per Ordinary Share | Amount of Inflation Per ADS |
|------|----------------------------------------|------------------------------|
| 12/12/2000 | € 0.15 per share | $ 0.13 per share |
| 12/13/2000 | € 0.15 per share | $ 0.13 per share |
| 12/14/2000 | € 0.15 per share | $ 0.13 per share |
| 12/15/2000 | € 0.15 per share | $ 0.13 per share |
| 12/18/2000 | € 0.15 per share | $ 0.13 per share |
| 12/19/2000 | € 0.15 per share | $ 0.13 per share |
| 12/20/2000 | € 0.15 per share | $ 0.13 per share |
| 12/21/2000 | € 0.15 per share | $ 0.13 per share |
| 12/22/2000 | € 0.15 per share | $ 0.13 per share |
| 12/26/2000 |  | $ 0.13 per share |
| 12/27/2000 | € 0.15 per share | $ 0.13 per share |
| 12/28/2000 | € 0.15 per share | $ 0.13 per share |
| 12/29/2000 | € 0.15 per share | $ 0.13 per share |
| 01/02/2001 | € 0.15 per share | $ 0.13 per share |
| 01/03/2001 | € 0.15 per share | $ 0.13 per share |
| 01/04/2001 | € 0.15 per share | $ 0.13 per share |
| 01/05/2001 | € 0.15 per share | $ 0.13 per share |
| 01/08/2001 | € 0.15 per share | $ 0.13 per share |
| 01/09/2001 | € 0.15 per share | $ 0.13 per share |
| 01/10/2001 | € 0.15 per share | $ 0.13 per share |
| 01/11/2001 | € 0.15 per share | $ 0.13 per share |
| 01/12/2001 | € 0.15 per share | $ 0.13 per share |
| 01/15/2001 | € 0.15 per share |  |
| 01/16/2001 | € 0.15 per share | $ 0.13 per share |
| 01/17/2001 | € 0.15 per share | $ 0.13 per share |
| 01/18/2001 | € 0.15 per share | $ 0.13 per share |
| 01/19/2001 | € 0.15 per share | $ 0.13 per share |
| 01/22/2001 | € 0.15 per share | $ 0.13 per share |
| 01/23/2001 | € 0.15 per share | $ 0.13 per share |
| 01/24/2001 | € 0.15 per share | $ 0.13 per share |
| 01/25/2001 | € 0.15 per share | $ 0.13 per share |
| 01/26/2001 | € 0.15 per share | $ 0.13 per share |
| 01/29/2001 | € 0.15 per share | $ 0.13 per share |
| 01/30/2001 | € 0.15 per share | $ 0.13 per share |
| 01/31/2001 | € 0.15 per share | $ 0.13 per share |
| 02/01/2001 | € 0.15 per share | $ 0.13 per share |
| 02/02/2001 | € 0.15 per share | $ 0.13 per share |
| 02/05/2001 | € 0.15 per share | $ 0.13 per share |
| 02/06/2001 | € 0.15 per share | $ 0.13 per share |
| 02/07/2001 | € 0.15 per share | $ 0.13 per share |
| 02/08/2001 | € 0.15 per share | $ 0.13 per share |
| 02/09/2001 | € 0.15 per share | $ 0.13 per share |
| 02/12/2001 | € 0.15 per share | $ 0.13 per share |
| 02/13/2001 | € 0.15 per share | $ 0.13 per share |

| Date | Amount of Inflation Per Ordinary Share | Amount of Inflation Per ADS |
|---|---|---|
| 02/14/2001 | € 0.15 per share | $ 0.13 per share |
| 02/15/2001 | € 0.15 per share | $ 0.10 per share |
| 02/16/2001 | € 0.15 per share | $ 0.10 per share |
| 02/19/2001 | € 0.15 per share | |
| 02/20/2001 | € 0.15 per share | $ 0.13 per share |
| 02/21/2001 | € 0.15 per share | $ 0.13 per share |
| 02/22/2001 | € 0.15 per share | $ 0.13 per share |
| 02/23/2001 | € 0.15 per share | $ 0.13 per share |
| 02/26/2001 | € 0.15 per share | $ 0.13 per share |
| 02/27/2001 | € 0.15 per share | $ 0.13 per share |
| 02/28/2001 | € 0.15 per share | $ 0.13 per share |
| 03/01/2001 | € 0.15 per share | $ 0.13 per share |
| 03/02/2001 | € 0.15 per share | $ 0.13 per share |
| 03/05/2001 | € 0.15 per share | $ 0.13 per share |
| 03/06/2001 | € 0.15 per share | $ 0.13 per share |
| 03/07/2001 | € 0.15 per share | $ 0.13 per share |
| 03/08/2001 | € 0.15 per share | $ 0.13 per share |
| 03/09/2001 | € 0.15 per share | $ 0.13 per share |
| 03/12/2001 | € 0.15 per share | $ 0.13 per share |
| 03/13/2001 | € 0.15 per share | $ 0.13 per share |
| 03/14/2001 | € 0.15 per share | $ 0.13 per share |
| 03/15/2001 | € 0.15 per share | $ 0.13 per share |
| 03/16/2001 | € 0.15 per share | $ 0.13 per share |
| 03/19/2001 | € 0.15 per share | $ 0.13 per share |
| 03/20/2001 | € 0.15 per share | $ 0.13 per share |
| 03/21/2001 | € 0.15 per share | $ 0.13 per share |
| 03/22/2001 | € 0.15 per share | $ 0.13 per share |
| 03/23/2001 | € 0.15 per share | $ 0.13 per share |
| 03/26/2001 | € 0.15 per share | $ 0.13 per share |
| 03/27/2001 | € 0.15 per share | $ 0.13 per share |
| 03/28/2001 | € 0.15 per share | $ 0.13 per share |
| 03/29/2001 | € 0.15 per share | $ 0.13 per share |
| 03/30/2001 | € 0.15 per share | $ 0.13 per share |
| 04/02/2001 | € 0.15 per share | $ 0.13 per share |
| 04/03/2001 | € 0.15 per share | $ 0.13 per share |
| 04/04/2001 | € 0.15 per share | $ 0.13 per share |
| 04/05/2001 | € 0.15 per share | $ 0.13 per share |
| 04/06/2001 | € 0.15 per share | $ 0.13 per share |
| 04/09/2001 | € 0.15 per share | $ 0.13 per share |
| 04/10/2001 | € 0.15 per share | $ 0.13 per share |
| 04/11/2001 | € 0.15 per share | $ 0.13 per share |
| 04/12/2001 | € 0.15 per share | $ 0.13 per share |
| 04/16/2001 | | $ 0.13 per share |
| 04/17/2001 | € 0.15 per share | $ 0.13 per share |

| Date | Amount of Inflation Per Ordinary Share | Amount of Inflation Per ADS |
|---|---|---|
| 04/18/2001 | € 0.15 per share | $ 0.13 per share |
| 04/19/2001 | € 0.15 per share | $ 0.13 per share |
| 04/20/2001 | € 0.15 per share | $ 0.13 per share |
| 04/23/2001 | € 0.15 per share | $ 0.13 per share |
| 04/24/2001 | € 1.20 per share | $ 1.03 per share |
| 04/25/2001 | € 1.20 per share | $ 1.03 per share |
| 04/26/2001 | € 1.20 per share | $ 1.03 per share |
| 04/27/2001 | € 1.20 per share | $ 1.03 per share |
| 04/30/2001 | € 1.20 per share | $ 1.03 per share |
| 05/01/2001 | | $ 1.03 per share |
| 05/02/2001 | € 1.20 per share | $ 1.03 per share |
| 05/03/2001 | € 1.20 per share | $ 1.03 per share |
| 05/04/2001 | € 1.20 per share | $ 1.03 per share |
| 05/07/2001 | € 1.20 per share | $ 1.03 per share |
| 05/08/2001 | € 1.20 per share | $ 1.03 per share |
| 05/09/2001 | € 1.20 per share | $ 1.03 per share |
| 05/10/2001 | € 1.20 per share | $ 1.03 per share |
| 05/11/2001 | € 1.20 per share | $ 1.03 per share |
| 05/14/2001 | € 1.20 per share | $ 1.03 per share |
| 05/15/2001 | € 1.20 per share | $ 1.03 per share |
| 05/16/2001 | € 1.20 per share | $ 1.03 per share |
| 05/17/2001 | € 1.20 per share | $ 1.03 per share |
| 05/18/2001 | € 1.20 per share | $ 1.03 per share |
| 05/21/2001 | € 1.20 per share | $ 1.03 per share |
| 05/22/2001 | € 1.20 per share | $ 1.03 per share |
| 05/23/2001 | € 1.20 per share | $ 1.03 per share |
| 05/24/2001 | € 1.20 per share | $ 1.03 per share |
| 05/25/2001 | € 1.20 per share | $ 1.03 per share |
| 05/28/2001 | € 1.20 per share | |
| 05/29/2001 | € 1.20 per share | $ 1.03 per share |
| 05/30/2001 | € 1.20 per share | $ 1.03 per share |
| 05/31/2001 | € 1.20 per share | $ 1.03 per share |
| 06/01/2001 | € 1.20 per share | $ 1.03 per share |
| 06/04/2001 | | $ 1.03 per share |
| 06/05/2001 | € 1.20 per share | $ 1.03 per share |
| 06/06/2001 | € 1.20 per share | $ 1.03 per share |
| 06/07/2001 | € 1.20 per share | $ 1.03 per share |
| 06/08/2001 | € 1.20 per share | $ 1.03 per share |
| 06/11/2001 | € 1.20 per share | $ 1.03 per share |
| 06/12/2001 | € 1.20 per share | $ 1.03 per share |
| 06/13/2001 | € 1.20 per share | $ 1.03 per share |
| 06/14/2001 | € 1.20 per share | $ 1.03 per share |
| 06/15/2001 | € 1.20 per share | $ 1.03 per share |
| 06/18/2001 | € 1.20 per share | $ 1.03 per share |

| Date | Amount of Inflation Per Ordinary Share | Amount of Inflation Per ADS |
|------|------|------|
| 06/19/2001 | € 1.20 per share | $ 1.07 per share |
| 06/20/2001 | € 1.20 per share | $ 1.07 per share |
| 06/21/2001 | € 1.20 per share | $ 1.07 per share |
| 06/22/2001 | € 1.20 per share | $ 1.03 per share |
| 06/25/2001 | € 1.20 per share | $ 1.07 per share |
| 06/26/2001 | € 1.20 per share | $ 1.07 per share |
| 06/27/2001 | € 1.20 per share | $ 1.07 per share |
| 06/28/2001 | € 1.20 per share | $ 1.07 per share |
| 06/29/2001 | € 1.20 per share | $ 1.07 per share |
| 07/02/2001 | € 1.20 per share | $ 1.07 per share |
| 07/03/2001 | € 1.20 per share | $ 1.07 per share |
| 07/04/2001 | € 1.20 per share | |
| 07/05/2001 | € 1.20 per share | $ 1.07 per share |
| 07/06/2001 | € 1.20 per share | $ 1.07 per share |
| 07/09/2001 | € 1.20 per share | $ 1.08 per share |
| 07/10/2001 | € 1.20 per share | $ 1.07 per share |
| 07/11/2001 | € 1.20 per share | $ 1.07 per share |
| 07/12/2001 | € 1.20 per share | $ 1.07 per share |
| 07/13/2001 | € 1.20 per share | $ 1.07 per share |
| 07/16/2001 | € 1.20 per share | $ 1.07 per share |
| 07/17/2001 | € 1.20 per share | $ 1.07 per share |
| 07/18/2001 | € 1.20 per share | $ 1.07 per share |
| 07/19/2001 | € 1.20 per share | $ 1.09 per share |
| 07/20/2001 | € 1.20 per share | $ 1.09 per share |
| 07/23/2001 | € 2.40 per share | $ 2.14 per share |
| 07/24/2001 | € 2.40 per share | $ 2.14 per share |
| 07/25/2001 | € 2.40 per share | $ 2.14 per share |
| 07/26/2001 | € 2.40 per share | $ 2.14 per share |
| 07/27/2001 | € 2.40 per share | $ 2.14 per share |
| 07/30/2001 | € 2.40 per share | $ 2.14 per share |
| 07/31/2001 | € 2.40 per share | $ 2.14 per share |
| 08/01/2001 | € 2.40 per share | $ 2.14 per share |
| 08/02/2001 | € 2.40 per share | $ 2.14 per share |
| 08/03/2001 | € 2.40 per share | $ 2.14 per share |
| 08/06/2001 | € 2.40 per share | $ 2.14 per share |
| 08/07/2001 | € 2.40 per share | $ 2.14 per share |
| 08/08/2001 | € 2.40 per share | $ 2.14 per share |
| 08/09/2001 | € 2.40 per share | $ 2.14 per share |
| 08/10/2001 | € 2.40 per share | $ 2.14 per share |
| 08/13/2001 | € 2.40 per share | $ 2.14 per share |
| 08/14/2001 | € 2.40 per share | $ 2.14 per share |
| 08/15/2001 | € 2.40 per share | $ 2.14 per share |
| 08/16/2001 | € 2.40 per share | $ 2.14 per share |
| 08/17/2001 | € 2.40 per share | $ 2.14 per share |

| Date | Amount of Inflation Per Ordinary Share | Amount of Inflation Per ADS |
|---|---|---|
| 08/20/2001 | € _2.40_ per share | $ _2.14_ per share |
| 08/21/2001 | € _2.40_ per share | $ _2.14_ per share |
| 08/22/2001 | € _2.40_ per share | $ _2.14_ per share |
| 08/23/2001 | € _2.40_ per share | $ _2.14_ per share |
| 08/24/2001 | € _2.40_ per share | $ _2.14_ per share |
| 08/27/2001 | € _2.40_ per share | $ _2.14_ per share |
| 08/28/2001 | € _2.40_ per share | $ _2.14_ per share |
| 08/29/2001 | € _2.40_ per share | $ _2.14_ per share |
| 08/30/2001 | € _2.40_ per share | $ _2.14_ per share |
| 08/31/2001 | € _2.40_ per share | $ _2.14_ per share |
| 09/03/2001 | € _2.40_ per share | |
| 09/04/2001 | € _2.40_ per share | $ _2.14_ per share |
| 09/05/2001 | € _2.40_ per share | $ _2.14_ per share |
| 09/06/2001 | € _2.40_ per share | $ _2.14_ per share |
| 09/07/2001 | € _2.40_ per share | $ _2.14_ per share |
| 09/10/2001 | € _2.40_ per share | $ _2.14_ per share |
| 09/11/2001 | € _0.00_ per share | |
| 09/12/2001 | € _0.00_ per share | |
| 09/13/2001 | € _0.00_ per share | |
| 09/14/2001 | € _0.00_ per share | |
| 09/17/2001 | € _0.00_ per share | $ _0_ per share |
| 09/18/2001 | € _0.00_ per share | $ _0_ per share |
| 09/19/2001 | € _0.00_ per share | $ _0_ per share |
| 09/20/2001 | € _0.00_ per share | $ _0_ per share |
| 09/21/2001 | € _0.00_ per share | $ _0_ per share |
| 09/24/2001 | € _0.00_ per share | $ _0_ per share |
| 09/25/2001 | € _0.00_ per share | $ _0_ per share |
| 09/26/2001 | € _0.00_ per share | $ _0_ per share |
| 09/27/2001 | € _0.00_ per share | $ _0_ per share |
| 09/28/2001 | € _0.00_ per share | $ _0_ per share |
| 10/01/2001 | € _2.40_ per share | $ _2.14_ per share |
| 10/02/2001 | € _2.40_ per share | $ _2.14_ per share |
| 10/03/2001 | € _2.40_ per share | $ _2.14_ per share |
| 10/04/2001 | € _2.40_ per share | $ _2.14_ per share |
| 10/05/2001 | € _2.40_ per share | $ _2.14_ per share |
| 10/08/2001 | € _2.40_ per share | $ _2.14_ per share |
| 10/09/2001 | € _2.40_ per share | $ _2.14_ per share |
| 10/10/2001 | € _2.40_ per share | $ _2.14_ per share |
| 10/11/2001 | € _2.40_ per share | $ _2.14_ per share |
| 10/12/2001 | € _2.40_ per share | $ _2.14_ per share |
| 10/15/2001 | € _2.40_ per share | $ _2.14_ per share |
| 10/16/2001 | € _2.40_ per share | $ _2.14_ per share |
| 10/17/2001 | € _2.40_ per share | $ _2.14_ per share |
| 10/18/2001 | € _2.40_ per share | $ _2.14_ per share |

| Date | Amount of Inflation Per Ordinary Share | Amount of Inflation Per ADS |
|---|---|---|
| 10/19/2001 | € 2.40 per share | $ 2.14 per share |
| 10/22/2001 | € 2.40 per share | $ 2.14 per share |
| 10/23/2001 | € 2.40 per share | $ 2.14 per share |
| 10/24/2001 | € 2.40 per share | $ 2.14 per share |
| 10/25/2001 | € 2.40 per share | $ 2.14 per share |
| 10/26/2001 | € 2.40 per share | $ 2.14 per share |
| 10/29/2001 | € 2.40 per share | $ 2.14 per share |
| 10/30/2001 | € 4.68 per share | $ 4.17 per share |
| 10/31/2001 | € 4.88 per share | $ 4.36 per share |
| 11/01/2001 | € 5.09 per share | $ 4.55 per share |
| 11/02/2001 | € 5.30 per share | $ 4.74 per share |
| 11/05/2001 | € 5.50 per share | $ 4.93 per share |
| 11/06/2001 | € 5.70 per share | $ 5.12 per share |
| 11/07/2001 | € 5.91 per share | $ 5.31 per share |
| 11/08/2001 | € 6.12 per share | $ 5.50 per share |
| 11/09/2001 | € 6.33 per share | $ 5.69 per share |
| 11/12/2001 | € 6.53 per share | $ 5.88 per share |
| 11/13/2001 | € 6.74 per share | $ 6.07 per share |
| 11/14/2001 | € 6.94 per share | $ 6.26 per share |
| 11/15/2001 | € 7.15 per share | $ 6.45 per share |
| 11/16/2001 | € 7.35 per share | $ 6.64 per share |
| 11/19/2001 | € 7.56 per share | $ 6.83 per share |
| 11/20/2001 | € 7.77 per share | $ 7.02 per share |
| 11/21/2001 | € 7.97 per share | $ 7.21 per share |
| 11/22/2001 | € 0.00 per share | |
| 11/23/2001 | € 8.38 per share | $ 7.39 per share |
| 11/26/2001 | € 8.59 per share | $ 7.58 per share |
| 11/27/2001 | € 8.79 per share | $ 7.77 per share |
| 11/28/2001 | € 9.00 per share | $ 7.96 per share |
| 11/29/2001 | € 9.20 per share | $ 8.15 per share |
| 11/30/2001 | € 9.41 per share | $ 8.34 per share |
| 12/03/2001 | € 9.62 per share | $ 8.53 per share |
| 12/04/2001 | € 9.82 per share | $ 8.72 per share |
| 12/05/2001 | € 10.00 per share | $ 8.91 per share |
| 12/06/2001 | € 10.00 per share | $ 9.10 per share |
| 12/07/2001 | € 10.00 per share | $ 9.29 per share |
| 12/10/2001 | € 10.04 per share | $ 9.48 per share |
| 12/11/2001 | € 10.85 per share | $ 9.67 per share |
| 12/12/2001 | € 11.00 per share | $ 9.86 per share |
| 12/13/2001 | € 11.00 per share | $ 10.00 per share |
| 12/14/2001 | € 11.00 per share | $ 10.00 per share |
| 12/17/2001 | € 11.00 per share | $ 10.00 per share |
| 12/18/2001 | € 11.00 per share | $ 10.00 per share |
| 12/19/2001 | € 11.00 per share | $ 10.00 per share |

| Date | Amount of Inflation Per Ordinary Share | Amount of Inflation Per ADS |
|---|---|---|
| 12/20/2001 | € 11.00 per share | $ 10.00 per share |
| 12/21/2001 | € 11.00 per share | $ 10.00 per share |
| 12/24/2001 | € 11.00 per share | $ 10.00 per share |
| 12/26/2001 | | $ 0.00 per share |
| 12/27/2001 | € 11.00 per share | $ 10.00 per share |
| 12/28/2001 | € 11.00 per share | $ 10.00 per share |
| 12/31/2001 | | $ 0.00 per share |
| 01/02/2002 | € 11.00 per share | $ 10.00 per share |
| 01/03/2002 | € 11.00 per share | $ 10.00 per share |
| 01/04/2002 | € 11.00 per share | $ 10.00 per share |
| 01/07/2002 | € 10.00 per share | $ 8.55 per share |
| 01/08/2002 | € 10.00 per share | $ 8.55 per share |
| 01/09/2002 | € 10.00 per share | $ 8.55 per share |
| 01/10/2002 | € 10.00 per share | $ 8.55 per share |
| 01/11/2002 | € 10.00 per share | $ 8.55 per share |
| 01/14/2002 | € 10.00 per share | $ 8.55 per share |
| 01/15/2002 | € 10.00 per share | $ 8.55 per share |
| 01/16/2002 | € 10.00 per share | $ 8.55 per share |
| 01/17/2002 | € 10.00 per share | $ 8.55 per share |
| 01/18/2002 | € 10.00 per share | $ 8.55 per share |
| 01/21/2002 | € 0.00 per share | |
| 01/22/2002 | € 10.00 per share | $ 8.55 per share |
| 01/23/2002 | € 10.00 per share | $ 8.55 per share |
| 01/24/2002 | € 10.00 per share | $ 8.55 per share |
| 01/25/2002 | € 10.00 per share | $ 8.55 per share |
| 01/28/2002 | € 10.00 per share | $ 8.55 per share |
| 01/29/2002 | € 10.00 per share | $ 8.55 per share |
| 01/30/2002 | € 10.00 per share | $ 8.55 per share |
| 01/31/2002 | € 10.00 per share | $ 8.55 per share |
| 02/01/2002 | € 10.00 per share | $ 8.55 per share |
| 02/04/2002 | € 10.00 per share | $ 8.55 per share |
| 02/05/2002 | € 10.00 per share | $ 8.55 per share |
| 02/06/2002 | € 10.00 per share | $ 8.55 per share |
| 02/07/2002 | € 10.00 per share | $ 8.55 per share |
| 02/08/2002 | € 10.00 per share | $ 8.55 per share |
| 02/11/2002 | € 10.00 per share | $ 8.55 per share |
| 02/12/2002 | € 10.00 per share | $ 8.55 per share |
| 02/13/2002 | € 10.00 per share | $ 8.55 per share |
| 02/14/2002 | € 10.00 per share | $ 8.55 per share |
| 02/15/2002 | € 10.00 per share | $ 8.55 per share |
| 02/18/2002 | € 0.00 per share | |
| 02/19/2002 | € 10.00 per share | $ 8.55 per share |
| 02/20/2002 | € 10.00 per share | $ 8.55 per share |
| 02/21/2002 | € 10.00 per share | $ 8.55 per share |

| Date | Amount of Inflation Per Ordinary Share | Amount of Inflation Per ADS |
|---|---|---|
| 02/22/2002 | € 10.00 per share | $ 8.55 per share |
| 02/25/2002 | € 10.00 per share | $ 8.55 per share |
| 02/26/2002 | € 10.00 per share | $ 8.55 per share |
| 02/27/2002 | € 10.00 per share | $ 8.55 per share |
| 02/28/2002 | € 10.00 per share | $ 8.55 per share |
| 03/01/2002 | € 10.00 per share | $ 8.55 per share |
| 03/04/2002 | € 10.00 per share | $ 8.55 per share |
| 03/05/2002 | € 10.00 per share | $ 8.55 per share |
| 03/06/2002 | € 10.00 per share | $ 8.55 per share |
| 03/07/2002 | € 10.00 per share | $ 8.55 per share |
| 03/08/2002 | € 10.00 per share | $ 8.55 per share |
| 03/11/2002 | € 10.00 per share | $ 8.55 per share |
| 03/12/2002 | € 10.00 per share | $ 8.55 per share |
| 03/13/2002 | € 10.00 per share | $ 8.55 per share |
| 03/14/2002 | € 10.00 per share | $ 8.55 per share |
| 03/15/2002 | € 10.00 per share | $ 8.55 per share |
| 03/18/2002 | € 10.00 per share | $ 8.55 per share |
| 03/19/2002 | € 10.00 per share | $ 8.55 per share |
| 03/20/2002 | € 10.00 per share | $ 8.55 per share |
| 03/21/2002 | € 10.00 per share | $ 8.55 per share |
| 03/22/2002 | € 10.00 per share | $ 8.55 per share |
| 03/25/2002 | € 10.00 per share | $ 8.55 per share |
| 03/26/2002 | € 10.00 per share | $ 8.55 per share |
| 03/27/2002 | € 10.00 per share | $ 8.55 per share |
| 03/28/2002 | € 10.00 per share | $ 8.55 per share |
| 04/01/2002 | | $ 0.00 per share |
| 04/02/2002 | € 10.00 per share | $ 8.55 per share |
| 04/03/2002 | € 10.00 per share | $ 8.55 per share |
| 04/04/2002 | € 10.00 per share | $ 8.55 per share |
| 04/05/2002 | € 10.00 per share | $ 8.55 per share |
| 04/08/2002 | € 10.00 per share | $ 8.55 per share |
| 04/09/2002 | € 10.00 per share | $ 8.55 per share |
| 04/10/2002 | € 10.00 per share | $ 8.55 per share |
| 04/11/2002 | € 10.00 per share | $ 8.55 per share |
| 04/12/2002 | € 10.00 per share | $ 8.55 per share |
| 04/15/2002 | € 10.00 per share | $ 8.55 per share |
| 04/16/2002 | € 10.00 per share | $ 8.55 per share |
| 04/17/2002 | € 10.00 per share | $ 8.55 per share |
| 04/18/2002 | € 10.00 per share | $ 8.55 per share |
| 04/19/2002 | € 10.00 per share | $ 8.55 per share |
| 04/22/2002 | € 10.00 per share | $ 8.55 per share |
| 04/23/2002 | € 10.00 per share | $ 8.55 per share |
| 04/24/2002 | € 10.00 per share | $ 8.55 per share |
| 04/25/2002 | € 10.00 per share | $ 8.55 per share |

| Date | Amount of Inflation Per Ordinary Share | Amount of Inflation Per ADS |
|---|---|---|
| 04/26/2002 | € 10.00 per share | $ 8.55 per share |
| 04/29/2002 | € 10.00 per share | $ 8.55 per share |
| 04/30/2002 | € 10.00 per share | $ 8.55 per share |
| 05/01/2002 | | $ 0.00 per share |
| 05/02/2002 | € 10.00 per share | $ 8.50 per share |
| 05/03/2002 | € 9.00 per share | $ 7.85 per share |
| 05/06/2002 | € 9.00 per share | $ 7.85 per share |
| 05/07/2002 | € 9.00 per share | $ 7.85 per share |
| 05/08/2002 | € 9.00 per share | $ 7.85 per share |
| 05/09/2002 | € 9.00 per share | $ 7.85 per share |
| 05/10/2002 | € 9.00 per share | $ 7.85 per share |
| 05/13/2002 | € 9.00 per share | $ 7.85 per share |
| 05/14/2002 | € 9.00 per share | $ 7.85 per share |
| 05/15/2002 | € 9.00 per share | $ 7.85 per share |
| 05/16/2002 | € 9.00 per share | $ 7.85 per share |
| 05/17/2002 | € 9.00 per share | $ 7.85 per share |
| 05/20/2002 | € 9.00 per share | $ 7.85 per share |
| 05/21/2002 | € 9.00 per share | $ 7.85 per share |
| 05/22/2002 | € 9.00 per share | $ 7.85 per share |
| 05/23/2002 | € 9.00 per share | $ 7.85 per share |
| 05/24/2002 | € 9.00 per share | $ 7.85 per share |
| 05/27/2002 | € 0.00 per share | |
| 05/28/2002 | € 9.10 per share | $ 7.85 per share |
| 05/29/2002 | € 9.00 per share | $ 7.85 per share |
| 05/30/2002 | € 9.00 per share | $ 7.85 per share |
| 05/31/2002 | € 9.00 per share | $ 7.85 per share |
| 06/03/2002 | € 9.00 per share | $ 7.85 per share |
| 06/04/2002 | € 9.00 per share | $ 7.85 per share |
| 06/05/2002 | € 9.00 per share | $ 7.85 per share |
| 06/06/2002 | € 9.00 per share | $ 7.85 per share |
| 06/07/2002 | € 9.00 per share | $ 7.85 per share |
| 06/10/2002 | € 9.00 per share | $ 7.85 per share |
| 06/11/2002 | € 9.00 per share | $ 7.85 per share |
| 06/12/2002 | € 9.00 per share | $ 7.85 per share |
| 06/13/2002 | € 9.00 per share | $ 7.85 per share |
| 06/14/2002 | € 9.00 per share | $ 7.85 per share |
| 06/17/2002 | € 9.00 per share | $ 7.85 per share |
| 06/18/2002 | € 9.00 per share | $ 7.85 per share |
| 06/19/2002 | € 9.00 per share | $ 7.85 per share |
| 06/20/2002 | € 9.00 per share | $ 7.85 per share |
| 06/21/2002 | € 8.00 per share | $ 6.96 per share |
| 06/24/2002 | € 6.21 per share | $ 5.17 per share |
| 06/25/2002 | € 6.21 per share | $ 5.17 per share |
| 06/26/2002 | € 7.00 per share | $ 5.63 per share |

| Date | Amount of Inflation Per Ordinary Share | Amount of Inflation Per ADS |
|---|---|---|
| 06/27/2002 | € 7.00 per share | $ 5.60 per share |
| 06/28/2002 | € 7.00 per share | $ 5.63 per share |
| 07/01/2002 | € 7.00 per share | $ 5.63 per share |
| 07/02/2002 | € 7.00 per share | $ 5.63 per share |
| 07/03/2002 | € 4.50 per share | $ 4.53 per share |
| 07/04/2002 | € 0.00 per share | |
| 07/05/2002 | € 2.92 per share | $ 2.49 per share |
| 07/08/2002 | € 2.92 per share | $ 2.49 per share |
| 07/09/2002 | € 2.92 per share | $ 2.49 per share |
| 07/10/2002 | € 2.47 per share | $ 2.07 per share |
| 07/11/2002 | € 2.47 per share | $ 2.07 per share |
| 07/12/2002 | € 2.47 per share | $ 2.07 per share |
| 07/15/2002 | € 1.75 per share | $ 2.07 per share |
| 07/16/2002 | € 1.75 per share | $ 2.07 per share |
| 07/17/2002 | € 1.75 per share | $ 2.07 per share |
| 07/18/2002 | € 1.75 per share | $ 2.07 per share |
| 07/19/2002 | € 1.75 per share | $ 2.07 per share |
| 07/22/2002 | € 1.75 per share | $ 2.07 per share |
| 07/23/2002 | € 1.75 per share | $ 2.07 per share |
| 07/24/2002 | € 1.75 per share | $ 2.07 per share |
| 07/25/2002 | € 1.75 per share | $ 2.07 per share |
| 07/26/2002 | € 1.75 per share | $ 2.07 per share |
| 07/29/2002 | € 1.75 per share | $ 2.07 per share |
| 07/30/2002 | € 1.75 per share | $ 2.07 per share |
| 07/31/2002 | € 1.75 per share | $ 2.07 per share |
| 08/01/2002 | € 1.75 per share | $ 2.07 per share |
| 08/02/2002 | € 1.75 per share | $ 2.07 per share |
| 08/05/2002 | € 1.75 per share | $ 2.07 per share |
| 08/06/2002 | € 1.75 per share | $ 2.07 per share |
| 08/07/2002 | € 1.75 per share | $ 2.07 per share |
| 08/08/2002 | € 1.75 per share | $ 2.07 per share |
| 08/09/2002 | € 1.75 per share | $ 2.07 per share |
| 08/12/2002 | € 1.75 per share | $ 2.07 per share |
| 08/13/2002 | € 1.75 per share | $ 2.07 per share |
| 08/14/2002 | € 0 per share | $ 0 per share |

**PLEASE PROCEED TO QUESTION NO. 59.**

**Question No. 59:**

If you checked "Knowingly" in Questions 1B through 57B for all alleged misstatements or omissions, please proceed to Question No. ~~59~~. (∅ · ⌐)

If you checked "Recklessly" in Question No. 1B through 57B for any of the alleged misstatements or omissions, you must determine what percentage of responsibility, if any, to assign to each defendant whom you found to have committed a Section 10(b) violation. In making this determination, you should consider the nature of the conduct of each person found to have caused or contributed to plaintiffs' loss, and the nature and extent of the causal relationship between each such person's conduct and plaintiffs' loss.

| | | |
|---|---|---|
| Vivendi | _100_ | % |
| Mr. Messier | _0_ | % |
| Mr. Hannezo | _0_ | % |
| TOTAL | **100** | % |

**PLEASE PROCEED TO QUESTION NO. 60.**

**Question No. 60:**

With respect to the Section 20(a) claim, have plaintiffs proven that defendant Mr. Messier is secondarily liable as a controlling person of Vivendi?

Yes _____     No ✔

**PLEASE PROCEED TO QUESTION NO. 61.**

**Question No. 61:**

With respect to the Section 20(a) claim, have plaintiffs proven that defendant Mr. Hannezo is secondarily liable as a controlling person of Vivendi?

Yes _____    No ✔_____

**PLEASE PROCEED TO THE NEXT PAGE.**

## VERIFICATION

Please sign your names on the lines below, fill in the date, and inform the Marshal that you have reached a verdict after all jurors have signed below.

1. _[signature]_
2. _[signature]_ Anne L. Armitage  #2
3. _[signature]_ Kawall Chammey  #3
4. _[signature]_ Miriam Warazi  #4
5. _[signature]_ Alberto Lopez  #5
6. _[signature]_ Wanda Clanch  #6
7. _[signature]_ Darlene Martin  #7
8. _[signature]_ Dennis Lee Miller  #8
9. _[signature]_ McTaylor Lamara  #9

Dated: January _29_, 2010.

72 of 72

# Tab 3:

*In re Apollo Group Inc. Securities Litig.*,
No. 2:04-cv-02147-JAT
(D. Ariz. Jan. 16, 2008),
Jury Instructions

X FILED          ___ LODGED
___ RECEIVED     ___ COPY

JAN 1 6 2008

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re Apollo Group Inc. Securities Litigation, | Master File No. CV 04-2147-PHX-JAT (LEAD)<br><br>CV 04-2204-PHX-JAT (Consolidated)<br>CV 04-2334-PHX-JAT (Consolidated)<br><br>**CLASS ACTION** |
| This Document Relates To: All Actions | **VERDICT FORM** |

We, the jury, duly empaneled and sworn in the above-entitled case, upon our oaths, do hereby find as follows:

**SECTION 10(b) CLAIM AGAINST APOLLO**

1. Did Apollo make an untrue statement of a material fact or omit a material fact necessary under the circumstances to keep the statements that were made from being misleading?

A)   The Press Release of Apollo Group, Inc., dated February 27, 2004:

Yes: X          No: ____

B)   The Analyst Conference on March 12, 2004:

Yes: X          No: ____

C)   The Form 10-Q dated April 13, 2004:

Yes: X          No: ____

D)   The Analyst Conference Call on June 24, 2004:

Yes: X          No: ____

E)   The Analyst Conference Call on August 25, 2004:

Yes: X          No: ____

F)   The Analyst Conference Call on September 7, 2004:

Yes: X          No: ____

If you answered all parts of Question 1 "no," leave Questions 2, 3, and 4 blank and proceed to Question 5. If you answered Question 1 "yes" as to any statement, answer Question 2 as to that statement. Do not answer Question 2 for any statement for which you answered Question 1 "no."

-1-

2.  For any statement as to which a "yes" answer was given in Question 1, did Apollo act knowingly or recklessly with respect to that misrepresentation or omission?

A)  The Press Release of Apollo Group, Inc., dated February 27, 2004:

Yes: X          No: _____

B)  The Analyst Conference on March 12, 2004:

Yes: X          No: _____

C)  The Form 10-Q dated April 13, 2004:

Yes: X          No: _____

D)  The Analyst Conference Call on June 24, 2004:

Yes: X          No: _____

E)  The Analyst Conference Call on August 25, 2004:

Yes: X          No: _____

F)  The Analyst Conference Call on September 7, 2004:

Yes: X          No: _____

If you answered Question 2 "no" as to all statements left over from Question 1, leave Questions 3 and 4 blank and proceed to Question 5.  If you answered Question 2 "yes" as to any statement, answer Question 3 as to that statement.  Do not answer Question 3 for any statement for which you answered Question 2 "no."

-2-

3.  For any statement as to which a "yes" answer was given in Question 2, more specifically, did Apollo act knowingly with respect to that misrepresentation or omission?

A)     The Press Release of Apollo Group, Inc., dated February 27, 2004:

Yes: X̸            No: _____

B)     The Analyst Conference on March 12, 2004:

Yes: X̸            No: _____

C)     The Form 10-Q dated April 13, 2004:

Yes: X̸            No: _____

D)     The Analyst Conference Call on June 24, 2004:

Yes: X̸            No: _____

E)     The Analyst Conference Call on August 25, 2004:

Yes: X̸            No: _____

F)     The Analyst Conference Call on September 7, 2004:

Yes: X̸            No: _____

Proceed to Question 4.

-3-

4.  For any statement as to which a "yes" answer was given in Question 2, did that misrepresentation or omission cause the plaintiff to suffer damages?  (By answering this question in the affirmative, you are finding that Apollo violated the securities laws.)

A)   The Press Release of Apollo Group, Inc., dated February 27, 2004:

Yes: X          No: ____

B)   The Analyst Conference on March 12, 2004:

Yes: X          No: ____

C)   The Form 10-Q dated April 13, 2004:

Yes: X          No: ____

D)   The Analyst Conference Call on June 24, 2004:

Yes: X          No: ____

E)   The Analyst Conference Call on August 25, 2004:

Yes: X          No: ____

F)   The Analyst Conference Call on September 7, 2004:

Yes: X          No: ____


Proceed to Question 5.

-4-

**SECTION 10(b) CLAIM AGAINST TODD NELSON**

5. Did Todd Nelson make an untrue statement of a material fact or omit a material fact necessary under the circumstances to keep the statements that were made from being misleading?

A)      The Press Release of Apollo Group, Inc., dated February 27, 2004:

      Yes: X        No: _____

B)      The Analyst Conference on March 12, 2004:

      Yes: X        No: _____

C)      The Form 10-Q dated April 13, 2004:

      Yes: X        No: _____

D)      The Analyst Conference Call on June 24, 2004:

      Yes: X        No: _____

E)      The Analyst Conference Call on August 25, 2004:

      Yes: X        No: _____

F)      The Analyst Conference Call on September 7, 2004

      Yes: X        No: _____

If you answered all parts of Question 5 "no," leave Questions 6, 7, and 8 blank and proceed to Question 9.  If you answered Question 5 "yes" as to any statement, answer Question 6 as to that statement.  Do not answer Question 6 for any statement for which you answered Question 5 "no."

6. For any statement as to which a "yes" answer was given in Question 5, did Todd Nelson act knowingly or recklessly with respect to that misrepresentation or omission?

A)     The Press Release of Apollo Group, Inc., dated February 27, 2004:

       Yes: X         No: ____

B)     The Analyst Conference on March 12, 2004:

       Yes: X         No: ____

C)     The Form 10-Q dated April 13, 2004:

       Yes: X         No: ____

D)     The Analyst Conference Call on June 24, 2004:

       Yes: X         No: ____

E)     The Analyst Conference Call on August 25, 2004:

       Yes: X         No: ____

F)     The Analyst Conference Call on September 7, 2004:

       Yes: X         No: ____

If you answered Question 6 "no" as to all statements left over from Question 5, leave Question 7 and 8 blank and proceed to Question 9. If you answered Question 6 "yes" as to any statement, answer Question 7 as to that statement. Do not answer Question 7 for any statement for which you answered Question 6 "no."

7. For any statement as to which a "yes" answer was given in Question 6, more specifically, did Todd Nelson act knowingly with respect to that misrepresentation or omission?

A)   The Press Release of Apollo Group, Inc., dated February 27, 2004:

Yes: X̲       No: ____

B)   The Analyst Conference on March 12, 2004:

Yes: X       No: ____

C)   The Form 10-Q dated April 13, 2004:

Yes: X       No: ____

D)   The Analyst Conference Call on June 24, 2004:

Yes: X       No: ____

E)   The Analyst Conference Call on August 25, 2004:

Yes: X       No: ____

F)   The Analyst Conference Call on September 7, 2004:

Yes: X       No: ____


Proceed to Question 8.

-7-

1    8.  For any statement as to which a "yes" answer was given in Question 6, did that

2    misrepresentation or omission cause the plaintiff to suffer damages?  (By answering this

3    question in the affirmative, you are finding that Todd Nelson violated the securities laws.)

4    A)    The Press Release of Apollo Group, Inc., dated February 27, 2004:

5         Yes: __X__         No: _____

6    B)    The Analyst Conference on March 12, 2004:

7         Yes: __X__         No: _____

8    C)    The Form 10-Q dated April 13, 2004:

9         Yes: __X__         No: _____

10   D)    The Analyst Conference Call on June 24, 2004:

11        Yes: __X__         No: _____

12   E)    The Analyst Conference Call on August 25, 2004:

13        Yes: __X__         No: _____

14   F)    The Analyst Conference Call on September 7, 2004:

15        Yes: __X__         No: _____

16

17   Proceed to Question 9.

18

19

20

21

22

23

24

25

26

27

28                                      -8-

**SECTION 10(b) CLAIM AGAINST KENDA GONZALES**

9. Did Kenda Gonzales make an untrue statement of a material fact or omit a material fact necessary under the circumstances to keep the statements that were made from being misleading?

A)   The Press Release of Apollo Group, Inc., dated February 27, 2004:

   Yes: ✗          No: ____

B)   The Form 10-Q dated April 13, 2004:

   Yes: ✗          No: ____


If you answered all parts of Question 9 "no," leave Questions 10, 11, and 12 blank and proceed to Question 13.  If you answered Question 9 "yes" as to any statement, answer Question 10 as to that statement.  Do not answer Question 10 for any statement for which you answered Question 9 "no."

10.  For any statement as to which a "yes" answer was given in Question 9, did Kenda Gonzales act knowingly or recklessly with respect to that misrepresentation or omission?

A)   The Press Release of Apollo Group, Inc., dated February 27, 2004:

Yes: X̶          No: ____

B)   The Form 10-Q dated April 13, 2004:

Yes: X̶          No: ____


If you answered Question 10 "no" as to all statements left over from Question 9, leave Questions 11 and 12 blank and proceed to Question 13.  If you answered Question 10 "yes" as to any statement, answer Question 11 as to that statement.  Do not answer Question 11 for any statement for which you answered Question 10 "no."

-10-

11. For any statement as to which a "yes" answer was given in Question 10, more specifically, did Kenda Gonzales act knowingly with respect to that misrepresentation or omission?

A)   The Press Release of Apollo Group, Inc., dated February 27, 2004:

Yes: X̶           No: _____

B)   The Form 10-Q dated April 13, 2004:

Yes: X̶           No: _____


Proceed to Question 12.

-11-

1    12.  For any statement as to which a "yes" answer was given in Question 10, did that

2   misrepresentation or omission cause the plaintiff to suffer damages?  (By answering this

3   question in the affirmative, you are finding that Kenda Gonzales violated the securities laws.)

4        A)      The Press Release of Apollo Group, Inc., dated February 27, 2004:

5                Yes: X          No: ____

6        B)      The Form 10-Q dated April 13, 2004:

7                Yes: X          No: ____

8

9   Proceed to Question 13.

-12-

**SECTION 20(a) CLAIM AGAINST TODD NELSON**

     **Answer Question 13 only if you answered Question 4 "yes."  If you answered "no" to Question 4 or left it blank, leave Questions 13 and 14 blank and proceed to Question 15.**

     13.  Did Todd Nelson possess, directly or indirectly, the actual power to direct or cause the direction of the management and policies of Apollo?

         Yes: ✗          No: _____

     Proceed to Question 14.

-13-

1        14.  Did the defendants prove by a preponderance of the evidence both that Todd

2    Nelson did not directly or indirectly induce Apollo's violation of the securities laws and that

3    he acted in good faith as that term is defined in the jury instructions?

4            Yes: _____        No: X

5

6            Proceed to Question 15.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                   -14-

1    **Answer Question 15 only if you answered Question 12 "yes." If you answered**
2    **"no" to Question 12 or left it blank, leave Questions 15 and 16 blank and proceed to**
3    **Question 17.**

5    15.  Did Todd Nelson possess, directly or indirectly, the actual power to direct Kenda
6    Gonzales?

7              Yes: _X_              No: ____

9    Proceed to Question 16.

-15-

1      16. Did the defendants prove by a preponderance of the evidence both that Todd

2  Nelson did not directly or indirectly induce Kenda Gonzales's violation of the securities laws

3  and that he acted in good faith as that term is defined in the jury instructions?

4        Yes: _____      No: _X_

5

6      Proceed to Question 17.

-16-

1    **Answer Question 17 only if you answered "yes" to Questions 4, 8, or 12.  If you**

2    **answered "no" to each of these questions or left them blank, sign and return the verdict**

3    **form without answering any further questions.**

4

5    17.  Specify the total amount of damages per share that the plaintiff suffered as a

6    result of the misrepresentation(s) or omission(s):

7        $ _5.55_ per share

8

9    Proceed to Question 18.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    -17-

1       18.  What is the percentage of responsibility for the plaintiff's loss that you assign to

2  each defendant whom you found in answers to Questions 4, 8, and/or 12 to have violated the

3  securities laws?   The total must add up to 100%.   In determining the percentage of

4  responsibility for each such defendant, you must consider: (1) the nature of the conduct of

5  each defendant found to have caused or contributed to the loss incurred by the plaintiff; and

6  (2) the nature and extent of the causal relationship between the conduct of each defendant

7  and the damages incurred by the plaintiff.

8                  Percentage

9  Apollo               _60_

10  Todd Nelson        _30_

11  Kenda Gonzales    _10_

12               = 100% Total

14      Sign and return this form.

25  _____9_____         _1/16/08_

26  (Presiding Juror Number)    (Date)

-18-

# Tab 4:

*Jaffe v. Household Int'l*, No. 02-cv-05893-RAG
(N.D. Ill. May 7, 2009),
Jury Instructions

Verdict Form

02 CV 5893

FILED
MAY 07 2009
RONALD A. GREENSPUN JUDGE
UNITED STATES DISTRICT COURT

| | **Question No. 1** | **Question No. 2** | **Question No. 3** |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked):** | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |

**Statement No. 1**

| | | | |
|---|---|---|---|
| Household | Yes ___ No X̲ | 2+ Delinquency/Re-Aging ___<br>Restatement ___ | Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___ |
| Gilmer | Yes ___ No X̲ | 2+ Delinquency/Re-Aging ___<br>Restatement ___ | Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___ |
| Schoenholz | Yes ___ No X̲ | 2+ Delinquency/Re-Aging ___<br>Restatement ___ | Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___ |
| Aldinger | Yes ___ No X̲ | 2+ Delinquency/Re-Aging ___<br>Restatement ___ | Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___ |

1

| | **Question No. 1** — Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | **Question No. 2** — If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked):** | **Question No. 3** — For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
|---|---|---|---|
| **Statement No. 2** | | | |
| Household | Yes ___ No _X_ | Predatory Lending ___ <br> 2+ Delinquency/Re-Aging ___ <br> Restatement ___ | Knowingly ___ Recklessly ___ <br> Knowingly ___ Recklessly ___ <br> Knowingly ___ Recklessly ___ |
| Gilmer | Yes ___ No _X_ | Predatory Lending ___ <br> 2+ Delinquency/Re-Aging ___ <br> Restatement ___ | Knowingly ___ Recklessly ___ <br> Knowingly ___ Recklessly ___ <br> Knowingly ___ Recklessly ___ |
| Schoenholz | Yes ___ No _X_ | Predatory Lending ___ <br> 2+ Delinquency/Re-Aging ___ <br> Restatement ___ | Knowingly ___ Recklessly ___ <br> Knowingly ___ Recklessly ___ <br> Knowingly ___ Recklessly ___ |
| Aldinger | Yes ___ No _X_ | Predatory Lending ___ <br> 2+ Delinquency/Re-Aging ___ <br> Restatement ___ | Knowingly ___ Recklessly ___ <br> Knowingly ___ Recklessly ___ <br> Knowingly ___ Recklessly ___ |

2

| | **Question No. 1** | **Question No. 2** | **Question No. 3** |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked):** | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |

**Statement No. 3**

| | | | |
|---|---|---|---|
| Household | Yes___ No _X_ | 2+ Delinquency/Re-Aging ___<br><br>Restatement ___ | Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___ |
| Gilmer | Yes___ No _X_ | 2+ Delinquency/Re-Aging ___<br><br>Restatement ___ | Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___ |
| Schoenholz | Yes___ No _X_ | 2+ Delinquency/Re-Aging ___<br><br>Restatement ___ | Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___ |
| Aldinger | Yes___ No _X_ | 2+ Delinquency/Re-Aging ___<br><br>Restatement ___ | Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___ |

3

| | **Question No. 1**<br>Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | **Question No. 2**<br>If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). (more than one line can be checked): | **Question No. 3**<br>For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly (choose one) in making the statement about the issue by placing an "X" on the appropriate line. |
|---|---|---|---|
| **Statement No. 4** | | | |
| Household | Yes ___ No _X_ | Predatory Lending ___<br>2+ Delinquency/Re-Aging ___<br>Restatement ___ | Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___ |
| Gilmer | Yes ___ No _X_ | Predatory Lending ___<br>2+ Delinquency/Re-Aging ___<br>Restatement ___ | Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___ |
| Schoenholz | Yes ___ No _X_ | Predatory Lending ___<br>2+ Delinquency/Re-Aging ___<br>Restatement ___ | Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___ |
| Aldinger | Yes ___ No _X_ | Predatory Lending ___<br>2+ Delinquency/Re-Aging ___<br>Restatement ___ | Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___ |

4

| | Question No. 1 | Question No. 2 | Question No. 3 |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). (more than one line can be checked): | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly (choose one) in making the statement about the issue by placing an "X" on the appropriate line. |
| **Statement No. 5** | | | |
| Household | Yes ___ No ✗ | 2+ Delinquency/Re-Aging ___ <br><br> Restatement ___ | Knowingly ___ Recklessly ___ <br><br> Knowingly ___ Recklessly ___ |
| Gilmer | Yes ___ No ✗ | 2+ Delinquency/Re-Aging ___ <br><br> Restatement ___ | Knowingly ___ Recklessly ___ <br><br> Knowingly ___ Recklessly ___ |
| Schoenholz | Yes ___ No ✗ | 2+ Delinquency/Re-Aging ___ <br><br> Restatement ___ | Knowingly ___ Recklessly ___ <br><br> Knowingly ___ Recklessly ___ |
| Aldinger | Yes ___ No ✗ | 2+ Delinquency/Re-Aging ___ <br><br> Restatement ___ | Knowingly ___ Recklessly ___ <br><br> Knowingly ___ Recklessly ___ |

| | Question No. 1 | Question No. 2 | Question No. 3 |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). (more than one line can be checked): | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly (choose one) in making the statement about the issue by placing an "X" on the appropriate line. |
| **Statement No. 6** | | | |
| Household | Yes ___ No _X_ | Predatory Lending ___ <br> 2+ Delinquency/Re-Aging ___ <br> Restatement ___ | Knowingly ___ Recklessly ___ <br> Knowingly ___ Recklessly ___ <br> Knowingly ___ Recklessly ___ |
| Gilmer | Yes ___ No _X_ | Predatory Lending ___ <br> 2+ Delinquency/Re-Aging ___ <br> Restatement ___ | Knowingly ___ Recklessly ___ <br> Knowingly ___ Recklessly ___ <br> Knowingly ___ Recklessly ___ |
| Schoenholz | Yes ___ No _X_ | Predatory Lending ___ <br> 2+ Delinquency/Re-Aging ___ <br> Restatement ___ | Knowingly ___ Recklessly ___ <br> Knowingly ___ Recklessly ___ <br> Knowingly ___ Recklessly ___ |
| Aldinger | Yes ___ No _X_ | Predatory Lending ___ <br> 2+ Delinquency/Re-Aging ___ <br> Restatement ___ | Knowingly ___ Recklessly ___ <br> Knowingly ___ Recklessly ___ <br> Knowingly ___ Recklessly ___ |

6

| | **Question No. 1**<br><br>Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | **Question No. 2**<br><br>If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked)**: | **Question No. 3**<br><br>For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
|---|---|---|---|
| **Statement No. 7** | | | |
| Household | Yes___ No_X_ | 2+ Delinquency/Re-Aging ___<br><br>Restatement ___ | Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___ |
| Gilmer | Yes___ No_X_ | 2+ Delinquency/Re-Aging ___<br><br>Restatement ___ | Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___ |
| Schoenholz | Yes___ No_X_ | 2+ Delinquency/Re-Aging ___<br><br>Restatement ___ | Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___ |
| Aldinger | Yes___ No_X_ | 2+ Delinquency/Re-Aging ___<br><br>Restatement ___ | Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___ |

7

| | **Question No. 1** | **Question No. 2** | **Question No. 3** |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked):** | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
| **Statement No. 8** | | | |
| Household | Yes ___ No X | Predatory Lending ___<br>2+ Delinquency/Re-Aging ___<br>Restatement ___ | Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___ |
| Gilmer | Yes ___ No X | Predatory Lending ___<br>2+ Delinquency/Re-Aging ___<br>Restatement ___ | Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___ |
| Schoenholz | Yes ___ No X | Predatory Lending ___<br>2+ Delinquency/Re-Aging ___<br>Restatement ___ | Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___ |
| Aldinger | Yes ___ No X | Predatory Lending ___<br>2+ Delinquency/Re-Aging ___<br>Restatement ___ | Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___ |

| | **Question No. 1** | **Question No. 2** | **Question No. 3** |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked)**: | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
| **Statement No. 9** | | | |
| Household | Yes____ No_X_ | 2+ Delinquency/Re-Aging ____ <br> Restatement ____ | Knowingly ____ Recklessly ____ <br> Knowingly ____ Recklessly ____ |
| Gilmer | Yes____ No_X_ | 2+ Delinquency/Re-Aging ____ <br> Restatement ____ | Knowingly ____ Recklessly ____ <br> Knowingly ____ Recklessly ____ |
| Schoenholz | Yes____ No_X_ | 2+ Delinquency/Re-Aging ____ <br> Restatement ____ | Knowingly ____ Recklessly ____ <br> Knowingly ____ Recklessly ____ |
| Aldinger | Yes____ No_X_ | 2+ Delinquency/Re-Aging ____ <br> Restatement ____ | Knowingly ____ Recklessly ____ <br> Knowingly ____ Recklessly ____ |

9

**Statement No. 10**

| | **Question No. 1**<br><br>Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | **Question No. 2**<br><br>If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked):** | **Question No. 3**<br><br>For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
|---|---|---|---|
| Household | Yes ___  No X | Predatory Lending ___<br><br>2+ Delinquency/Re-Aging ___<br><br>Restatement ___ | Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___ |
| Gilmer | Yes ___  No X | Predatory Lending ___<br><br>2+ Delinquency/Re-Aging ___<br><br>Restatement ___ | Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___ |
| Schoenholz | Yes ___  No X | Predatory Lending ___<br><br>2+ Delinquency/Re-Aging ___<br><br>Restatement ___ | Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___ |
| Aldinger | Yes ___  No X | Predatory Lending ___<br><br>2+ Delinquency/Re-Aging ___<br><br>Restatement ___ | Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___ |

10

| | **Question No. 1**<br><br>Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | **Question No. 2**<br><br>If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s) (**more than one line can be checked**): | **Question No. 3**<br><br>For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly (**choose one**) in making the statement about the issue by placing an "X" on the appropriate line. |
|---|---|---|---|
| **Statement No. 11** | | | |
| Household | Yes___ No _X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Gilmer | Yes___ No _X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Schoenholz | Yes___ No _X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Aldinger | Yes___ No _X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |

11

| | **Question No. 1**<br><br>Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | **Question No. 2**<br><br>If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked):** | **Question No. 3**<br><br>For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
|---|---|---|---|
| **Statement No. 12** | | | |
| Household | Yes ___ No ⓧ | 2+ Delinquency/Re-Aging ___<br><br>Restatement ___ | Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___ |
| Gilmer | Yes ___ No ⓧ | 2+ Delinquency/Re-Aging ___<br><br>Restatement ___ | Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___ |
| Schoenholz | Yes ___ No ⓧ | 2+ Delinquency/Re-Aging ___<br><br>Restatement ___ | Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___ |
| Aldinger | Yes ___ No ⓧ | 2+ Delinquency/Re-Aging ___<br><br>Restatement ___ | Knowingly ___ Recklessly ___<br><br>Knowingly ___ Recklessly ___ |

12

| | Question No. 1 | Question No. 2 | Question No. 3 |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked):** | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |

**Statement No. 13**

| | | | |
|---|---|---|---|
| Household | Yes ___ No X | Predatory Lending ___<br>2+ Delinquency/Re-Aging ___<br>Restatement ___ | Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___ |
| Gilmer | Yes ___ No X | Predatory Lending ___<br>2+ Delinquency/Re-Aging ___<br>Restatement ___ | Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___ |
| Schoenholz | Yes ___ No X | Predatory Lending ___<br>2+ Delinquency/Re-Aging ___<br>Restatement ___ | Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___ |
| Aldinger | Yes ___ No X | Predatory Lending ___<br>2+ Delinquency/Re-Aging ___<br>Restatement ___ | Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___<br>Knowingly ___ Recklessly ___ |

13

| | Question No. 1 | Question No. 2 | Question No. 3 |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). (more than one line can be checked): | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly (choose one) in making the statement about the issue by placing an "X" on the appropriate line. |
| **Statement No. 14** | | | |
| Household | Yes X  No ___ | Predatory Lending X | Knowingly X Recklessly ___ |
| Gilmer | Yes X  No ___ | Predatory Lending X | Knowingly ___ Recklessly X |
| Schoenholz | Yes ___ No X | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Aldinger | Yes X  No ___ | Predatory Lending X | Knowingly X Recklessly ___ |

14

|  | Question No. 1 | Question No. 2 | Question No. 3 |
|---|---|---|---|
|  | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). (more than one line can be checked): | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly (choose one) in making the statement about the issue by placing an "X" on the appropriate line. |

**Statement No. 15**

| | | | |
|---|---|---|---|
| Household | Yes **X** No ___ | Predatory Lending **X** <br> 2+ Delinquency/Re-Aging **X** <br> Restatement **X** | Knowingly ___ Recklessly **X** <br> Knowingly ___ Recklessly **X** <br> Knowingly ___ Recklessly **X** |
| Gilmer | Yes **X** No ___ | Predatory Lending **X** <br> 2+ Delinquency/Re-Aging **X** <br> Restatement **X** | Knowingly ___ Recklessly **X** <br> Knowingly ___ Recklessly **X** <br> Knowingly ___ Recklessly **X** |
| Schoenholz | Yes **X** No ___ | Predatory Lending **X** <br> 2+ Delinquency/Re-Aging **X** <br> Restatement **X** | Knowingly ___ Recklessly **X** <br> Knowingly ___ Recklessly **X** <br> Knowingly ___ Recklessly **X** |
| Aldinger | Yes **X** No ___ | Predatory Lending **X** <br> 2+ Delinquency/Re-Aging **X** <br> Restatement **X** | Knowingly ___ Recklessly **X** <br> Knowingly ___ Recklessly **X** <br> Knowingly ___ Recklessly **X** |

15

| | Question No. 1 | Question No. 2 | Question No. 3 |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). (**more than one line can be checked**): | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly (**choose one**) in making the statement about the issue by placing an "X" on the appropriate line. |

**Statement No. 16**

| | Question No. 1 | Question No. 2 | Question No. 3 |
|---|---|---|---|
| Household | Yes _X_ No ___ | Predatory Lending _X_<br>2+ Delinquency/Re-Aging _X_<br>Restatement _X_ | Knowingly ___ Recklessly _X_<br>Knowingly ___ Recklessly _X_<br>Knowingly ___ Recklessly _X_ |
| Gilmer | Yes _X_ No ___ | Predatory Lending _X_<br>2+ Delinquency/Re-Aging _X_<br>Restatement _X_ | Knowingly ___ Recklessly _X_<br>Knowingly ___ Recklessly _X_<br>Knowingly ___ Recklessly _X_ |
| Schoenholz | Yes _X_ No ___ | Predatory Lending _X_<br>2+ Delinquency/Re-Aging _X_<br>Restatement _X_ | Knowingly ___ Recklessly _X_<br>Knowingly ___ Recklessly _X_<br>Knowingly ___ Recklessly _X_ |
| Aldinger | Yes _X_ No ___ | Predatory Lending _X_<br>2+ Delinquency/Re-Aging _X_<br>Restatement _X_ | Knowingly ___ Recklessly _X_<br>Knowingly ___ Recklessly _X_<br>Knowingly ___ Recklessly _X_ |

16

| | **Question No. 1** | **Question No. 2** | **Question No. 3** |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked):** | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
| **Statement No. 17** | | | |
| Household | Yes X No ___ | 2+ Delinquency/Re-Aging X  Restatement X | Knowingly ___ Recklessly X  Knowingly ___ Recklessly X |
| Gilmer | Yes X No ___ | 2+ Delinquency/Re-Aging X  Restatement X | Knowingly ___ Recklessly X  Knowingly ___ Recklessly X |
| Schoenholz | Yes X No ___ | 2+ Delinquency/Re-Aging X  Restatement X | Knowingly ___ Recklessly X  Knowingly ___ Recklessly X |
| Aldinger | Yes X No ___ | 2+ Delinquency/Re-Aging X  Restatement X | Knowingly ___ Recklessly X  Knowingly ___ Recklessly X |

17

| | Question No. 1 | Question No. 2 | Question No. 3 |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked)**: | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
| **Statement No. 18** | | | |
| Household | Yes X  No ___ | Predatory Lending X<br>2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |
| Gilmer | Yes X  No ___ | Predatory Lending X<br>2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |
| Schoenholz | Yes X  No ___ | Predatory Lending X<br>2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |
| Aldinger | Yes X  No ___ | Predatory Lending X<br>2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |

18

| | **Question No. 1** | **Question No. 2** | **Question No. 3** |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked):** | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
| **Statement No. 19** | | | |
| Household | Yes____ No ☒ | Predatory Lending ____ | Knowingly ____ Recklessly ____ |
| Gilmer | Yes____ No ☒ | Predatory Lending ____ | Knowingly ____ Recklessly ____ |
| Schoentholz | Yes____ No ☒ | Predatory Lending ____ | Knowingly ____ Recklessly ____ |
| Aldinger | Yes____ No ☒ | Predatory Lending ____ | Knowingly ____ Recklessly ____ |

19

| | Question No. 1 | Question No. 2 | Question No. 3 |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked):** | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
| **Statement No. 20** | | | |
| Household | Yes [X] No ___ | 2+ Delinquency/Re-Aging [X]  Restatement [X] | Knowingly ___ Recklessly [X]  Knowingly ___ Recklessly [X] |
| Gilmer | Yes [X] No ___ | 2+ Delinquency/Re-Aging [X]  Restatement [X] | Knowingly ___ Recklessly [X]  Knowingly ___ Recklessly [X] |
| Schoentholz | Yes [X] No ___ | 2+ Delinquency/Re-Aging [X]  Restatement [X] | Knowingly ___ Recklessly [X]  Knowingly ___ Recklessly [X] |
| Aldinger | Yes [X] No ___ | 2+ Delinquency/Re-Aging [X]  Restatement [X] | Knowingly ___ Recklessly [X]  Knowingly ___ Recklessly [X] |

20

| | **Question No. 1** | **Question No. 2** | **Question No. 3** |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked)**: | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |

**Statement No. 21**

| | Question No. 1 | Question No. 2 | Question No. 3 |
|---|---|---|---|
| Household | Yes X  No ___ | Predatory Lending X<br>2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |
| Gilmer | Yes X  No ___ | Predatory Lending X<br>2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |
| Schoenholz | Yes X  No ___ | Predatory Lending X<br>2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |
| Aldinger | Yes X  No ___ | Predatory Lending X<br>2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |

21

**Question No. 1**

Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A?

**Question No. 2**

If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked)**:

**Question No. 3**

For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line.

**Statement No. 22**

| Statement | Question No. 1 | Question No. 2 | Question No. 3 |
|---|---|---|---|
| Household | Yes X No | 2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |
| Gilmer | Yes X No | 2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |
| Schoenholz | Yes X No | 2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |
| Aldinger | Yes X No | 2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |

22

| | **Question No. 1** Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | **Question No. 2** If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked)**: | **Question No. 3** For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
|---|---|---|---|
| **Statement No. 23** | | | |
| Household | Yes X̲ No ___ | 2+ Delinquency/Re-Aging X̲ | Knowingly ___ Recklessly X̲ |
| Gilmer | Yes X̲ No ___ | 2+ Delinquency/Re-Aging X̲ | Knowingly ___ Recklessly X̲ |
| Schoenholz | Yes X̲ No ___ | 2+ Delinquency/Re-Aging X̲ | Knowingly ___ Recklessly X̲ |
| Aldinger | Yes X̲ No ___ | 2+ Delinquency/Re-Aging X̲ | Knowingly ___ Recklessly X̲ |

23

| | **Question No. 1** | **Question No. 2** | **Question No. 3** |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked):** | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |

**Statement No. 24**

| | | | |
|---|---|---|---|
| Household | Yes _X_ No ___ | Predatory Lending _X_<br>2+ Delinquency/Re-Aging _X_<br>Restatement _X_ | Knowingly ___ Recklessly _X_<br>Knowingly ___ Recklessly _X_<br>Knowingly ___ Recklessly _X_ |
| Gilmer | Yes _X_ No ___ | Predatory Lending _X_<br>2+ Delinquency/Re-Aging _X_<br>Restatement _X_ | Knowingly ___ Recklessly _X_<br>Knowingly ___ Recklessly _X_<br>Knowingly ___ Recklessly _X_ |
| Schoenholz | Yes _X_ No ___ | Predatory Lending _X_<br>2+ Delinquency/Re-Aging _X_<br>Restatement _X_ | Knowingly ___ Recklessly _X_<br>Knowingly ___ Recklessly _X_<br>Knowingly ___ Recklessly _X_ |
| Aldinger | Yes _X_ No ___ | Predatory Lending _X_<br>2+ Delinquency/Re-Aging _X_<br>Restatement _X_ | Knowingly ___ Recklessly _X_<br>Knowingly ___ Recklessly _X_<br>Knowingly ___ Recklessly _X_ |

24

| | **Question No. 1**<br><br>Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | **Question No. 2**<br><br>If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked):** | **Question No. 3**<br><br>For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
|---|---|---|---|
| **Statement No. 25** | | | |
| Household | Yes___ No_X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Gilmer | Yes___ No_X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Schoenholz | Yes___ No_X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Aldinger | Yes___ No_X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |

25

| | **Question No. 1**<br><br>Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | **Question No. 2**<br><br>If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked)**: | **Question No. 3**<br><br>For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
|---|---|---|---|
| **Statement No. 26** | | | |
| Household | Yes___ No _X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Gilmer | Yes___ No _X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Schoenholz | Yes___ No _X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Aldinger | Yes___ No _X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |

26

| | Question No. 1 | Question No. 2 | Question No. 3 |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). (more than one line can be checked): | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly (choose one) in making the statement about the issue by placing an "X" on the appropriate line. |

**Statement No. 27**

| | Question No. 1 | Question No. 2 | Question No. 3 |
|---|---|---|---|
| Household | Yes X No ___ | Predatory Lending X<br>2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |
| Gilmer | Yes X No ___ | Predatory Lending X<br>2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |
| Schoenholz | Yes X No ___ | Predatory Lending X<br>2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |
| Aldinger | Yes X No ___ | Predatory Lending X<br>2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |

27

| | **Question No. 1** | **Question No. 2** | **Question No. 3** |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked):** | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |

**Statement No. 28**

| | | | |
|---|---|---|---|
| Household | Yes _X_ No ___ | 2+ Delinquency/Re-Aging _X_ | Knowingly ___ Recklessly _X_ |
| Gilmer | Yes _X_ No ___ | 2+ Delinquency/Re-Aging _X_ | Knowingly ___ Recklessly _X_ |
| Schoenholz | Yes _X_ No ___ | 2+ Delinquency/Re-Aging _X_ | Knowingly ___ Recklessly _X_ |
| Aldinger | Yes _X_ No ___ | 2+ Delinquency/Re-Aging _X_ | Knowingly ___ Recklessly _X_ |

28

| | **Question No. 1** | **Question No. 2** | **Question No. 3** |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked)**: | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |

**Statement No. 29**

| | | | |
|---|---|---|---|
| Household | Yes X  No ___ | Predatory Lending X<br>2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |
| Gilmer | Yes X  No ___ | Predatory Lending X<br>2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |
| Schoenholz | Yes X  No ___ | Predatory Lending X<br>2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |
| Aldinger | Yes X  No ___ | Predatory Lending X<br>2+ Delinquency/Re-Aging X<br>Restatement X | Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X<br>Knowingly ___ Recklessly X |

29

| | **Question No. 1** | **Question No. 2** | **Question No. 3** |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked)**: | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
| **Statement No. 30** | | | |
| Household | Yes ___ No ⨉ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Gilmer | Yes ___ No ⨉ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Schoenholz | Yes ___ No ⨉ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Aldinger | Yes ___ No ⨉ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |

30

| | **Question No. 1** | **Question No. 2** | **Question No. 3** |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). (**more than one line can be checked**): | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly (**choose one**) in making the statement about the issue by placing an "X" on the appropriate line. |

**Statement No. 31**

| | | | |
|---|---|---|---|
| Household | Yes___ No_X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Gilmer | Yes___ No_X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Schoenholz | Yes___ No_X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Aldinger | Yes___ No_X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |

31

**Statement No. 32**

| | Question No. 1 | Question No. 2 | Question No. 3 |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked):** | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
| Household | Yes X   No ___ | 2+ Delinquency/Re-Aging X  Restatement X | Knowingly ___ Recklessly X  Knowingly ___ Recklessly X |
| Gilmer | Yes X   No ___ | 2+ Delinquency/Re-Aging X  Restatement X | Knowingly ___ Recklessly X  Knowingly ___ Recklessly X |
| Schoenholz | Yes X   No ___ | 2+ Delinquency/Re-Aging X  Restatement X | Knowingly ___ Recklessly X  Knowingly ___ Recklessly X |
| Aldinger | Yes X   No ___ | 2+ Delinquency/Re-Aging X  Restatement X | Knowingly ___ Recklessly X  Knowingly ___ Recklessly X |

32

| | **Question No. 1** | **Question No. 2** | **Question No. 3** |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked)**: | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
| **Statement No. 33** | | | |
| Household | Yes___ No_X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Gilmer | Yes___ No_X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Schoenholz | Yes___ No_X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Aldinger | Yes___ No_X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |

33

| | Question No. 1 | Question No. 2 | Question No. 3 |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). (more than one line can be checked): | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly (choose one) in making the statement about the issue by placing an "X" on the appropriate line. |

**Statement No. 34**

| | | | |
|---|---|---|---|
| Household | Yes___ No_X__ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Gilmer | Yes___ No_X__ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Schoenholz | Yes___ No_X__ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Aldinger | Yes___ No_X__ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |

34

| | **Question No. 1** | **Question No. 2** | **Question No. 3** |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked)**: | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
| **Statement No. 35** | | | |
| Household | Yes ___ No ✗ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Gilmer | Yes ___ No ✗ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Schoenholz | Yes ___ No ✗ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Aldinger | Yes ___ No ✗ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |

35

| | Question No. 1 | Question No. 2 | Question No. 3 |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked):** | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
| **Statement No. 36** | | | |
| Household | Yes _X_ No ___ | Predatory Lending _X_ <br> 2+ Delinquency/Re-Aging _X_ <br> Restatement _X_ | Knowingly ___ Recklessly _X_ <br> Knowingly ___ Recklessly _X_ <br> Knowingly ___ Recklessly _X_ |
| Gilmer | Yes _X_ No ___ | Predatory Lending _X_ <br> 2+ Delinquency/Re-Aging _X_ <br> Restatement _X_ | Knowingly ___ Recklessly _X_ <br> Knowingly ___ Recklessly _X_ <br> Knowingly ___ Recklessly _X_ |
| Schoenholz | Yes _X_ No ___ | Predatory Lending _X_ <br> 2+ Delinquency/Re-Aging _X_ <br> Restatement _X_ | Knowingly ___ Recklessly _X_ <br> Knowingly ___ Recklessly _X_ <br> Knowingly ___ Recklessly _X_ |
| Aldinger | Yes _X_ No ___ | Predatory Lending _X_ <br> 2+ Delinquency/Re-Aging _X_ <br> Restatement _X_ | Knowingly ___ Recklessly _X_ <br> Knowingly ___ Recklessly _X_ <br> Knowingly ___ Recklessly _X_ |

| **Question No. 1** | **Question No. 2** | **Question No. 3** |
|---|---|---|
| Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). (more than one line can be checked): | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly (choose one) in making the statement about the issue by placing an "X" on the appropriate line. |

**Statement No. 37**

| | | |
|---|---|---|
| Household | Yes X No ___ | Predatory Lending X | Knowingly ___ Recklessly X |
| Gilmer | Yes X No ___ | Predatory Lending X | Knowingly ___ Recklessly X |
| Schoenholz | Yes X No ___ | Predatory Lending X | Knowingly ___ Recklessly X |
| Aldinger | Yes X No ___ | Predatory Lending X | Knowingly ___ Recklessly X |

37

| | **Question No. 1** | **Question No. 2** | **Question No. 3** |
|---|---|---|---|
| | Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked):** | For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |

**Statement No. 38**

| | | | |
|---|---|---|---|
| Household | Yes X No ___ | 2+ Delinquency/Re-Aging X<br><br>Restatement X | Knowingly ___ Recklessly X<br><br>Knowingly ___ Recklessly X |
| Gilmer | Yes X No ___ | 2+ Delinquency/Re-Aging X<br><br>Restatement X | Knowingly ___ Recklessly X<br><br>Knowingly ___ Recklessly X |
| Schoenholz | Yes X No ___ | 2+ Delinquency/Re-Aging X<br><br>Restatement X | Knowingly ___ Recklessly X<br><br>Knowingly ___ Recklessly X |
| Aldinger | Yes X No ___ | 2+ Delinquency/Re-Aging X<br><br>Restatement X | Knowingly ___ Recklessly X<br><br>Knowingly ___ Recklessly X |

38

|  | **Question No. 1**<br><br>Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | **Question No. 2**<br><br>If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked):** | **Question No. 3**<br><br>For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
|---|---|---|---|
| **Statement No. 39** | | | |
| Household | Yes___ No _X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Gilmer | Yes___ No _X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Schoenholz | Yes___ No _X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Aldinger | Yes___ No _X_ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |

| | **Question No. 1** Have Plaintiffs prevailed on their 10(b)/Rule 10b-5 claim with regard to any of the statements set forth in Table A? | **Question No. 2** If you answered "yes" for any of the statements in Question No. 1, identify the issue or issues that the statement misrepresented by placing an "X" on the appropriate line(s). **(more than one line can be checked):** | **Question No. 3** For each issue identified in Question No. 2, indicate whether the defendant acted knowingly or recklessly **(choose one)** in making the statement about the issue by placing an "X" on the appropriate line. |
|---|---|---|---|
| **Statement No. 40** | | | |
| Household | Yes___ No $\times$ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Gilmer | Yes___ No $\times$ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Schoenholz | Yes___ No $\times$ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |
| Aldinger | Yes___ No $\times$ | Predatory Lending ___ | Knowingly ___ Recklessly ___ |

40

If you answered "no" for **all** of the statements in Question No. 1, you have finished with the Verdict Form. Please turn to the last page, sign and date the Verdict Form and inform the Court that you have finished.

If you answered "yes" for **any** statement in Question No. 1, please proceed to Question No. 4.

## Question No. 4

Determine which, if any, of plaintiffs' proposed damages models reasonably estimates plaintiffs' damages **(choose only one option below):**

Neither of plaintiffs' proposed damages models reasonably estimates plaintiffs' damages ____

Leakage Model (Plaintiffs' Ex. 1395) reasonably estimates plaintiffs' damages __X__

Specific Disclosures Model (Plaintiffs' Ex. 1397) reasonably estimates plaintiffs' damages ____

If you determine that neither of the proposed damages models reasonably estimates plaintiffs' damages, then you have finished with the Verdict Form. Please turn to the last page, sign and date the Verdict Form and inform the Court that you have finished.

Otherwise, write the amount of loss per share, if any, that, according to the model you have chosen, any defendant's conduct caused plaintiffs to suffer on each of the dates set forth in Table B. (If no loss was caused on any date, write "none" or "0.") **You may use only one model – the one you have chosen -- to fill out Table B.**

Then proceed to Question No. 5

## Question No. 5

If you checked "Knowingly" in Question No. 3 for all 40 alleged false or misleading statements, please proceed to Question No. 6.

If you checked "Recklessly" in Question No. 3 for any of the 40 alleged false or misleading statements, you must determine what percentage of responsibility, if any, for any loss plaintiffs suffered is due to the conduct of Defendants Household, William Aldinger, David Schoenholz, and Gary Gilmer. In making this determination, you should consider the nature of the conduct of each person found to have caused or contributed to plaintiffs' loss and the nature and extent of the causal relationship between each such person's conduct and plaintiffs' loss.

| | |
|---|---|
| Household | 55 % |
| William Aldinger | 20 % |
| David Schoenholz | 15 % |
| Gary Gilmer | 10 % |
| TOTAL | (This must equal 100%) |

Please proceed to Question No. 6.

42

## Question No. 6

With respect to the Section 20(a) claim, have plaintiffs proved that Defendant William Aldinger is a controlling person as to:

Household:          Yes ✗     No ___

David Schoenholz:   Yes ✗     No ___

Gary Gilmer:        Yes ✗     No ___

Please proceed to Question No. 7.

## Question No. 7

With respect to the Section 20(a) claim, have plaintiffs proved that Defendant David Schoenholz is a controlling person as to:

Household:          Yes ✗     No ___

William Aldinger:   Yes ✗     No ___

Gary Gilmer:        Yes ✗     No ___

Please proceed to Question No. 8.

## Question No. 8

With respect to the Section 20(a) claim, have plaintiffs proved that Defendant Gary Gilmer is a controlling person as to:

Household:          Yes ___   No ✗

William Aldinger:   Yes ___   No ✗

David Schoenholz:   Yes ___   No ✗

43

TABLE A
ALLEGED FALSE OR MISLEADING
STATEMENTS

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 1. | 08/16/1999 | Household 10-Q<br><br>Defendants' Exhibit 854 | Household 10-Q for quarter ending 6/30/99. Household reported net income of $326.9 million for the quarter ended June 30, 1999 and EPS of $0.67 [HHT 0015884]:<br><br>Delinquency<br>Two-Months-and-Over Contractual Managed Delinquency (as a percent of managed consumer receivables):<br><br>                    6/30/99  3/31/99  12/31/98  9/30/98  6/30/98<br>First mortgage   12.72%  10.91%  14.90%  11.80%  11.07%<br>Home equity      3.29    3.54    3.67    3.73    3.55<br>Auto finance     1.87    1.74    2.29    2.05    1.67<br>MasterCard/Visa  3.11    3.61    3.75    3.73    3.30<br>Private label     6.62    6.37    6.20    6.55    6.10<br>Other unsecured  8.17    7.84    7.94    8.03    7.82<br>Total        4.72%  4.81%  4.90%  4.96%  4.55%<br>            [HHT 0015902]<br><br>        *    *    *<br><br>"Owned consumer two-months-and-over contractual delinquency as a percent of owned consumer receivables was 4.96 percent, compared with 5.04 percent at March 31, 1999 and 4.89 percent at June 30, 1998. The annualized total consumer owned chargeoff ratio in the second quarter of 1999 was 3.54 percent, compared with 3.92 percent in the prior quarter and 3.69 percent in the year-ago quarter. Managed consumer two-months-and-over contractual delinquency ("delinquency") as a percent of managed consumer receivables was 4.72 percent, compared with 4.81 percent at March 31, 1999 and 4.65 percent at June 30, 1998. The annualized total consumer managed chargeoff ratio in the second quarter of 1999 was 4.10 percent, compared with 4.37 percent in the prior quarter and 4.26 percent in the year-ago quarter." [HHT0015897] |

1

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 2. | 10/19/1999 | Household Press Release<br><br>Plaintiffs' Exhibit 506 | October 19, 1999 Household Press Release entitled "Household International Reports Highest Quarterly Earnings in Company's History": Household "reported that third quarter net income rose 26 percent to a record $399.9 million, compared with $318.0 million a year ago. Earnings per share increased 32 percent to a record $.83, from $.63 a year ago." [HHS 02914429]<br><br>* * *<br><br>"Our quarter reflects excellent performance in all of our businesses, with the key drivers being accelerating internal receivable and revenue growth." [HHS 02914429]<br><br>* * *<br><br>"Credit Quality and Loss Reserves<br>Credit quality remained stable in the quarter and improved from a year ago. The annualized managed net chargeoff ratio for the third quarter was 4.09 percent, compared with 4.10 percent in the second quarter and 4.33 percent in the year-ago quarter. The managed delinquency ratio (60+ days) was 4.89 percent at September 30, compared with 4.72 percent at June 30 and 4.96 percent a year ago." [HHS 02914430] |
| 3. | 11/12/1999 | Household 10-Q<br><br>Plaintiffs' Exhibit 736 | Household 10-Q for quarter ending 9/30/99: Household reported net income of $399.9 million for the quarter ended September 30, 1999 and EPS of $0.84: [HHS 03138203]<br><br>"Owned consumer two-months-and-over contractual delinquency as a percent of owned consumer receivables was 5.24 percent at September 30, 1999, compared with 4.96 percent at June 30, 1999 and 5.23 percent at September 30, 1998. The annualized total consumer owned chargeoff ratio was 3.63 percent in the third quarter of 1999, compared with 3.54 percent in the prior quarter and 3.79 percent in the year-ago quarter.<br><br>Managed consumer two-months-and-over contractual delinquency as a percent of managed consumer receivables was 4.89 percent at September 30, 1999, compared with 4.72 percent at June 30, 1999 and 4.96 percent at September 30, 1998. The annualized total consumer managed chargeoff ratio was 4.09 percent in the third quarter of 1999, compared with 4.10 percent in the prior quarter and 4.33 percent in the year-ago quarter." [HHS 03138217] |

2

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| | | | Delinquency<br>Two-Months-and-Over Contractual Managed Delinquency (as a percent of managed consumer receivables):<br><br>                  9/30/99  6/30/99  3/31/99  12/31/98  9/30/98<br>First mortgage    12.56%  12.72%  10.91%  14.90%  11.80%<br>Home equity       3.46    3.29    3.54    3.67    3.73<br>Auto finance      2.26    1.87    1.74    2.29    2.05<br>MasterCard/Visa   3.10    3.11    3.61    3.75    3.73<br>Private label      6.66    6.62    6.37    6.20    6.55<br>Other unsecured   8.57    8.17    7.84    7.94    8.03<br>Total          4.89%  4.72%  4.81%  4.90%  4.96%<br>[HHS 03138224]<br><br>"Credit quality remained relatively stable in the quarter and improved from a year ago. The modest increase in managed delinquency as a percent of managed consumer receivables from the prior quarter was due to the seasoning of our Beneficial home equity and other unsecured products." [HHS 03138224] |
| 4. | 01/19/2000 | Household Press Release<br><br>Plaintiffs' Exhibit 746 | January 19, 2000 Household Press Release entitled "Household International Reports Best Quarter and Year in Its History". Household "reported that fourth quarter earnings per share increased 30 percent to a record $.92 from $.71 a year ago. Fourth quarter net income rose 25 percent to a record $438.8 million, compared with $349.9 million a year ago. For the full year, Household reported record earnings per share of $3.07, which was 33 percent over 1998 operating earnings per share. Net income totaled $1.5 billion, or 29 percent above the prior year's operating net income." [HHS 03148802]<br><br>"We are very pleased to report another record quarter, the culmination of an absolutely outstanding year for Household. Growth and profitability in the quarter were excellent and exceeded our expectations. Revenues were particularly strong.... Our record earnings reflect an outstanding year in our consumer finance business, a dramatic turnaround in our MasterCard/Visa business, and strong results in all of our other businesses. We are particularly pleased with excellent receivable |

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| | | | growth in 1999, particularly in our branches, while fully realizing all of the acquisition synergies of the Beneficial merger." [HHS 03148802]<br><br>"Credit Quality and Loss Reserves<br><br>Credit quality improved from both the third quarter and a year ago. The annualized net chargeoff ratio for the fourth quarter fell 13 basis points to 3.96 percent, the lowest level since 1997. The chargeoff ratio was 4.09 percent in the third quarter and 4.39 percent in the year-ago quarter. The managed delinquency ratio (60+days) improved 23 basis points to 4.66 percent at December 31, compared with 4.89 percent at September 30 and 4.90 percent a year ago." [HHS 03148804] |
| 5. | 03/28/2000 | Household FY99 Report on Form 10-K<br><br>Plaintiffs' Exhibit 1462 | Household FY99 Report on Form 10-K filed with the SEC on March 28, 2000 Household reported net income of 1.486 billion and E.P.S. of $3.10 [p.127]:<br><br>*  *  *<br><br>"Delinquency and Chargeoffs.   Our delinquency and net chargeoff ratios reflect, among other factors, the quality of receivables, the average age of our loans, the success of our collection efforts and general economic conditions. . . . .<br><br>We track delinquency and chargeoff levels on an owned and a managed basis.  We apply the same credit and portfolio management procedures to both our owned and off-balance sheet portfolios. Our focus is to use risk-based pricing and effective collection efforts for each loan.  We have a process which we believe gives us a reasonable basis for predicting the asset quality of new accounts.  This process is based on our experience with numerous marketing, credit and risk management tests.  We also believe that our frequent and early contact with delinquent customers is helpful in managing net credit losses."  [p.98]<br><br>*  *  *<br><br>Managed Two-Month-and-Over Contractual Delinquency Ratios [p.115]<br><br>|                | 1999  | 1998  | 1997  | 1996  | 1995  |<br>|----------------|-------|-------|-------|-------|-------|<br>| Home equity    | 3.27% | 3.67% | 3.69% | 3.04% | 2.76% |<br>| Auto finance1/ | 2.43  | 2.29  | 2.09  | –     | –     |<br>| MasterCard/Visa| 2.78  | 3.75  | 3.10  | 2.73  | 2.19  |<br>| Private label  | 5.97  | 6.20  | 5.81  | 4.60  | 3.93  |<br>| Other unsecured| 8.81  | 7.94  | 7.81  | 6.21  | 5.68  |<br>| Total consumer | 4.66% | 4.90% | 4.64% | 3.92% | 3.36% | |

4

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| | | | **Ratio of Net Chargeoffs to Average Managed Receivables for the Year** |

| | 1999 | 1998 | 1997 | 1996 | 1995 |
|---|---|---|---|---|---|
| Home equity | 0.58% | 0.63% | 0.64% | 0.60% | 0.64% |
| Auto finance /1/ | 4.96 | 5.39 | 4.60 | — | — |
| MasterCard/Visa | 6.66 | 5.95 | 5.55 | 4.54 | 4.12 |
| Private label | 5.65 | 5.65 | 4.62 | 3.42 | 3.75 |
| Other unsecured | 6.52 | 6.97 | 5.48 | 4.29 | 3.60 |
| Total Consumer loan products | 4.13 | 4.29 | 3.84 | 2.96 | 2.51 |
| Commercial | 0.93 | 0.52 | 1.66 | 0.92 | 2.10 |
| Total | 4.09% | 4.24 | 3.80% | 2.92% | 2.49% |

[p.115]

* * *

| 6. | 04/19/2000 | Household Press Release

Plaintiffs' Exhibit 453 | April 19, 2000 Household Press Release entitled "Household International Reports Record First Quarter Results". Household "reported that earnings per share rose 20 percent to a first quarter record of $.78, from $.65 a year ago. Net income increased to $372.9 million, up 16 percent from $320.8 million in the first quarter of 1999." [HHS 02902345]

"This was the strongest first quarter in our company's history, with all of our businesses performing well. Revenue and receivable growth were strong, and credit quality continued to improve." [HHS 02902345]

* * *

"Credit Quality and Loss Reserves

At March 31, the managed delinquency ratio (60+days) declined to 4.43 percent, from 4.66 percent at December 31 and 4.81 percent a year ago. Dollars of delinquency were flat with year-end 1999. The annualized managed net chargeoff ratio for the first quarter was 4.00 percent compared to 3.96 percent in the prior quarter and improved 37 basis points from the year-ago quarter." [HHS 02902346] |

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 7. | 05/10/2000 | Household 10-Q<br><br>Plaintiffs' Exhibit 735 | Household 10-Q for 3/31/00 quarter ending: Household reported net income of $372.9 million for the quarter ended March 30, 2000 and EPS of $0.79 per share [HHS 03138125]:<br><br>CREDIT QUALITY<br>We track delinquency and chargeoff levels on a managed basis and we apply the same credit and portfolio management procedures as on our owned portfolio. [HHS 03138142]<br>Delinquency<br>Two-Months-and-Over Contractual Managed Delinquency (as a percent of managed consumer receivables):<br><br>|  | 3/31/00 | 12/31/99 | 9/30/99 | 6/30/99 | 3/31/99 |<br>| Managed: |  |  |  |  |  |<br>| Real estate secured | 2.99% | 3.27% | 3.46% | 3.29% | 3.54% |<br>| Auto finance | 1.52 | 2.43 | 2.26 | 1.87 | 1.74 |<br>| MasterCard/Visa | 3.06 | 2.78 | 3.10 | 3.11 | 3.61 |<br>| Private label | 5.94 | 5.97 | 6.66 | 6.62 | 6.37 |<br>| Other unsecured | 8.56 | 8.81 | 8.57 | 8.17 | 7.84 |<br>| Total | 4.43% | 4.66% | 4.89% | 4.72% | 4.81% |<br>| Owned | 4.58% | 4.81% | 5.24% | 4.96% | 5.04% |<br>[HHS 03138142]<br><br>"Owned consumer two-months-and-over contractual delinquency as a percent of owned consumer receivables was 4.58 percent at March 31, 2000, compared with 4.81 percent at December 31, 1999 and 5.04 percent at March 31, 1999.  The annualized consumer owned chargeoff ratio was 3.53 percent in the first quarter of 2000, compared with 3.62 percent in the prior quarter and 3.92 percent in the year-ago quarter.  [HHS 03138137]<br><br>Managed consumer two-months-and-over contractual delinquency as a percent of managed consumer receivables was 4.43 percent at March 31, 2000, compared with 4.66 percent at December 31, 1999 and 4.81 percent at March 31, 1999. The annualized total consumer managed chargeoff ratio was 4.00 percent in the first quarter of 2000, compared with 3.96 percent in the prior quarter and 4.37 percent in the year-ago quarter."  [HHS 03138137] |

6

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 8. | 07/19/2000 | Household Press Release

Plaintiffs' Exhibit 884 | July 19, 2000 Household Press Release entitled "Household International Reports Record Strongest Second Quarter in Its History". Household "reported that earnings per share rose to a second quarter record $.80, up 19 percent from $.67 a year ago. Net income increased 17 percent to $383.9 million, from $326.9 million in the second quarter of 1999. . . . The company's managed receivables portfolio grew 22 percent from a year ago, reaching almost $80 billion. The company added $4.5 billion of receivables in the quarter, an increase of 6 percent. Revenues rose 20 percent compared to the year-ago quarter." [HHS 03407363]

*       *       *

"Credit Quality and Loss Reserves
Credit quality improved dramatically during the quarter, as dollars of chargeoff and delinquency declined from first quarter levels. At June 30, the managed delinquency ratio (60+days) improved for the third consecutive quarter, to 4.16 percent. This represented a 27 basis-point improvement from the first quarter and a 56 basis-point improvement from a year ago. The annualized managed net chargeoff ratio for the second quarter feel 26 basis points sequentially, to 3.74 percent. The chargeoff ratio was 4.10 percent a year ago." [HHS 03407364] |

7

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 9. | 08/11/2000 | Household 10-Q<br><br>Plaintiffs' Exhibit 404 | Household 10-Q for 6/30/00 quarter ending: Household reported net income of $383.9 million for the quarter ended June 30, 2000 and EPS of $0.80:<br><br>CREDIT QUALITY<br>We track delinquency and chargeoff levels on a managed basis and we apply the same credit and portfolio management procedures as on our owned portfolio. [HHS 02879712]<br>Delinquency<br>Two-Months-and-Over Contractual Managed Delinquency (as a percent of managed consumer receivables) [HHS 02879713]:<br><br>Managed: 6/30/00 3/31/00 12/31/99 9/30/99 6/30/99<br>Real estate secured 2.72% 2.99% 3.27% 3.46% 3.29%<br>Auto finance 1.99 1.52 2.43 2.26 1.87<br>MasterCard/Visa 3.14 3.06 2.78 3.10 3.11<br>Private label 5.77 5.94 5.97 6.66 6.62<br>Other unsecured 7.92 8.55 8.81 8.57 8.17<br>Total 4.16% 4.43% 4.66% 4.89% 4.72%<br>Owned 4.25% 4.58% 4.81% 5.24% 4.96%<br>[HHS 02879693]<br><br>                 *      *      *<br><br>"Owned consumer two-months-and-over contractual delinquency as a percent of owned consumer receivables was 4.25 percent, compared with 4.58 percent at March 31, 2000 and 4.96 percent at June 30, 1999. The annualized total consumer owned chargeoff ratio in the second quarter of 2000 was 3.27 percent, compared with 3.53 percent in the prior quarter and 3.54 percent in the year-ago quarter. [HHS 02879706]<br><br>Managed consumer two-months-and-over contractual delinquency as a percent of managed consumer receivables was 4.16 percent, compared with 4.43 percent at March 31, 2000 and 4.72 percent at June 30, 1999. The annualized total consumer managed chargeoff ratio in the second quarter of 2000 was 3.74 percent, compared with 4.00 percent in the prior quarter and 4.10 percent in the year-ago quarter." [HHS 02879706] |

8

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 10. | 10/18/2000 | Household Press Release<br><br>Plaintiffs' Exhibit 505 | October 18, 2000 Household Press Release entitled "Household International Reports Highest Quarterly EPS In Its History; Ninth Consecutive Record Quarter". Household reported that "third quarter earnings per share rose 13 percent to $.94, compared to $.83 a year ago. Net income also rose to a third quarter record of $451.2 million, a 13 percent increase from $399.9 million a year ago." [HHS 02914234]<br><br>*    *    *<br><br>"Our strong third quarter results reflect a continuation of outstanding receivables and revenue growth. At the same time, we achieved year-over-year improvements in credit quality." [HHS 02914234]<br><br>*    *    *<br><br>"Credit Quality and Loss Reserves<br>The annualized managed net chargeoff ratio for the third quarter improved for a second consecutive quarter, to 3.47 percent from 3.74 percent in the second quarter. Dollars of net chargeoff also fell for the second consecutive quarter. The third quarter chargeoff ratio dropped 62 basis points from the level of a year ago, with improvement across all products. At September 30, the managed delinquency ratio (60+days) was 4.21 percent, compared with 4.16 percent in the second quarter and significantly below the year-ago level of 4.89 percent." [HHS 02914235] |
| 11. | 11/01/2000 | *St. Louis Dispatch* article<br><br>Plaintiffs' Exhibit 824 | "Streem says HFC never pressures people to buy credit life insurance." [HHS 03238043] |

9

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 12. | 11/14/2000 | Household 10-Q<br><br>Defendants' Exhibit 858 | Household 10-Q for quarter ending 9/30/2000: "Household reported net income of $451.2 million for the quarter ended September 30, 2000 and EPS of $0.95 [HHT 0015984]:<br><br>CREDIT QUALITY<br>We track delinquency and chargeoff levels on a managed basis and we apply the same credit and portfolio management procedures as on our owned portfolio.<br><br>Delinquency<br>Two-Months-and-Over Contractual Managed Delinquency (as a percent of managed consumer receivables):<br><br>(table below)<br><br>"Owned consumer two-months-and-over contractual delinquency as a percent of owned consumer receivables was 4.29 percent, compared with 4.25 percent at June 30, 2000 and 5.24 percent at September 30, 1999. The annualized consumer owned chargeoff ratio in the third quarter of 2000 was 3.01 percent, compared with 3.27 percent in the prior quarter and 3.63 percent in the year-ago quarter.<br><br>Managed consumer two-months-and-over contractual delinquency as a percent of managed consumer receivables was 4.21 percent at September 30, 2000, compared with 4.16 percent at June 30, 2000 and 4.89 percent at September 30, 1999. The annualized total consumer managed chargeoff ratio in the third quarter of 2000 was 3.47 percent, compared with 3.74 percent in the prior quarter and 4.09 percent in the year-ago quarter." [HHT 0015994] |

Two-Months-and-Over Contractual Managed Delinquency (as a percent of managed consumer receivables):

|  | September 30, 2000 | June 30, 2000 | March 31, 2000 | December 31, 1999 | September 30, 1999 |
|---|---|---|---|---|---|
| Managed: |  |  |  |  |  |
| Real estate secured | 2.77% | 2.72% | 2.99% | 3.27% | 3.46% |
| Auto finance | 2.19 | 1.99 | 1.52 | 2.43 | 2.26 |
| MasterCard/Visa | 3.48 | 3.14 | 3.06 | 2.78 | 3.10 |
| Private label | 5.67 | 5.77 | 5.94 | 5.97 | 6.66 |
| Other unsecured | 7.72 | 7.92 | 8.56 | 8.81 | 8.57 |
| Total Managed | 4.21% | 4.16% | 4.43% | 4.69% | 4.89% |
| Owned | 4.29% | 4.25% | 4.58% | 4.81% | 5.24% |

[HHT 0015998]

*        *        *

10

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 13. | 01/17/2001 | Household Press Release<br><br>Plaintiffs' Exhibit 491 | January 17, 2001 Household Press Release entitled "Household International Reports Highest Full Year and Quarterly EPS in Its History; Tenth Consecutive Record Quarter". Household reported full year earnings per share of $3.55, a 16 percent increase over $3.07 a year ago and the highest earnings per share in the company's 122-year history. Net income totaled $1.7 billion, or 14 percent above the prior year. Net managed revenues for the full year increased 18 percent to $8.9 billion, compared to $7.5 billion in 1999. Household's fourth quarter earnings per share rose 12 percent to a record $1.03, from $.92 a year ago. Fourth quarter net income rose 12 percent to an all-time high of $492.7 million, compared with $438.8 million a year ago."  [HHS 02912516]<br><br>* * *<br><br>"These strong fourth quarter results cap off a terrific year in which we delivered on all or our earnings and growth goals.... Growth and profitability in the quarter were excellent, while credit quality and our balance sheet remained strong.... Our record earnings per share reflect strong top-line growth and improved credit quality."  [HHS 02912516]<br><br>* * *<br><br>"Credit Quality and Loss Reserves<br>The fourth quarter annualized managed net chargeoff ratio improved for the third consecutive quarter to 3.41 percent from 3.47 percent in the third quarter. The fourth quarter chargeoff ratio was 55 basis points lower than a year ago and reached its lowest level since the fourth quarter of 1996. The managed delinquency ratio (60+days) at December 31, 2000 was 4.20 percent, stable with 4.21 percent in the third quarter and 46 basis points better than a year ago."  [HHS 02912517] |
| 14. | 03/23/2001 | *Origination News* article<br><br>Plaintiffs' Exhibit 1307 | *Origination News* – March 23, 2001: "Gary Gilmer, president and chief executive of Household's subsidiaries HFC and Beneficial said the company's 'position on predatory lending is perfectly clear. Unethical lending practices of any type are abhorrent to our company, our employees and most importantly our customers.'"  [TEL 002334] |

11

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 15. | 03/28/2001 | Household FY00 Report on Form 10-K<br><br>Defendants' Exhibit 851 | Household FY00 Report on Form 10-K filed with the SEC on March 28, 2001 Household reported net income of 1.7 billion and E.P.S. of $3.55 [HHT 0015623]:<br>*          *          *<br>"Our focus is to use risk-based pricing and effective collection efforts for each loan. We have a process which we believe gives us a reasonable basis for predicting the credit quality of new accounts. This process is based on our experience with numerous marketing, credit and risk management tests. We also believe that our frequent and early contact with delinquent customers is helpful in managing net credit losses." [HHT 0015608]<br>*          *          *<br>"Delinquency and Chargeoffs: Our delinquency and net chargeoff ratios reflect, among other factors, changes in the mix of loans in our portfolio, the quality of our receivables, the average age of our loans, the success of our collection efforts and general economic conditions." . . .<br>*          *          *<br>We track delinquency and chargeoff levels on both an owned and a managed basis. We apply the same credit and portfolio management procedures to both our owned and off-balance sheet portfolios. Our focus is to use risk-based pricing and effective collection efforts for each loan. We have a process which we believe gives us a reasonable basis for predicting the credit quality of new accounts. This process is based on our experience with numerous marketing, credit and risk management tests. We also believe that our frequent and early contact with delinquent customers is helpful in managing net credit losses." [HHT 0015608]<br>*          *          *<br><br>CONSUMER TWO-MONTH-AND-OVER CONTRACTUAL DELINQUENCY RATIOS |

| | 1999 Quarter End | | | | 2000 Quarter End | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 1 | 2 | 3 | 4 |
| **Managed:** | | | | | | | | |
| Real estate secured | 3.54% | 3.29% | 3.46% | 3.27% | 2.99% | 2.72% | 2.77% | 2.63% |
| Auto finance | 1.74 | 1.87 | 2.26 | 2.43 | 1.52 | 1.99 | 2.19 | 2.55 |
| MasterCard/Visa | 3.61 | 3.11 | 3.10 | 2.78 | 3.06 | 3.14 | 3.48 | 3.49 |
| Private label | 6.37 | 6.62 | 6.66 | 5.97 | 5.94 | 5.77 | 5.67 | 5.48 |
| Other unsecured | 7.84 | 8.17 | 8.57 | 8.81 | 8.56 | 7.92 | 7.72 | 7.97 |
| Total Managed | 4.81% | 4.72% | 4.89% | 4.66% | 4.43% | 4.16% | 4.21% | 4.20% |
| Total Owned | 5.04% | 4.96% | 5.24% | 4.81% | 4.58% | 4.25% | 4.29% | 4.26% |

[HHT 0015609]

12

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 16. | 04/18/2001 | Household Press Release<br><br>Plaintiffs' Exhibit 504 | April 18, 2001 Household Press Release entitled "Household International Reports First Quarter Results; 11th Consecutive Record Quarter": Household "reported that earnings per share rose 17 percent to a first quarter record of $.91 from $.78 a year ago. Net income increased to $431.8 million, up 16 percent from $372.9 million in the first quarter of 2000. This quarter marked the 11th consecutive quarter of record results." [HHS 02914121]<br><br>* * *<br><br>"Credit Quality and Loss Reserves<br><br>At March 31, the managed delinquency ratio (60+days) was 4.25 percent, compared to 4.43 percent a year ago and 4.20 percent at December 31, 2000. The annualized managed net charge-off ratio for the first quarter was 3.56 percent, a 44 basis points improvement from the year-ago quarter and up modestly from 3.41 percent in the prior quarter." [HHS 02914123] |
| 17. | 05/09/2001 | Household 10-Q<br><br>Plaintiffs' Exhibit 733 | Household 10-Q for 3/31/01 quarter ended: Household reported net income of $431.8 million for the quarter ended March 31, 2001 and EPS of $0.92 [HHS 03137911]:<br><br>CREDIT QUALITY<br>We track delinquency and chargeoff levels on a managed basis and we apply the same credit and portfolio management procedures as on our owned portfolio.<br><br>Delinquency<br>Two-Months-and-Over Contractual Delinquency (as a percent of consumer receivables): |

Two-Months-and-Over Contractual Delinquency (as a percent of consumer receivables):

| | March 31, 2001 | December 31, 2000 | September 30, 2000 | June 30, 2000 | March 31, 2000 |
|---|---|---|---|---|---|
| **Managed:** | | | | | |
| Real estate secured | 2.61% | 2.63% | 2.77% | 2.72% | 2.99% |
| Auto finance | 1.79 | 2.55 | 2.19 | 1.99 | 1.52 |
| MasterCard/Visa | 3.68 | 3.49 | 3.48 | 3.14 | 3.06 |
| Private label | 5.50 | 5.48 | 5.67 | 5.77 | 5.94 |
| Other unsecured | 8.37 | 7.97 | 7.72 | 7.92 | 8.56 |
| Total managed | 4.25% | 4.20% | 4.21% | 4.16% | 4.43% |
| Owned | 4.36% | 4.26% | 4.29% | 4.25% | 4.58% |

[HHS 03137930]

13

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| | | | * * * |
| | | | "Owned consumer two-months-and-over contractual delinquency as a percent of owned consumer receivables was 4.36 percent at March 31, 2001, compared with 4.26 percent at December 31, 2000 and 4.58 percent at March 31, 2000. The annualized consumer owned chargeoff ratio in the first quarter of 2001 was 3.12 percent, compared with 2.98 percent in the prior quarter and 3.53 percent in the year-ago quarter. |
| | | | Managed consumer two-months-and-over contractual delinquency as a percent of managed consumer receivables was 4.25 percent at March 31, 2001, compared with 4.20 percent at December 31, 2000 and 4.43 percent at March 31, 2000. The annualized consumer managed chargeoff ratio in the first quarter of 2001 was 3.56 percent, compared with 3.41 percent in the prior quarter and 4.00 percent in the year-ago quarter." [HHS 03137924] |
| 18. | 07/18/2001 | Household Press Release<br><br>Plaintiffs' Exhibit 503 | July 18, 2001 Household Press Release entitled "Household International Reports Second Quarter Results; 12th Consecutive Record Quarter". Household "reported record earnings per share of $.93, up 16 percent from a year ago. Net income rose 14 percent, to $439.0 million, from $383.9 million for the second quarter of 2000." . . .<br><br>"We had a terrific quarter – our 12th consecutive quarter of record results. Given the softening economic environment, I am particularly pleased with our ability to consistently deliver strong, quality earnings. Results for the quarter were excellent. . . . We enjoyed strong receivable and revenue growth compared to a year ago, with all of our businesses performing well. In addition, delinquency was stable in the quarter." [HHS 02914097]<br><br>"Credit Quality and Loss Reserves<br>At June 30th, the managed delinquency ratio (60+days) was 4.27 percent, stable with 4.25 percent in the first quarter. The managed delinquency ratio a year ago was 4.16 percent. The annualized managed net chargeoff ratio for the second quarter was 3.71 percent, essentially unchanged from the year-ago quarter and up modestly from 3.56 percent in the first quarter." [HHS 02914098] |

14

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 19. | 07/27/2001 | *Star Tribune* article<br><br>Plaintiffs' Exhibit 1451 | *Star Tribune* – July 27, 2001: "Megan Hayden, a Household spokeswoman, said that terms of loans are disclosed to all customers, as required by state and federal laws. 'Frankly, you don't stay in business in this industry by taking advantage of your customers,' she said. 'So I take exception to any characterization that we engaged in predatory lending practices.'" |
| 20. | 08/10/2001 | Household 10-Q<br><br>Plaintiffs' Exhibit 6 | Household 10-Q for 6/30/01 quarter ended: Household reported net income of $439 million for the quarter ended June 30, 2001 and EPS of $0.94 [AA 062721]:<br><br>CREDIT QUALITY<br>We track delinquency and chargeoff levels on a managed basis and we apply the same credit and portfolio management procedures as on our owned portfolio.<br>[AA 062738]<br>Delinquency<br>Two-Months-and-Over Contractual Delinquency (as a percent of consumer receivables):<br><br>*(table below)*<br><br>[AA 062739]<br><br>*   *   *<br><br>"Owned consumer two-months-and-over contractual delinquency as a percent of owned consumer receivables was 4.48 percent at June 30, 2001, compared with 4.36 percent at March 31, 2001 and 4.25 percent at June 30, 2000. The annualized consumer owned chargeoff ratio in the second quarter of 2001 was 3.26 percent, compared with 3.12 percent in the prior quarter and 3.27 percent in the year-ago quarter. |

Table (within Statement 20):

| | June 30, 2001 | March 31, 2001 | December 31, 2000 | September 30, 2000 | June 30, 2000 |
|---|---|---|---|---|---|
| Managed: | | | | | |
| Real estate secured | 2.63% | 2.61% | 2.63% | 2.77% | 2.72% |
| Auto finance | 2.09 | 1.79 | 2.55 | 2.19 | 1.99 |
| MasterCard/Visa | 3.60 | 3.68 | 3.49 | 3.48 | 3.14 |
| Private label | 5.66 | 5.50 | 5.48 | 5.67 | 5.77 |
| Other unsecured | 8.43 | 8.37 | 7.97 | 7.72 | 7.92 |
| Total managed | 4.27% | 4.25% | 4.20% | 4.21% | 4.16% |
| Owned | 4.48% | 4.36% | 4.26% | 4.29% | 4.25% |

15

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 21. | 10/17/2001 | Household Press Release<br><br>Plaintiffs' Exhibit 978 | Managed consumer two-months-and-over contractual delinquency as a percent of managed consumer receivables was 4.27 percent at June 30, 2001, compared with 4.25 percent at March 31, 2001 and 4.16 percent at June 30, 2000. The annualized consumer managed chargeoff ratio in the second quarter of 2001 was 3.71 percent, compared with 3.56 percent in the prior quarter and 3.74 percent in the year-ago quarter." [AA 062733]<br><br>October 17, 2001 Household Press Release entitled "Household Reports Highest Quarterly Net Income in its 123-Year History". Household "reported earnings per share of $1.07 rose 14 percent from $.94 the prior year. Net income increased 12 percent, to $504 million, from $451 million in the third quarter of 2000." [HHS 03453676]<br><br>"Credit Quality and Loss Reserves<br>At September 30th, the managed delinquency ratio (60+ days) was 4.43 percent, compared to 4.27 percent in the second quarter and 4.21 percent a year ago. The sequential increase was across all products and was well within company expectations. The annualized managed net chargeoff ratio for the third quarter was 3.74 percent, up slightly from 3.71 percent in the second quarter. The managed net chargeoff ratio was 3.47 percent in the prior-year quarter." [HHS 03453677] |

16

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 22. | 11/14/2001 | Household 10-Q<br><br>Plaintiffs' Exhibit 707 | Household 10-Q for quarter ended 9/30/01: Household reported net income of $503.8 million for the quarter ended September 30, 2001 and EPS of $1.09 [HHS 03111409]:<br><br>CREDIT QUALITY<br>We track delinquency and chargeoff levels on a managed basis and we apply the same credit and portfolio management procedures as on our owned portfolio. [HHS 03111425] |

Two-Months-and-Over Contractual Delinquency (as a percent of consumer receivables):

Delinquency

| | September 30, 2001 | June 30, 2001 | March 31, 2001 | December 30, 2000 | September 30, 2000 |
|---|---|---|---|---|---|
| **Managed:** | | | | | |
| Real estate secured | 2.74% | 2.63% | 2.61% | 2.63% | 2.77% |
| Auto finance | 2.54 | 2.09 | 1.79 | 2.55 | 2.19 |
| MasterCard/Visa | 3.91 | 3.60 | 3.68 | 3.49 | 3.48 |
| Private label | 5.88 | 5.66 | 5.50 | 5.48 | 5.67 |
| Other unsecured | 8.51 | 8.43 | 8.37 | 7.97 | 7.72 |
| Total managed | 4.43% | 4.27% | 4.25% | 4.20% | 4.21% |
| Owned | 4.58% | 4.48% | 4.36% | 4.26% | 4.29% |

[HHS 03111426]

\* \* \*

"Owned consumer two-months-and-over contractual delinquency as a percent of owned consumer receivables was 4.58 percent at September 30, 2001, compared with 4.48 percent at June 30, 2001 and 4.29 percent at September 30, 2000. The annualized total consumer owned chargeoff ratio in the third quarter of 2001 was 3.43 percent, compared with 3.26 percent in the prior quarter and 3.01 percent in the year-ago quarter.

Managed consumer two-months-and-over contractual delinquency as a percent of managed consumer receivables was 4.43 percent at September 30, 2001, compared with 4.27 percent at June 30, 2001 and 4.21 percent at September 31, 2000. The annualized total consumer managed chargeoff ratio in the third quarter of 2001 was 3.74 percent, compared with 3.71 percent in the prior quarter and 3.47 percent in the year-ago quarter." [HHS 03111420]

17

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 23. | 12/04/2001 | Goldman Sachs Presentation<br><br>Plaintiffs' Exhibit 1248 | "Managed delinquency as a percent of managed consumer receivables increased modestly over both the previous and prior-year quarters. Compared to the previous quarter, all products reported higher delinquencies principally as the result of a weakening economy." [HHS 03111426]<br><br>*     *     *<br><br>December 4, 2001 Goldman Sachs Presentation: defendants made false statements regarding Household's accounting practices, including reaging and restructuring.<br><br>*     *     *<br><br>"Charge off policies are appropriate for our target market and result in proper loss recognition" (PFG000158)<br><br>"All policies have been consistently applied and realistically report results" (PFG000158)<br><br>"Why are Household's Credit Losses Better" – better credit skills (PFG000152) |
| 24. | 01/16/2002 | Household Press Release<br><br>Plaintiffs' Exhibit 706 | January 16, 2002 Household Press Release entitled "Household Reports Record Quarterly and Full-Year Net Income": Household "reported fourth quarter earnings per share of $1.17, its fourteenth consecutive record quarter. Fourth quarter earnings per share rose 14 percent from $1.03 the prior year. Net income in the fourth quarter increased 11 percent, to an all-time quarterly record of $549 million. For the full year, Household reported earnings per share of $4.08, representing a 15 percent increase from $3.55 in 2000. Net income for 2001 totaled $1.9 billion, also an all-time high, 13 percent above $1.7 billion earned in 2000."<br><br>"Household's fourth quarter results were simply outstanding . . . demonstrating the tremendous strength and earnings power of the Household franchise. Receivable and revenue growth exceeded our expectations while credit indicators weakened only modestly in a tough economic environment. . . . In 2001, we demonstrated that our business model generates superior results in a weak economy as well as in the strong economic periods of previous years. Exceptional revenue growth of 18 percent more than offset the increases in credit losses during the year." [HHS 03110403 – HHS 03110404] |

18

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 25. | 02/06/2002 | *Copley News Services* article<br><br>Plaintiffs' Exhibit 1442 | *  *  *<br><br>"Credit Quality and Loss Reserves<br><br>At December 31st, the managed delinquency ratio (60+days) was 4.46 percent, up 3 basis points from 4.43 percent in the third quarter. The managed delinquency ratio was 4.20 percent a year ago. The annualized managed net chargeoff ratio for the fourth quarter was 3.90 percent, up 16 basis points from 3.74 percent in the third quarter. The managed net chargeoff ratio in the year-ago quarter was 3.41 percent." [HHS 03110405]<br><br>*Copley News Services* – February 6, 2002: "You simply cannot stay in business for 125 years by misleading your borrowers .... We do the right thing for our borrowers. We make good loans that not only are legal loans, but are beneficial for our customers." [p.1] |
| 26. | 02/18/2002 | *National Mortgage News* article<br><br>Plaintiffs' Exhibit 1291 | *National Mortgage News* – February 18, 2002:<br><br>"Our first take on [the allegations of predatory lending raised in the ACORN action] is that it is not a significant issue, not indicative of any widespread problem and certainly not a concern that it will spread elsewhere." [TEL 002227] |
| 27. | 03/13/2002 | Household FY01 Report on Form 10-K<br><br>Defendants' Exhibit 852 | Household FY01 Report on Form 10-K filed with the SEC on March 13, 2002 Household reported Net Income of $1.923 billion in 2001, and E.P.S. of $4.13 [HHT 0015815 – HHT 0015816]:<br><br>Household International, Inc. and Subsidiaries<br>CREDIT QUALITY STATISTICS – OWNED BASIS<br>All dollar amounts are stated in millions.<br>At December 31, unless otherwise indicated<br>Owned Two-Month-and-Over Contractual Delinquency Ratios (table below) |

|  | 2001 | 2000 | 1999 | 1998 | 1997 |
|---|---|---|---|---|---|
| Real estate secured | 2.63% | 2.58% | 3.10% | 3.95% | 3.66% |
| Auto finance | 2.92 | 2.46 | 2.02 | 2.90 | 1.48 |
| MasterCard/Visa | 5.67 | 4.90 | 3.59 | 5.09 | 3.55 |
| Private label | 5.99 | 5.60 | 6.09 | 6.03 | 5.60 |
| Personal non-credit card | 9.04 | 7.99 | 9.06 | 8.24 | 7.55 |
| Total consumer | 4.53% | 4.26% | 4.82% | 5.31% | 4.87% |

[HHT 0015809]

19

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|

Statement:

Household International, Inc. and Subsidiaries
CREDIT QUALITY STATISTICS – MANAGED BASIS
All dollar amounts are stated in millions.

At December 31, unless otherwise indicated.

Managed Two-Month-and-Over Contractual Delinquency Ratios

|  | 2001 | 2000 | 1999 | 1998 | 1997 |
|---|---|---|---|---|---|
| Real estate secured | 2.68% | 2.63% | 3.27% | 3.67% | 3.69% |
| Auto finance | 3.16 | 2.55 | 2.43 | 2.29 | 2.09 |
| MasterCard/Visa | 4.10 | 3.49 | 2.78 | 3.75 | 3.10 |
| Private label | 5.48 | 5.48 | 5.97 | 6.20 | 5.81 |
| Personal non-credit card | 8.87 | 7.97 | 8.81 | 7.94 | 7.81 |
| Total consumer | 4.46% | 4.20% | 4.66% | 4.90% | 4.64% |

[HHT 0015810]

*    *    *

*    *    *

"Management has long recognized its responsibility for conducting the company's affairs in a manner which is responsive to the interest of employees, shareholders, investors and society in general. This responsibility is included in the statement of policy on ethical standards which provides that the company will fully comply with laws, rules and regulations of every community in which it operates and adhere to the highest ethical standards. Officers, employees and agents of the company are expected and directed to manage the business of the company with complete honesty, candor and integrity." [HHT 0015848]

*    *    *

"Our credit and portfolio management procedures focus on risk-based pricing and effective collection efforts for each loan. We have a process which we believe gives us a reasonable basis for predicting the credit quality of new accounts. This process is based on our experience with numerous marketing, credit and risk management tests. We also believe that our frequent and early contact with delinquent customers, as well as policies designed to manage customer relationships, such as reaging delinquent accounts to current in specific situations, are helpful in maximizing customer collections. . . . As a result, charge-off and delinquency performance has been well within our expectations." [HHT 0015797]

20

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| | | | "We believe our policies are responsive to the specific needs of the customer segment we serve. . . . *Our policies have been consistently applied and there have been no significant changes to any of our policies during any of the periods reported.* Our loss reserve estimates consider our charge-off policies to ensure appropriate reserves exist for products with longer charge-off lives. We believe our charge-off policies are appropriate and result in proper loss recognition." [HHT 0015798]<br><br>*   *   *   *   *<br><br>"Our policies for consumer receivables permit reset of the contractual delinquency status of an account to current, subject to certain limits, if a predetermined number of consecutive payments has been received and there is evidence that the reason for the delinquency has been cured. Such reaging policies vary by product and are designed to manage customer relationship and maximize collections." [HHT 0015798] |
| 28. | 04/09/2002 | Household Financial Relations Conference<br><br>Plaintiffs' Exhibit 135 | April 9, 2002 Financial Relations Conference:<br><br>• Credit Quality Trend – Manageable, Modest Increases [chart on HHS 01883530]<br>• Credit Policies – Overview – In some cases charge-off policy is longer than bank policy to optimize customer management. [HHS 01883554]<br>• Reage Policies – Overview<br>   • Reage policies are an inherent part of value proposition for our customers for which they pay above bank prices<br>   • Not intended to defer credit loss recognition or to overstate net income<br>   • Policies have been consistently applied and are appropriate for each product [HHS 01883557]<br>• Credit Policies – Personal Non-Credit Card<br>   Restructures<br>     • If an account is ever 90+, lifetime limit of 4 restructures allowed [HHS 01883579]<br><br>Defendants included information regarding Household's reage portfolio in a number of charts included in Plaintiffs' Exhibit 135 – the charts are located at HHS01883560, HHS01883561, HHS01883562, HHS01883564, HHS01883565, HHS01883566, and HHS01883567. |

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 29. | 04/17/2002 | Household Press Release<br><br>Plaintiffs' Exhibit 635 | April 17, 2002 Household Press Release entitled "Household Reports Record First Quarter Net Income". Household "reported first quarter earnings per share of $1.09, its fifteenth consecutive record quarter. First quarter earnings per share rose 20 percent from $.91 the prior year. Net income in the first quarter increased 18 percent, to a record $511 million."<br><br>"Household turned in a very strong first quarter. . . . In addition to delivering record results this quarter, we strongly added to our capital and reserve levels and further enhanced liquidity. We remain committed to maintaining a strong balance sheet and maximum financial flexibility."<br><br>"Our credit quality performance was well within our expectations in light of the continued weakness in the economy. . . . We anticipate a very manageable credit environment for the remainder of the year." [HHS 02980361]<br><br>        *        *        *<br><br>"Credit Quality and Loss Reserves<br>At March 31st, the *managed basis* delinquency ratio (60+days) was 4.63 percent, up 17 basis points from 4.46 percent at year-end 2001 and up 38 basis points from 4.25 percent a year ago. The annualized *managed basis* net charge-off ratio for the first quarter of 4.09 percent increased 19 basis points from 3.90 percent in the fourth quarter of 2001. . . ."<br><br>"The *owned basis* delinquency ratio at March 31st was 4.77 percent, compared to 4.53 percent at December 31st and 4.36 percent a year ago. The annualized *owned basis* charge-off ratio for the first quarter was 3.61 percent compared to 3.43 percent in the previous quarter and 3.12 percent a year ago." [HHS 02980363] |
| 30. | 04/21/2002 | *Bellingham Herald* article<br><br>Plaintiffs' Exhibit 1445 | *Bellingham Herald* – April 21, 2002: "It is absolutely against our policy in any way quote a rate that is different than what the true rate is . . . . I can't underscore that enough." [p.1] |

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 31. | 05/03/2002 | *Chicago Tribune* article<br><br>Plaintiffs' Exhibit 1440 | *Chicago Tribune* – May 3, 2002: "Household denied that it misleads customers. 'Acorn continues to launch baseless accusations and lawsuits rather than work to enact real solutions to help eliminate predatory lending from the marketplace,' the lender's statement said." [p.1] |
| 32. | 05/10/2002 | Household 10-Q<br><br>Plaintiffs' Exhibit 232 | Household 10-Q for quarter ended 3/31/2002. Household reported net income of $511 million, and E.P.S of $1.09 [HHS 02135167]<br><br>CREDIT QUALITY<br><br>Delinquency – Owned Basis<br>Two-Months-and-Over Contractual Delinquency (as a percent of consumer receivables):<br><br>|  | March 31, 2002 | December 31, 2001 | March, 31 2001 |<br>|---|---|---|---|<br>| Real estate secured | 2.88% | 2.63% | 2.55% |<br>| Auto finance | 2.04 | 2.92 | 1.74 |<br>| MasterCard/Visa | 6.54 | 5.67 | 5.02 |<br>| Private label | 6.33 | 5.99 | 5.62 |<br>| Personal non-credit card | 9.60 | 9.04 | 8.79 |<br>| Total Owned | 4.77% | 4.53% | 4.36% |<br><br>[HHS 02135187] |

23

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 33. | 05/10/2002 | *The Record* article<br><br>Plaintiffs' Exhibit 1443 | *The Record* – May 10, 2002: "Our position is that the accusations [regarding predatory lending] are baseless . . . . The loans are legal, they are compliant with state and federal laws and our own policies, and in each instance they have benefits for each customer. . . . Hayden says the loan[s] conform[] to the company's 'tangible benefits test.'" |
| 34. | 05/31/2002 | *American Banker* article<br><br>Plaintiffs' Exhibit 1446 | *American Banker* – May 31, 2002: "It is our regulators' and the attorney general's job to investigate any complaints brought forth by consumers in their state, and we don't find anything unique or surprising that they are doing their job. . . . [W]e take proper steps to work with the department to uncover the facts and if necessary formulate an appropriate resolution for the borrower." . . . "some customers in Bellingham may have indeed been justified in their confusion about the rate of their loans" and claimed Household "took full and prompt responsibility" and is "satisfied that this situation was localized to the Bellingham branch." |
| 35. | 07/02/2002 | *The Oregonian*<br><br>Plaintiffs' Exhibit 1447 | *The Oregonian* – July 2, 2002: "'We've made mistakes,' said Megan Hayden, spokeswoman for the Prospect Heights, Ill., company. 'Is there a companywide pattern of abuse? Absolutely not.'" |
| 36. | 07/17/2002 | Household Press Release<br><br>Plaintiffs' Exhibit 788 | July 17, 2002 Household Press Release entitled "Household Reports Record Second Quarter Results on Strong Receivables Growth": Household "reported second quarter earnings per share increased 16 percent to $1.08, from $.93 the prior year. These results mark Household's sixteenth consecutive record quarter. Second quarter net income increased 17 percent, to a record $514 million." <br><br> * * * <br><br> "Our results this quarter were fueled by ongoing strong demand for our loan products. . . . Growth this quarter was strong, while we have maintained our conservative underwriting criteria. . . ." [HHS 03195884] |

24

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| | | | "Credit Quality and Loss Reserves<br><br>At June 30th, the *managed basis* delinquency ratio (60+days) was 4.53 percent, down 10 basis points from 4.63 percent at the end of March, led by improvement in the MasterCard/Visa portfolio. The managed basis delinquency ratio was 4.27 percent a year ago. The annualized *managed basis* netcharge-off ratio for the second quarter of 4.26 percent was 17 basis points higher than the first quarter and 55 basis points higher than a year ago."<br><br>* * * *<br><br>"The *owned basis* delinquency ratio at June 30th was 4.61 percent, compared to 4.77 percent at March 31st and 4.48 percent a year ago. The annualized *owned basis* net charge-off ratio for the second quarter was 3.76 percent compared to 3.61 percent in the previous quarter and 3.26 a year ago." [HHS 03195886] |
| 37. | 08/14/2002 | Household Press Release<br><br>Plaintiffs' Exhibit 227 | August 14, 2002 Household Press Release entitled "Household International Certifies Accuracy of SEC filings in 2002: "Household's results for the year-to-date have been fueled by strong demand for our loan products throughout our businesses. Our loan underwriting approach continues to be conservative in these times of economic uncertainty, and we remain committed to strong reserve and capital levels." [HHS 02133695] |

25

| Stmt No. | Date | Document Title | Statement |
|---|---|---|---|
| 38. | 08/14/2002 | Household 10-Q<br><br>Defendants' Exhibit 874 | Household 10-Q for quarter-ended 6/30/2002 issued on 8/14/2002: Household reported net income of \$507 million and E.P.S. of \$1.08 [HHT 0017112]<br><br>CREDIT QUALITY<br>Delinquency – Owned Basis<br>Two-Months-and-Over Contractual Delinquency (as a percent of consumer receivables):<br><br>|  | June 30, 2002 | March 31, 2002 | June 30, 2001 |<br>| Real estate secured | 2.78% | 2.88% | 2.59% |<br>| Auto finance | 2.99 | 2.04 | 2.35 |<br>| MasterCard/Visa | 6.13 | 6.54 | 4.80 |<br>| Private label | 6.19 | 6.33 | 6.54 |<br>| Personal non-credit card | 9.12 | 9.60 | 8.79 |<br>| Total Owned | 4.61% | 4.77% | 4.48% |<br>[HHT 0017131]<br><br>*          *          *<br><br>"Our credit policies for consumer loans permit the reset of the contractual delinquency status of an account to current, subject to certain limits, if a predetermined number of consecutive payments has been received and there is evidence that the reason for the delinquency has been cured. Such reaging<br><br>*          *          *<br><br>policies vary by product and are designed to manage customer relationship and ensure maximum collections." [HHT 0017132]<br><br>Household reiterated this disclosure in its Form 10-K/A for fiscal year 2001, filed with the SEC on August 27, 2002. |
| 39. | 08/23/2002 | *Origination News* article<br><br>Plaintiffs' Exhibit 1439 | *Origination News* – August 23, 2002: "'We clearly follow all state and federal laws and regulations,' Household spokeswoman Megan Hayden said." |

26

## TABLE B

| Date | Amount |
|------|--------|
| 07/30/99 | $____0____ per share |
| 08/02/99 | $____0____ per share |
| 08/03/99 | $____0____ per share |
| 08/04/99 | $____0____ per share |
| 08/05/99 | $____0____ per share |
| 08/06/99 | $____0____ per share |
| 08/09/99 | $____0____ per share |
| 08/10/99 | $____0____ per share |
| 08/11/99 | $____0____ per share |
| 08/12/99 | $____0____ per share |
| 08/13/99 | $____0____ per share |
| 08/16/99 | $____0____ per share |
| 08/17/99 | $____0____ per share |
| 08/18/99 | $____0____ per share |
| 08/19/99 | $____0____ per share |
| 08/20/99 | $____0____ per share |
| 08/23/99 | $____0____ per share |
| 08/24/99 | $____0____ per share |
| 08/25/99 | $____0____ per share |
| 08/26/99 | $____0____ per share |
| 08/27/99 | $____0____ per share |
| 08/30/99 | $____0____ per share |
| 08/31/99 | $____0____ per share |
| 09/01/99 | $____0____ per share |
| 09/02/99 | $____0____ per share |
| 09/03/99 | $____0____ per share |
| 09/07/99 | $____0____ per share |
| 09/08/99 | $____0____ per share |
| 09/09/99 | $____0____ per share |
| 09/10/99 | $____0____ per share |

| **Date** | **Amount** |
|----------|------------|
| 09/13/99 | $_____ 0 per share |
| 09/14/99 | $_____ 0 per share |
| 09/15/99 | $_____ 0 per share |
| 09/16/99 | $_____ 0 per share |
| 09/17/99 | $_____ 0 per share |
| 09/20/99 | $_____ 0 per share |
| 09/21/99 | $_____ 0 per share |
| 09/22/99 | $_____ 0 per share |
| 09/23/99 | $_____ 0 per share |
| 09/24/99 | $_____ 0 per share |
| 09/27/99 | $_____ 0 per share |
| 09/28/99 | $_____ 0 per share |
| 09/29/99 | $_____ 0 per share |
| 09/30/99 | $_____ 0 per share |
| 10/01/99 | $_____ 0 per share |
| 10/04/99 | $_____ 0 per share |
| 10/05/99 | $_____ 0 per share |
| 10/06/99 | $_____ 0 per share |
| 10/07/99 | $_____ 0 per share |
| 10/08/99 | $_____ 0 per share |
| 10/11/99 | $_____ 0 per share |
| 10/12/99 | $_____ 0 per share |
| 10/13/99 | $_____ 0 per share |
| 10/14/99 | $_____ 0 per share |
| 10/15/99 | $_____ 0 per share |
| 10/18/99 | $_____ 0 per share |
| 10/19/99 | $_____ 0 per share |
| 10/20/99 | $_____ 0 per share |
| 10/21/99 | $_____ 0 per share |
| 10/22/99 | $_____ 0 per share |
| 10/25/99 | $_____ 0 per share |

| **Date** | **Amount** |
|----------|------------|
| 10/26/99 | $_____ 0 per share |
| 10/27/99 | $_____ 0 per share |
| 10/28/99 | $_____ 0 per share |
| 10/29/99 | $_____ 0 per share |
| 11/01/99 | $_____ 0 per share |
| 11/02/99 | $_____ 0 per share |
| 11/03/99 | $_____ 0 per share |
| 11/04/99 | $_____ 0 per share |
| 11/05/99 | $_____ 0 per share |
| 11/08/99 | $_____ 0 per share |
| 11/09/99 | $_____ 0 per share |
| 11/10/99 | $_____ 0 per share |
| 11/11/99 | $_____ 0 per share |
| 11/12/99 | $_____ 0 per share |
| 11/15/99 | $_____ 0 per share |
| 11/16/99 | $_____ 0 per share |
| 11/17/99 | $_____ 0 per share |
| 11/18/99 | $_____ 0 per share |
| 11/19/99 | $_____ 0 per share |
| 11/22/99 | $_____ 0 per share |
| 11/23/99 | $_____ 0 per share |
| 11/24/99 | $_____ 0 per share |
| 11/26/99 | $_____ 0 per share |
| 11/29/99 | $_____ 0 per share |
| 11/30/99 | $_____ 0 per share |
| 12/01/99 | $_____ 0 per share |
| 12/02/99 | $_____ 0 per share |
| 12/03/99 | $_____ 0 per share |
| 12/06/99 | $_____ 0 per share |
| 12/07/99 | $_____ 0 per share |
| 12/08/99 | $_____ 0 per share |

| **Date** | **Amount** |
|----------|------------|
| 12/09/99 | $_____ 0 per share |
| 12/10/99 | $_____ 0 per share |
| 12/13/99 | $_____ 0 per share |
| 12/14/99 | $_____ 0 per share |
| 12/15/99 | $_____ 0 per share |
| 12/16/99 | $_____ 0 per share |
| 12/17/99 | $_____ 0 per share |
| 12/20/99 | $_____ 0 per share |
| 12/21/99 | $_____ 0 per share |
| 12/22/99 | $_____ 0 per share |
| 12/23/99 | $_____ 0 per share |
| 12/27/99 | $_____ 0 per share |
| 12/28/99 | $_____ 0 per share |
| 12/29/99 | $_____ 0 per share |
| 12/30/99 | $_____ 0 per share |
| 12/31/99 | $_____ 0 per share |
| 01/03/00 | $_____ 0 per share |
| 01/04/00 | $_____ 0 per share |
| 01/05/00 | $_____ 0 per share |
| 01/06/00 | $_____ 0 per share |
| 01/07/00 | $_____ 0 per share |
| 01/10/00 | $_____ 0 per share |
| 01/11/00 | $_____ 0 per share |
| 01/12/00 | $_____ 0 per share |
| 01/13/00 | $_____ 0 per share |
| 01/14/00 | $_____ 0 per share |
| 01/18/00 | $_____ 0 per share |
| 01/19/00 | $_____ 0 per share |
| 01/20/00 | $_____ 0 per share |
| 01/21/00 | $_____ 0 per share |
| 01/24/00 | $_____ 0 per share |

| **Date** | **Amount** |
|----------|------------|
| 01/25/00 | $ _____ *0* ___ per share |
| 01/26/00 | $ _____ *0* ___ per share |
| 01/27/00 | $ _____ *0* ___ per share |
| 01/28/00 | $ _____ *0* ___ per share |
| 01/31/00 | $ _____ *0* ___ per share |
| 02/01/00 | $ _____ *0* ___ per share |
| 02/02/00 | $ _____ *0* ___ per share |
| 02/03/00 | $ _____ *0* ___ per share |
| 02/04/00 | $ _____ *0* ___ per share |
| 02/07/00 | $ _____ *0* ___ per share |
| 02/08/00 | $ _____ *0* ___ per share |
| 02/09/00 | $ _____ *0* ___ per share |
| 02/10/00 | $ _____ *0* ___ per share |
| 02/11/00 | $ _____ *0* ___ per share |
| 02/14/00 | $ _____ *0* ___ per share |
| 02/15/00 | $ _____ *0* ___ per share |
| 02/16/00 | $ _____ *0* ___ per share |
| 02/17/00 | $ _____ *0* ___ per share |
| 02/18/00 | $ _____ *0* ___ per share |
| 02/22/00 | $ _____ *0* ___ per share |
| 02/23/00 | $ _____ *0* ___ per share |
| 02/24/00 | $ _____ *0* ___ per share |
| 02/25/00 | $ _____ *0* ___ per share |
| 02/28/00 | $ _____ *0* ___ per share |
| 02/29/00 | $ _____ *0* ___ per share |
| 03/01/00 | $ _____ *0* ___ per share |
| 03/02/00 | $ _____ *0* ___ per share |
| 03/03/00 | $ _____ *0* ___ per share |
| 03/06/00 | $ _____ *0* ___ per share |
| 03/07/00 | $ _____ *0* ___ per share |
| 03/08/00 | $ _____ *0* ___ per share |

| **Date** | **Amount** |
|----------|-----------|
| 03/09/00 | $_____ 0 __ per share |
| 03/10/00 | $_____ 0 __ per share |
| 03/13/00 | $_____ 0 __ per share |
| 03/14/00 | $_____ 0 __ per share |
| 03/15/00 | $_____ 0 __ per share |
| 03/16/00 | $_____ 0 __ per share |
| 03/17/00 | $_____ 0 __ per share |
| 03/20/00 | $_____ 0 __ per share |
| 03/21/00 | $_____ 0 __ per share |
| 03/22/00 | $_____ 0 __ per share |
| 03/23/00 | $_____ 0 __ per share |
| 03/24/00 | $_____ 0 __ per share |
| 03/27/00 | $_____ 0 __ per share |
| 03/28/00 | $_____ 0 __ per share |
| 03/29/00 | $_____ 0 __ per share |
| 03/30/00 | $_____ 0 __ per share |
| 03/31/00 | $_____ 0 __ per share |
| 04/03/00 | $_____ 0 __ per share |
| 04/04/00 | $_____ 0 __ per share |
| 04/05/00 | $_____ 0 __ per share |
| 04/06/00 | $_____ 0 __ per share |
| 04/07/00 | $_____ 0 __ per share |
| 04/10/00 | $_____ 0 __ per share |
| 04/11/00 | $_____ 0 __ per share |
| 04/12/00 | $_____ 0 __ per share |
| 04/13/00 | $_____ 0 __ per share |
| 04/14/00 | $_____ 0 __ per share |
| 04/17/00 | $_____ 0 __ per share |
| 04/18/00 | $_____ 0 __ per share |
| 04/19/00 | $_____ 0 __ per share |
| 04/20/00 | $_____ 0 __ per share |

| **Date** | **Amount** |
|------|--------|
| 04/24/00 | $____0____ per share |
| 04/25/00 | $____0____ per share |
| 04/26/00 | $____0____ per share |
| 04/27/00 | $____0____ per share |
| 04/28/00 | $____0____ per share |
| 05/01/00 | $____0____ per share |
| 05/02/00 | $____0____ per share |
| 05/03/00 | $____0____ per share |
| 05/04/00 | $____0____ per share |
| 05/05/00 | $____0____ per share |
| 05/08/00 | $____0____ per share |
| 05/09/00 | $____0____ per share |
| 05/10/00 | $____0____ per share |
| 05/11/00 | $____0____ per share |
| 05/12/00 | $____0____ per share |
| 05/15/00 | $____0____ per share |
| 05/16/00 | $____0____ per share |
| 05/17/00 | $____0____ per share |
| 05/18/00 | $____0____ per share |
| 05/19/00 | $____0____ per share |
| 05/22/00 | $____0____ per share |
| 05/23/00 | $____0____ per share |
| 05/24/00 | $____0____ per share |
| 05/25/00 | $____0____ per share |
| 05/26/00 | $____0____ per share |
| 05/30/00 | $____0____ per share |
| 05/31/00 | $____0____ per share |
| 06/01/00 | $____0____ per share |
| 06/02/00 | $____0____ per share |
| 06/05/00 | $____0____ per share |
| 06/06/00 | $____0____ per share |

| **Date** | **Amount** |
|----------|------------|
| 06/07/00 | $_____ 0 _____ per share |
| 06/08/00 | $_____ 0 _____ per share |
| 06/09/00 | $_____ 0 _____ per share |
| 06/12/00 | $_____ 0 _____ per share |
| 06/13/00 | $_____ 0 _____ per share |
| 06/14/00 | $_____ 0 _____ per share |
| 06/15/00 | $_____ 0 _____ per share |
| 06/16/00 | $_____ 0 _____ per share |
| 06/19/00 | $_____ 0 _____ per share |
| 06/20/00 | $_____ 0 _____ per share |
| 06/21/00 | $_____ 0 _____ per share |
| 06/22/00 | $_____ 0 _____ per share |
| 06/23/00 | $_____ 0 _____ per share |
| 06/26/00 | $_____ 0 _____ per share |
| 06/27/00 | $_____ 0 _____ per share |
| 06/28/00 | $_____ 0 _____ per share |
| 06/29/00 | $_____ 0 _____ per share |
| 06/30/00 | $_____ 0 _____ per share |
| 07/03/00 | $_____ 0 _____ per share |
| 07/05/00 | $_____ 0 _____ per share |
| 07/06/00 | $_____ 0 _____ per share |
| 07/07/00 | $_____ 0 _____ per share |
| 07/10/00 | $_____ 0 _____ per share |
| 07/11/00 | $_____ 0 _____ per share |
| 07/12/00 | $_____ 0 _____ per share |
| 07/13/00 | $_____ 0 _____ per share |
| 07/14/00 | $_____ 0 _____ per share |
| 07/17/00 | $_____ 0 _____ per share |
| 07/18/00 | $_____ 0 _____ per share |
| 07/19/00 | $_____ 0 _____ per share |
| 07/20/00 | $_____ 0 _____ per share |

| **Date** | **Amount** |
|----------|-----------|
| 07/21/00 | $_____ 0 _____ per share |
| 07/24/00 | $_____ 0 _____ per share |
| 07/25/00 | $_____ 0 _____ per share |
| 07/26/00 | $_____ 0 _____ per share |
| 07/27/00 | $_____ 0 _____ per share |
| 07/28/00 | $_____ 0 _____ per share |
| 07/31/00 | $_____ 0 _____ per share |
| 08/01/00 | $_____ 0 _____ per share |
| 08/02/00 | $_____ 0 _____ per share |
| 08/03/00 | $_____ 0 _____ per share |
| 08/04/00 | $_____ 0 _____ per share |
| 08/07/00 | $_____ 0 _____ per share |
| 08/08/00 | $_____ 0 _____ per share |
| 08/09/00 | $_____ 0 _____ per share |
| 08/10/00 | $_____ 0 _____ per share |
| 08/11/00 | $_____ 0 _____ per share |
| 08/14/00 | $_____ 0 _____ per share |
| 08/15/00 | $_____ 0 _____ per share |
| 08/16/00 | $_____ 0 _____ per share |
| 08/17/00 | $_____ 0 _____ per share |
| 08/18/00 | $_____ 0 _____ per share |
| 08/21/00 | $_____ 0 _____ per share |
| 08/22/00 | $_____ 0 _____ per share |
| 08/23/00 | $_____ 0 _____ per share |
| 08/24/00 | $_____ 0 _____ per share |
| 08/25/00 | $_____ 0 _____ per share |
| 08/28/00 | $_____ 0 _____ per share |
| 08/29/00 | $_____ 0 _____ per share |
| 08/30/00 | $_____ 0 _____ per share |
| 08/31/00 | $_____ 0 _____ per share |
| 09/01/00 | $_____ 0 _____ per share |

| **Date** | **Amount** |
|----------|------------|
| 09/05/00 | $_____ *0* per share |
| 09/06/00 | $_____ *0* per share |
| 09/07/00 | $_____ *0* per share |
| 09/08/00 | $_____ *0* per share |
| 09/11/00 | $_____ *0* per share |
| 09/12/00 | $_____ *0* per share |
| 09/13/00 | $_____ *0* per share |
| 09/14/00 | $_____ *0* per share |
| 09/15/00 | $_____ *0* per share |
| 09/18/00 | $_____ *0* per share |
| 09/19/00 | $_____ *0* per share |
| 09/20/00 | $_____ *0* per share |
| 09/21/00 | $_____ *0* per share |
| 09/22/00 | $_____ *0* per share |
| 09/25/00 | $_____ *0* per share |
| 09/26/00 | $_____ *0* per share |
| 09/27/00 | $_____ *0* per share |
| 09/28/00 | $_____ *0* per share |
| 09/29/00 | $_____ *0* per share |
| 10/02/00 | $_____ *0* per share |
| 10/03/00 | $_____ *0* per share |
| 10/04/00 | $_____ *0* per share |
| 10/05/00 | $_____ *0* per share |
| 10/06/00 | $_____ *0* per share |
| 10/09/00 | $_____ *0* per share |
| 10/10/00 | $_____ *0* per share |
| 10/11/00 | $_____ *0* per share |
| 10/12/00 | $_____ *0* per share |
| 10/13/00 | $_____ *0* per share |
| 10/16/00 | $_____ *0* per share |
| 10/17/00 | $_____ *0* per share |

| **Date** | **Amount** |
|----------|------------|
| 10/18/00 | $_____ *0*___ per share |
| 10/19/00 | $_____ *0*___ per share |
| 10/20/00 | $_____ *0*___ per share |
| 10/23/00 | $_____ *0*___ per share |
| 10/24/00 | $_____ *0*___ per share |
| 10/25/00 | $_____ *0*___ per share |
| 10/26/00 | $_____ *0*___ per share |
| 10/27/00 | $_____ *0*___ per share |
| 10/30/00 | $_____ *0*___ per share |
| 10/31/00 | $_____ *0*___ per share |
| 11/01/00 | $_____ *0*___ per share |
| 11/02/00 | $_____ *0*___ per share |
| 11/03/00 | $_____ *0*___ per share |
| 11/06/00 | $_____ *0*___ per share |
| 11/07/00 | $_____ *0*___ per share |
| 11/08/00 | $_____ *0*___ per share |
| 11/09/00 | $_____ *0*___ per share |
| 11/10/00 | $_____ *0*___ per share |
| 11/13/00 | $_____ *0*___ per share |
| 11/14/00 | $_____ *0*___ per share |
| 11/15/00 | $_____ *0*___ per share |
| 11/16/00 | $_____ *0*___ per share |
| 11/17/00 | $_____ *0*___ per share |
| 11/20/00 | $_____ *0*___ per share |
| 11/21/00 | $_____ *0*___ per share |
| 11/22/00 | $_____ *0*___ per share |
| 11/24/00 | $_____ *0*___ per share |
| 11/27/00 | $_____ *0*___ per share |
| 11/28/00 | $_____ *0*___ per share |
| 11/29/00 | $_____ *0*___ per share |
| 11/30/00 | $_____ *0*___ per share |

| **Date** | **Amount** |
|----------|------------|
| 12/01/00 | $_____ *O* per share |
| 12/04/00 | $_____ *O* per share |
| 12/05/00 | $_____ *O* per share |
| 12/06/00 | $_____ *O* per share |
| 12/07/00 | $_____ *O* per share |
| 12/08/00 | $_____ *O* per share |
| 12/11/00 | $_____ *O* per share |
| 12/12/00 | $_____ *O* per share |
| 12/13/00 | $_____ *O* per share |
| 12/14/00 | $_____ *O* per share |
| 12/15/00 | $_____ *O* per share |
| 12/18/00 | $_____ *O* per share |
| 12/19/00 | $_____ *O* per share |
| 12/20/00 | $_____ *O* per share |
| 12/21/00 | $_____ *O* per share |
| 12/22/00 | $_____ *O* per share |
| 12/26/00 | $_____ *O* per share |
| 12/27/00 | $_____ *O* per share |
| 12/28/00 | $_____ *O* per share |
| 12/29/00 | $_____ *O* per share |
| 01/02/01 | $_____ *O* per share |
| 01/03/01 | $_____ *O* per share |
| 01/04/01 | $_____ *O* per share |
| 01/05/01 | $_____ *O* per share |
| 01/08/01 | $_____ *O* per share |
| 01/09/01 | $_____ *O* per share |
| 01/10/01 | $_____ *O* per share |
| 01/11/01 | $_____ *O* per share |
| 01/12/01 | $_____ *O* per share |
| 01/16/01 | $_____ *O* per share |
| 01/17/01 | $_____ *O* per share |

| Date | Amount |
|------|--------|
| 01/18/01 | $_____0_____ per share |
| 01/19/01 | $_____0_____ per share |
| 01/22/01 | $_____0_____ per share |
| 01/23/01 | $_____0_____ per share |
| 01/24/01 | $_____0_____ per share |
| 01/25/01 | $_____0_____ per share |
| 01/26/01 | $_____0_____ per share |
| 01/29/01 | $_____0_____ per share |
| 01/30/01 | $_____0_____ per share |
| 01/31/01 | $_____0_____ per share |
| 02/01/01 | $_____0_____ per share |
| 02/02/01 | $_____0_____ per share |
| 02/05/01 | $_____0_____ per share |
| 02/06/01 | $_____0_____ per share |
| 02/07/01 | $_____0_____ per share |
| 02/08/01 | $_____0_____ per share |
| 02/09/01 | $_____0_____ per share |
| 02/12/01 | $_____0_____ per share |
| 02/13/01 | $_____0_____ per share |
| 02/14/01 | $_____0_____ per share |
| 02/15/01 | $_____0_____ per share |
| 02/16/01 | $_____0_____ per share |
| 02/20/01 | $_____0_____ per share |
| 02/21/01 | $_____0_____ per share |
| 02/22/01 | $_____0_____ per share |
| 02/23/01 | $_____0_____ per share |
| 02/26/01 | $_____0_____ per share |
| 02/27/01 | $_____0_____ per share |
| 02/28/01 | $_____0_____ per share |
| 03/01/01 | $_____0_____ per share |
| 03/02/01 | $_____0_____ per share |

| Date | Amount |
|------|--------|
| 03/05/01 | $ _O_ per share |
| 03/06/01 | $ _O_ per share |
| 03/07/01 | $ _O_ per share |
| 03/08/01 | $ _O_ per share |
| 03/09/01 | $ _O_ per share |
| 03/12/01 | $ _O_ per share |
| 03/13/01 | $ _O_ per share |
| 03/14/01 | $ _O_ per share |
| 03/15/01 | $ _O_ per share |
| 03/16/01 | $ _O_ per share |
| 03/19/01 | $ _O_ per share |
| 03/20/01 | $ _O_ per share |
| 03/21/01 | $ _O_ per share |
| 03/22/01 | $ _O_ per share |
| 03/23/01 | $ _23.94_ per share |
| 03/26/01 | $ _23.94_ per share |
| 03/27/01 | $ _23.94_ per share |
| 03/28/01 | $ _23.94_ per share |
| 03/29/01 | $ _23.94_ per share |
| 03/30/01 | $ _23.94_ per share |
| 04/02/01 | $ _23.94_ per share |
| 04/03/01 | $ _23.94_ per share |
| 04/04/01 | $ _23.94_ per share |
| 04/05/01 | $ _23.94_ per share |
| 04/06/01 | $ _23.94_ per share |
| 04/09/01 | $ _23.94_ per share |
| 04/10/01 | $ _23.94_ per share |
| 04/11/01 | $ _23.94_ per share |
| 04/12/01 | $ _23.94_ per share |
| 04/16/01 | $ _23.94_ per share |
| 04/17/01 | $ _23.94_ per share |

| **Date** | **Amount** |
|----------|------------|
| 04/18/01 | $ _23.94_ per share |
| 04/19/01 | $ _23.94_ per share |
| 04/20/01 | $ _23.94_ per share |
| 04/23/01 | $ _23.94_ per share |
| 04/24/01 | $ _23.94_ per share |
| 04/25/01 | $ _23.94_ per share |
| 04/26/01 | $ _23.94_ per share |
| 04/27/01 | $ _23.94_ per share |
| 04/30/01 | $ _23.94_ per share |
| 05/01/01 | $ _23.94_ per share |
| 05/02/01 | $ _23.94_ per share |
| 05/03/01 | $ _23.94_ per share |
| 05/04/01 | $ _23.94_ per share |
| 05/07/01 | $ _23.94_ per share |
| 05/08/01 | $ _23.94_ per share |
| 05/09/01 | $ _23.94_ per share |
| 05/10/01 | $ _23.94_ per share |
| 05/11/01 | $ _23.94_ per share |
| 05/14/01 | $ _23.94_ per share |
| 05/15/01 | $ _23.94_ per share |
| 05/16/01 | $ _23.94_ per share |
| 05/17/01 | $ _23.94_ per share |
| 05/18/01 | $ _23.94_ per share |
| 05/21/01 | $ _23.94_ per share |
| 05/22/01 | $ _23.94_ per share |
| 05/23/01 | $ _23.94_ per share |
| 05/24/01 | $ _23.94_ per share |
| 05/25/01 | $ _23.94_ per share |
| 05/29/01 | $ _23.94_ per share |
| 05/30/01 | $ _23.94_ per share |
| 05/31/01 | $ _23.94_ per share |

| **Date** | **Amount** |
|----------|-----------|
| 06/01/01 | $ 23.94 per share |
| 06/04/01 | $ 23.94 per share |
| 06/05/01 | $ 23.94 per share |
| 06/06/01 | $ 23.94 per share |
| 06/07/01 | $ 23.94 per share |
| 06/08/01 | $ 23.94 per share |
| 06/11/01 | $ 23.94 per share |
| 06/12/01 | $ 23.94 per share |
| 06/13/01 | $ 23.94 per share |
| 06/14/01 | $ 23.94 per share |
| 06/15/01 | $ 23.94 per share |
| 06/18/01 | $ 23.94 per share |
| 06/19/01 | $ 23.94 per share |
| 06/20/01 | $ 23.94 per share |
| 06/21/01 | $ 23.94 per share |
| 06/22/01 | $ 23.94 per share |
| 06/25/01 | $ 23.94 per share |
| 06/26/01 | $ 23.94 per share |
| 06/27/01 | $ 23.94 per share |
| 06/28/01 | $ 23.94 per share |
| 06/29/01 | $ 23.94 per share |
| 07/02/01 | $ 23.94 per share |
| 07/03/01 | $ 23.94 per share |
| 07/05/01 | $ 23.94 per share |
| 07/06/01 | $ 23.94 per share |
| 07/09/01 | $ 23.94 per share |
| 07/10/01 | $ 23.94 per share |
| 07/11/01 | $ 23.94 per share |
| 07/12/01 | $ 23.94 per share |
| 07/13/01 | $ 23.94 per share |
| 07/16/01 | $ 23.94 per share |

| Date | Amount | |
|------|--------|---|
| 07/17/01 | $ 23.94 | per share |
| 07/18/01 | $ 23.94 | per share |
| 07/19/01 | $ 23.94 | per share |
| 07/20/01 | $ 23.94 | per share |
| 07/23/01 | $ 23.94 | per share |
| 07/24/01 | $ 23.94 | per share |
| 07/25/01 | $ 23.94 | per share |
| 07/26/01 | $ 23.94 | per share |
| 07/27/01 | $ 23.94 | per share |
| 07/30/01 | $ 23.94 | per share |
| 07/31/01 | $ 23.94 | per share |
| 08/01/01 | $ 23.94 | per share |
| 08/02/01 | $ 23.94 | per share |
| 08/03/01 | $ 23.94 | per share |
| 08/06/01 | $ 23.94 | per share |
| 08/07/01 | $ 23.94 | per share |
| 08/08/01 | $ 23.94 | per share |
| 08/09/01 | $ 23.94 | per share |
| 08/10/01 | $ 23.94 | per share |
| 08/13/01 | $ 23.94 | per share |
| 08/14/01 | $ 23.94 | per share |
| 08/15/01 | $ 23.94 | per share |
| 08/16/01 | $ 23.94 | per share |
| 08/17/01 | $ 23.94 | per share |
| 08/20/01 | $ 23.94 | per share |
| 08/21/01 | $ 23.94 | per share |
| 08/22/01 | $ 23.94 | per share |
| 08/23/01 | $ 23.94 | per share |
| 08/24/01 | $ 23.94 | per share |
| 08/27/01 | $ 23.94 | per share |
| 08/28/01 | $ 23.94 | per share |

| **Date** | **Amount** |
|---|---|
| 08/29/01 | $ 23.94 per share |
| 08/30/01 | $ 23.94 per share |
| 08/31/01 | $ 23.94 per share |
| 09/04/01 | $ 23.94 per share |
| 09/05/01 | $ 23.94 per share |
| 09/06/01 | $ 23.94 per share |
| 09/07/01 | $ 23.56 per share |
| 09/10/01 | $ 23.94 per share |
| 09/17/01 | $ 22.61 per share |
| 09/18/01 | $ 22.53 per share |
| 09/19/01 | $ 22.38 per share |
| 09/20/01 | $ 22.02 per share |
| 09/21/01 | $ 21.54 per share |
| 09/24/01 | $ 22.62 per share |
| 09/25/01 | $ 22.29 per share |
| 09/26/01 | $ 23.03 per share |
| 09/27/01 | $ 23.42 per share |
| 09/28/01 | $ 23.94 per share |
| 10/01/01 | $ 23.94 per share |
| 10/02/01 | $ 23.94 per share |
| 10/03/01 | $ 23.94 per share |
| 10/04/01 | $ 23.94 per share |
| 10/05/01 | $ 23.94 per share |
| 10/08/01 | $ 23.94 per share |
| 10/09/01 | $ 23.94 per share |
| 10/10/01 | $ 23.94 per share |
| 10/11/01 | $ 23.94 per share |
| 10/12/01 | $ 23.59 per share |
| 10/15/01 | $ 23.94 per share |
| 10/16/01 | $ 23.94 per share |
| 10/17/01 | $ 23.94 per share |

| **Date** | **Amount** | |
|----------|------------|---|
| 10/18/01 | $ 23.94 | per share |
| 10/19/01 | $ 23.94 | per share |
| 10/22/01 | $ 23.94 | per share |
| 10/23/01 | $ 23.94 | per share |
| 10/24/01 | $ 23.83 | per share |
| 10/25/01 | $ 23.94 | per share |
| 10/26/01 | $ 23.94 | per share |
| 10/29/01 | $ 23.42 | per share |
| 10/30/01 | $ 23.00 | per share |
| 10/31/01 | $ 22.48 | per share |
| 11/01/01 | $ 22.73 | per share |
| 11/02/01 | $ 22.67 | per share |
| 11/05/01 | $ 23.10 | per share |
| 11/06/01 | $ 23.94 | per share |
| 11/07/01 | $ 23.94 | per share |
| 11/08/01 | $ 23.94 | per share |
| 11/09/01 | $ 23.94 | per share |
| 11/12/01 | $ 23.94 | per share |
| 11/13/01 | $ 23.94 | per share |
| 11/14/01 | $ 23.94 | per share |
| 11/15/01 | $ 23.94 | per share |
| 11/16/01 | $ 23.60 | per share |
| 11/19/01 | $ 23.94 | per share |
| 11/20/01 | $ 23.85 | per share |
| 11/21/01 | $ 23.94 | per share |
| 11/23/01 | $ 23.94 | per share |
| 11/26/01 | $ 23.94 | per share |
| 11/27/01 | $ 23.94 | per share |
| 11/28/01 | $ 23.94 | per share |
| 11/29/01 | $ 23.94 | per share |
| 11/30/01 | $ 23.94 | per share |

| Date | Amount |
|------|--------|
| 12/03/01 | $ 22.59 per share |
| 12/04/01 | $ 23.94 per share |
| 12/05/01 | $ 23.94 per share |
| 12/06/01 | $ 23.94 per share |
| 12/07/01 | $ 23.94 per share |
| 12/10/01 | $ 23.30 per share |
| 12/11/01 | $ 22.20 per share |
| 12/12/01 | $ 19.80 per share |
| 12/13/01 | $ 20.29 per share |
| 12/14/01 | $ 19.64 per share |
| 12/17/01 | $ 20.61 per share |
| 12/18/01 | $ 21.84 per share |
| 12/19/01 | $ 22.04 per share |
| 12/20/01 | $ 21.75 per share |
| 12/21/01 | $ 21.37 per share |
| 12/24/01 | $ 21.60 per share |
| 12/26/01 | $ 21.82 per share |
| 12/27/01 | $ 23.30 per share |
| 12/28/01 | $ 23.94 per share |
| 12/31/01 | $ 23.28 per share |
| 01/02/02 | $ 22.58 per share |
| 01/03/02 | $ 22.41 per share |
| 01/04/02 | $ 23.94 per share |
| 01/07/02 | $ 23.19 per share |
| 01/08/02 | $ 22.29 per share |
| 01/09/02 | $ 22.42 per share |
| 01/10/02 | $ 21.70 per share |
| 01/11/02 | $ 19.85 per share |
| 01/14/02 | $ 18.53 per share |
| 01/15/02 | $ 20.28 per share |
| 01/16/02 | $ 19.87 per share |

| **Date** | **Amount** | |
| --- | --- | --- |
| 01/17/02 | $ 18.90 | per share |
| 01/18/02 | $ 20.03 | per share |
| 01/22/02 | $ 19.24 | per share |
| 01/23/02 | $ 18.59 | per share |
| 01/24/02 | $ 18.86 | per share |
| 01/25/02 | $ 19.70 | per share |
| 01/28/02 | $ 18.10 | per share |
| 01/29/02 | $ 16.58 | per share |
| 01/30/02 | $ 15.76 | per share |
| 01/31/02 | $ 17.12 | per share |
| 02/01/02 | $ 17.34 | per share |
| 02/04/02 | $ 16.06 | per share |
| 02/05/02 | $ 14.99 | per share |
| 02/06/02 | $ 12.47 | per share |
| 02/07/02 | $ 15.56 | per share |
| 02/08/02 | $ 18.71 | per share |
| 02/11/02 | $ 17.94 | per share |
| 02/12/02 | $ 17.49 | per share |
| 02/13/02 | $ 18.36 | per share |
| 02/14/02 | $ 18.04 | per share |
| 02/15/02 | $ 18.00 | per share |
| 02/19/02 | $ 17.84 | per share |
| 02/20/02 | $ 17.72 | per share |
| 02/21/02 | $ 16.00 | per share |
| 02/22/02 | $ 16.24 | per share |
| 02/25/02 | $ 16.45 | per share |
| 02/26/02 | $ 16.72 | per share |
| 02/27/02 | $ 18.55 | per share |
| 02/28/02 | $ 17.81 | per share |
| 03/01/02 | $ 19.02 | per share |
| 03/04/02 | $ 22.21 | per share |

| Date | Amount | |
|------|--------|--|
| 03/05/02 | $ 21.17 | per share |
| 03/06/02 | $ 22.17 | per share |
| 03/07/02 | $ 23.00 | per share |
| 03/08/02 | $ 23.94 | per share |
| 03/11/02 | $ 23.94 | per share |
| 03/12/02 | $ 23.37 | per share |
| 03/13/02 | $ 22.86 | per share |
| 03/14/02 | $ 21.87 | per share |
| 03/15/02 | $ 22.69 | per share |
| 03/18/02 | $ 22.93 | per share |
| 03/19/02 | $ 22.77 | per share |
| 03/20/02 | $ 21.93 | per share |
| 03/21/02 | $ 22.23 | per share |
| 03/22/02 | $ 22.39 | per share |
| 03/25/02 | $ 21.06 | per share |
| 03/26/02 | $ 21.66 | per share |
| 03/27/02 | $ 21.80 | per share |
| 03/28/02 | $ 21.25 | per share |
| 04/01/02 | $ 21.68 | per share |
| 04/02/02 | $ 21.52 | per share |
| 04/03/02 | $ 20.53 | per share |
| 04/04/02 | $ 21.39 | per share |
| 04/05/02 | $ 22.28 | per share |
| 04/08/02 | $ 23.24 | per share |
| 04/09/02 | $ 23.16 | per share |
| 04/10/02 | $ 23.23 | per share |
| 04/11/02 | $ 21.73 | per share |
| 04/12/02 | $ 22.40 | per share |
| 04/15/02 | $ 22.24 | per share |
| 04/16/02 | $ 23.65 | per share |
| 04/17/02 | $ 23.94 | per share |

| Date | Amount |
|------|--------|
| 04/18/02 | $ 23.94 per share |
| 04/19/02 | $ 23.94 per share |
| 04/22/02 | $ 23.94 per share |
| 04/23/02 | $ 23.94 per share |
| 04/24/02 | $ 23.94 per share |
| 04/25/02 | $ 23.94 per share |
| 04/26/02 | $ 23.94 per share |
| 04/29/02 | $ 22.70 per share |
| 04/30/02 | $ 23.34 per share |
| 05/01/02 | $ 22.61 per share |
| 05/02/02 | $ 21.92 per share |
| 05/03/02 | $ 21.64 per share |
| 05/06/02 | $ 21.00 per share |
| 05/07/02 | $ 20.25 per share |
| 05/08/02 | $ 21.83 per share |
| 05/09/02 | $ 21.26 per share |
| 05/10/02 | $ 19.64 per share |
| 05/13/02 | $ 20.72 per share |
| 05/14/02 | $ 21.31 per share |
| 05/15/02 | $ 20.03 per share |
| 05/16/02 | $ 19.24 per share |
| 05/17/02 | $ 18.40 per share |
| 05/20/02 | $ 18.19 per share |
| 05/21/02 | $ 17.54 per share |
| 05/22/02 | $ 17.74 per share |
| 05/23/02 | $ 17.87 per share |
| 05/24/02 | $ 17.85 per share |
| 05/28/02 | $ 17.98 per share |
| 05/29/02 | $ 17.89 per share |
| 05/30/02 | $ 16.88 per share |
| 05/31/02 | $ 16.26 per share |

| **Date** | **Amount** |
|----------|------------|
| 06/03/02 | $ 16.67 per share |
| 06/04/02 | $ 16.66 per share |
| 06/05/02 | $ 17.91 per share |
| 06/06/02 | $ 19.83 per share |
| 06/07/02 | $ 19.06 per share |
| 06/10/02 | $ 18.58 per share |
| 06/11/02 | $ 19.54 per share |
| 06/12/02 | $ 18.92 per share |
| 06/13/02 | $ 17.44 per share |
| 06/14/02 | $ 17.62 per share |
| 06/17/02 | $ 18.20 per share |
| 06/18/02 | $ 18.08 per share |
| 06/19/02 | $ 17.24 per share |
| 06/20/02 | $ 16.02 per share |
| 06/21/02 | $ 16.16 per share |
| 06/24/02 | $ 16.50 per share |
| 06/25/02 | $ 15.68 per share |
| 06/26/02 | $ 16.25 per share |
| 06/27/02 | $ 16.78 per share |
| 06/28/02 | $ 16.19 per share |
| 07/01/02 | $ 14.84 per share |
| 07/02/02 | $ 14.94 per share |
| 07/03/02 | $ 15.76 per share |
| 07/05/02 | $ 16.69 per share |
| 07/08/02 | $ 16.28 per share |
| 07/09/02 | $ 14.58 per share |
| 07/10/02 | $ 12.48 per share |
| 07/11/02 | $ 13.14 per share |
| 07/12/02 | $ 14.69 per share |
| 07/15/02 | $ 14.17 per share |
| 07/16/02 | $ 15.01 per share |

| **Date** | **Amount** |
|----------|------------|
| 07/17/02 | $ 11.59 per share |
| 07/18/02 | $ 12.56 per share |
| 07/19/02 | $ 11.33 per share |
| 07/22/02 | $ 10.38 per share |
| 07/23/02 | $ 9.30 per share |
| 07/24/02 | $ 11.68 per share |
| 07/25/02 | $ 10.57 per share |
| 07/26/02 | $ 8.68 per share |
| 07/29/02 | $ 9.19 per share |
| 07/30/02 | $ 9.55 per share |
| 07/31/02 | $ 11.49 per share |
| 08/01/02 | $ 10.63 per share |
| 08/02/02 | $ 9.59 per share |
| 08/05/02 | $ 8.11 per share |
| 08/06/02 | $ 10.06 per share |
| 08/07/02 | $ 8.28 per share |
| 08/08/02 | $ 9.60 per share |
| 08/09/02 | $ 8.73 per share |
| 08/12/02 | $ 8.29 per share |
| 08/13/02 | $ 7.06 per share |
| 08/14/02 | $ 6.39 per share |
| 08/15/02 | $ 7.61 per share |
| 08/16/02 | $ 5.76 per share |
| 08/19/02 | $ 5.22 per share |
| 08/20/02 | $ 4.65 per share |
| 08/21/02 | $ 4.98 per share |
| 08/22/02 | $ 8.14 per share |
| 08/23/02 | $ 5.85 per share |
| 08/26/02 | $ 6.77 per share |
| 08/27/02 | $ 5.58 per share |
| 08/28/02 | $ 5.22 per share |

| Date | Amount |
|------|--------|
| 08/29/02 | $ 4.69 per share |
| 08/30/02 | $ 4.33 per share |
| 09/03/02 | $ 2.96 per share |
| 09/04/02 | $ 3.53 per share |
| 09/05/02 | $ 2.87 per share |
| 09/06/02 | $ 3.10 per share |
| 09/09/02 | $ 5.02 per share |
| 09/10/02 | $ 4.16 per share |
| 09/11/02 | $ 4.57 per share |
| 09/12/02 | $ 3.73 per share |
| 09/13/02 | $ 4.35 per share |
| 09/16/02 | $ 3.35 per share |
| 09/17/02 | $ -0.17 per share |
| 09/18/02 | $ 0.41 per share |
| 09/19/02 | $ 0.73 per share |
| 09/20/02 | $ 0.64 per share |
| 09/23/02 | $ -0.85 per share |
| 09/24/02 | $ -0.35 per share |
| 09/25/02 | $ -0.24 per share |
| 09/26/02 | $ 0.34 per share |
| 09/27/02 | $ -0.56 per share |
| 09/30/02 | $ -0.10 per share |
| 10/01/02 | $ -1.12 per share |
| 10/02/02 | $ -1.13 per share |
| 10/03/02 | $ -0.66 per share |
| 10/04/02 | $ -1.87 per share |
| 10/07/02 | $ -2.45 per share |
| 10/08/02 | $ -3.17 per share |
| 10/09/02 | $ -4.66 per share |
| 10/10/02 | $ -0.68 per share |
| 10/11/02 | $ 0.00 per share |

# Tab 5:

*Hsu v. Puma Biotechnology, Inc.*,
No. 8:15-cv-00865-AG-SHK
(C.D. Cal. Feb. 4, 2019),
Jury Instructions

# REDACTED

### VERDICT FORM

FILED

FEB 4, 2019

CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY ___MKU___
Deputy Clerk, U.S. District Court

**1.** **MISREPRESENTATIONS AND OMISSIONS**
(Please refer to the statements in the attached Appendix.)

Did Plaintiffs prove that Defendants made materially false or misleading statements or omissions on July 22, 2014 regarding:

| | *(circle either "yes" or "no" for each statement)* | |
|---|---|---|
| 1. Disease-Free Survival (DFS) Rates | (YES) | NO |
| 2. Grade 3+ Diarrhea Rate | YES | (NO) |
| 3. Kaplan-Meier (KM) Curves | YES | (NO) |
| 4. Discontinuation Rate Due to Adverse Events (AEs) | YES | (NO) |

IF YOU CIRCLED "YES" AT LEAST ONCE, PROCEED TO SECTION 2.
OTHERWISE, PROCEED TO SECTION 6.

**2.** **KNOWINGLY**

Did Plaintiffs prove that Defendants acted knowingly in making the alleged false or misleading statements or omissions? *(circle either "yes" or "no")*

(YES)     NO

IF YOU CIRCLED "YES," PROCEED TO SECTION 3.
OTHERWISE, PROCEED TO SECTION 6.

**3.** **CAUSATION**

**3.1** Did Plaintiffs prove that the disclosures on May 13, 2015 regarding the ExteNET trial DFS Rates and Grade 3+ Diarrhea Rate played a substantial part in causing the decline in Puma's stock price on May 14, 2015? *(circle either "yes" or "no")*

(YES)     NO

PROCEED TO QUESTION 3.2.

SACV 15-00865-AG
(SHKx)

HSINGCHING HSU, ET AL. V.
PUMA BIOTECHNOLOGY INC,
ET AL

**3.2** Did Plaintiffs prove that the disclosures on June 1, 2015 regarding the ExteNET trial KM Curves and Discontinuation Rate Due to Adverse Events played a substantial part in causing the decline in Puma's stock price on June 1-2, 2015? *(circle either "yes" or "no")*

YES  (NO)

IF YOU CIRCLED "YES" IN RESPONSE TO QUESTION 3.1 AND/OR QUESTION 3.2, PROCEED TO SECTION 4.
OTHERWISE, PROCEED TO SECTION 6.

---

**4.** **DAMAGES**

Specify the amount of damages per share of Puma stock, if any, caused by the disclosures regarding the alleged false or misleading statements or omissions. *(For each date for which you answered "yes" in response to Questions 3.1 and 3.2, write in a dollar amount.)*

| Date | ($/share) |
|---|---|
| May 14, 2015 | $ _4.50_ (The damages per share cannot exceed $40.96) |
| June 1-2, 2015 | $____.____ (The damages per share cannot exceed $46.24) |

PROCEED TO SECTION 5.

---

**5.** **REBUTTING THE PRESUMPTION OF RELIANCE**

**5.1** Did Defendants prove that Plaintiff Norfolk Pension Fund did not actually rely on the integrity of the market price of Puma's stock because it would have bought Puma stock at the same price it did, even if it had known of the alleged fraud? *(circle either "yes" or "no")*

YES  

PROCEED TO QUESTION 5.2.

**5.2** Did Defendants prove that the alleged false or misleading statements or omissions on July 22, 2014 did not affect the market price of Puma's stock? *(circle either "yes" or "no")*

YES  (NO)

PROCEED TO SECTION 6.

## 6.   RETURN OF VERDICT

SIGNED this _4_ day of _FEBRUARY_ , 2019.

PRESIDING JUROR:

# APPENDIX OF ALLEGED FALSE AND MISLEADING STATEMENTS
## AND SURROUNDING TEXT
*(see Exhibit 103 for full transcript of the July 22, 2014 conference call)*

| No. | Subject | July 22, 2014 Statements |
|-----|---------|--------------------------|
| 1. | **Disease-Free Survival (DFS) Rates** | WERBER:    Congrats on this fantastically and, in many ways, unexpected data. So I have a ton of questions. Maybe I'll just take two, if you don't mind. One is, give us a little bit of a sense, what was the DFS on the control arm, first.    And then second, help us understand, what do you know about the safety profile?<br><br>AUERBACH: Okay. ***So in terms of the DFS of the placebo arm of the trial, it was in line with other reported trials. So it's in line with the Herceptin adjuvant studies.***    And then in terms of the safety profile, we haven't yet fully validated the safety database.    Our anticipation is the main AE we're going to see is what we've historically seen with neratinib, which is the diarrhea. And again, we would anticipate that the diarrhea rate, the grade 3 diarrhea rate, would be in line with the 29% to 30% that's been seen in the prior studies of neratinib as a monotherapy.<br><br>\*          \*          \*<br><br>WERBER:  ***You're thinking that, if I'm correct, the DFS is probably around mid to high 80s, around 86% or so in the control arm?***<br><br>AUERBACH:  ***I would be comfortable with that number.***<br><br>WERBER:   ***And one would imagine you probably had to show around 90% or 91%? Is that reasonable?***<br><br>AUERBACH:  ***Yes. I think you can do a 33% improvement in DFS and come up with that calculation, given the numbers we gave.*** |

| 2. | **Grade 3+ Diarrhea Rate** | AUERBACH (opening remarks): ***From a safety perspective, the Company has not yet seen the safety results from the ExteNET trial for neratinib, as the data is still being validated.*** Historically, the main adverse event that has been seen with neratinib has been a gastrointestinal adverse event, and more specifically, diarrhea. In previous studies performed prior to Puma licensing neratinib, grade 3 or higher diarrhea was seen in approximately 30% or more of the patients treated with neratinib. In these previous historical studies, the diarrhea was typically a first-cycle effect and was treated using a combination of anti-diarrheal agents, such as Imodium, which is also known generically as loperamide, dose interruptions, or dose reductions.<br><br>\*　　\*　　\*<br><br>Prior to Puma licensing the drug, neratinib monotherapy was previously tested in two Phase II trials in patients with HER2-positive metastatic breast cancer, the results of which were published in European Journal of Cancer in December 2013 and the Journal of Clinical Oncology in 2010. ***In those studies, grade 3 or higher diarrhea was seen in 29% and 30% of the patients, respectively.***<br><br>The ExteNET trial was started in April of 2009, prior to Puma licensing the drug in 2011. Neratinib was given as a monotherapy, and no prophylaxis to prevent neratinib-related diarrhea was used. ***Therefore, the Company anticipates that the grade 3 diarrhea rates in the ExteNET trial are likely to be in line with what was previously published in the prior Phase II trials that were published in the European Journal of Cancer and the Journal of Clinical Oncology.***<br><br>As investors know, after licensing the drug, Puma began to look at using antidiarrheal agents, and specifically Imodium, prophylactically in order to reduce and potentially prevent the neratinib-related diarrhea. More specifically, the results of using both low doses and high doses of Imodium prophylactically have shown that using high doses of Imodium during the first 3 days of treatment and then tapering the Imodium dose down during the first cycle has resulted in much lower rates of grade 3 diarrhea. |

In all of its current ongoing studies. Puma is instituting the use of this high-dose Imodium in order to reduce the neratinib-related diarrhea. The results of this continues to demonstrate that the use of high-dose Imodium prophylaxis drops the grade 3 diarrhea rates considerably. We expect that the first clinical trial data utilizing this high-dose Imodium prophylaxis will be presented in the second half of 2014, and we believe that this will give investors much greater transparency into the success of this prophylaxis in reducing the grade 3 diarrhea with neratinib.

\*     \*     \*

WERBER: Congrats on this fantastically and, in many ways, unexpected data. So I have a ton of questions. Maybe I'll just take two, if you don't mind. One is, give us a little bit of a sense, what was the DFS on the control arm, first. And then second, help us understand, what do you know about the safety profile?

AUERBACH: Okay. So in terms of the DFS of the placebo arm of the trial, it was in line with other reported trials. So it's in line with the Herceptin adjuvant studies. And then in terms of the safety profile, we haven't yet fully validated the safety database. Our anticipation is the main AE we're going to see is what we've historically seen with neratinib, which is the diarrhea. ***And again, we would anticipate that the diarrhea rate, the grade 3 diarrhea rate, would be in line with the 29% to 30% that's been seen in the prior studies of neratinib as a monotherapy***.

Now, again, they didn't use any prophylaxis. There was no Imodium prophylaxis used in the trial, because it was started before we had come up with that. In the current trial that we're doing, neratinib monotherapy, we've been very, very successful in being able to reduce the grade 3 diarrhea rates using the Imodium prophylaxis.

| 3. | Kaplan-Meier (KM) Curves | LIANG: Congratulations, Alan, and your team. So can you – *I assume you have seen the curves for the two arms*. Can you give us a sense as to whether the separation is widening over time? Or how would you describe the curve separation? |
|----|----|----|
| | | AUERBACH: *Yes*, thanks for that question, Howard. Okay, so the trial started in April of 2009, and this data cut is as of October 2013. So that's essentially the last patient was followed for 2 years. So from those numbers, you can see we have a lot of patients who have been in for much more than that 2-year cutoff. *If we look at the [Kaplan-Meier] curves going out beyond that, it looks like the curves are continuing to separate.* |
| | | *And to give a little more detail on that, if you look at the curves in the Herceptin adjuvant trials – so the HERA study, the BCIRG study, et cetera – the absolute difference in disease-free survival increases as you go out year over year. So, for instance, in the BCIRG trial, the DFS difference was 6% at 2 years and 7% at 3 years, then 8% at 4 years, et cetera, et cetera . . . .* |
| | | *We're seeing the same preliminary trend in the ExteNET trial, where the curves appear to be continuing to separate as you go out year over year, and the absolute DFS difference is increasing year over year as well.* |

| 4. | **Discontinuation Rate Due to Adverse Events (AEs)** | SCHMIDT: Thanks. And lastly, I think you probably do know the dropout rate from the trial. Could you remind us of that? |
|---|---|---|
| | | AUERBACH: Dropout rate due to side effects? |
| | | SCHMIDT: Sure, or anything, if you have it. |
| | | AUERBACH: *I don't have that. I apologize. That's part of the stuff being validated, but we anticipate, typically in the neratinib studies – the legacy ones that were done before, when Pfizer was running it without any prophylaxis – it was usually in the 5% to 10% range was the dropout rate due to AEs. So we'd anticipate it's in that same vein.* |
| | | * * * |
| | | RODEN: I just wanted to clarify an earlier answer to a question. So you were asked about the dropout rate, and I think you wanted to defer to dropouts due to – discontinuations due to adverse events. But can you just mention, or maybe I missed it, how many patients actually completed the year of therapy? Or another way of saying it is how much missing data is there from the DFS analysis? |
| | | AUERBACH: *Yes, so in terms of patients who dropped out due to AEs, like I said, historically with neratinib, that should be somewhere in the 5% to 10% range.* |
| | | RODEN: Okay, but do you have a sense for dropouts for any reason across the study? |
| | | AUERBACH: *No*, the main one we would expect is due to AEs. And obviously, if they progressed or died. |